UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| NETWORK-1 SECURITY SOLUTIONS, INC. | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 6:11-cv-00492-LED-JDL |
| | ) |
| v. | ) |
| | ) |
| ALCATEL-LUCENT USA, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW

With the enactment of the America Invents Act, Congress replaced the pre-existing *inter partes* reexamination procedure ("IPX") with an improved *inter partes* review procedure ("IPR").[1]  Congress's intent was to provide a "faster, less costly alternative[] to civil litigation to challenge patents."[2]  To date, the only federal court known to rule on a motion to stay pending an IPR granted the motion.[3]  The *Semiconductor* court based its decision in part on the strengthened IPR provisions, which set a strict timeline for considering validity challenges.[4]  While this Court has yet to address the issue, the Court has noted in the context of stays pending *ex parte* reexaminations that it "generally makes sense to await the conclusion of a reexamination before

---

[1]    Pub. L. No. 112-29, § 314(a), 125 Stat. 284 (2011).

[2]    157 CONG. REC. S952 (daily ed. Feb. 28, 2011) (statement by Senator Grassley).

[3]    *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 8:12-cv-00021-JST-JPR, ECF No. 116, at 4 (C.D. Cal. Dec. 19, 2012) (reasoning, *inter alia*, that the "amended standards for granting *inter partes* review probably results in an even higher likelihood than under the prior standard that the issues in this action will be simplified by [review]") (Exhibit A).

[4]    *Id.*, at 6 (noting that the timing is "significantly less than the delay caused by the old [IPX] procedure").

resuming litigation."[5]  As discussed herein and as reflected in the *Semiconductor* opinion, the same logic applies with greater force due to inherent safeguards and emphasis on speed in the new IPR procedure.

Taking advantage of this new procedure, Defendants Avaya Inc. ("Avaya"), Sony Corporation of America ("Sony"), and Axis Communications AB and Axis Communications Inc. (collectively "Axis") have collectively filed two IPR petitions with the United States Patent and Trademark Office ("PTO") challenging the validity of U.S. Patent No. 6,218,930 ("the '930 patent"), the only patent asserted by Plaintiff Network-1 Security Solutions, Inc. ("Network-1") in this case.  The IPR petitions, one filed on December 5, 2012 and the other filed on December 19, 2012, each set forth bases for the cancellation of claims 6 and 9 (the only two claims asserted by Network-1) of the '930 patent.[6]  Prior art asserted in the petitions is highly relevant, invalidates claims 6 and 9, and was not considered by the PTO during the original examination of the '930 patent application.  Also, once the PTO grants either IPR petition,[7] the PTO will rule that the petitions have a reasonable likelihood of success, a higher standard than the prior IPX standard.  The PTO will then face an obligation under 35 U.S.C. § 316(a)(11) to issue a final determination within one year.

---

[5]      *Spa Syspatronic, AG v. VeriFone, Inc.*, No. 2:07-CV-00416-JDL, 2008 WL 1886020, at *1 (E.D. Tex. Apr. 25, 2008) (Love, J.).

[6]      The petition filed by Sony and Axis also seeks the cancellation of claim 8 of the '930 patent.

[7]      The PTO has yet to grant either petition, and thus has not initiated either IPR. Defendants have moved now to have this motion fully briefed by the time the PTO grants the IPRs.  *See Spa Syspatronic, AG v. VeriFone, Inc.*, No. 2:07-CV-00416-JDL, Order, ECF No. 79 (E.D.Tex. Apr. 2, 2008) (Love, J.) (taking under advisement motion that was fully briefed before the PTO granted an *ex parte* reexamination) (Exhibit B).  Alternatively, the Court could also grant the motion before the PTO grants the IPRs.  *See Semiconductor*, No. 8:12-cv-00021-JST-JPR, ECF No. 116, at 4 (granting stay before PTO granted the IPR based on reasoning that "if the [PTO] rejects the inter partes requests, the stay will be relatively short").

Courts "generally look favorably on granting stays pending reexamination" if the stay is unlikely to prejudice the plaintiff and the motion is filed early in the case.[8] With respect to prejudice, patent holding companies—such as Network-1—cannot suffer material prejudice as a result of a stay, for they can be adequately compensated by monetary damages. Moreover, there is no chance of undue prejudice due to delay given the one-year statutory timeline for IPRs, which is far less than the average pendency for IPX or *ex parte* reexaminations.[9] With respect to the stage of this lawsuit, the case is still in its infancy, with neither side having served any written discovery and the *Markman* hearing and trial dates set for September 2013 and December 2014, respectively. Avaya, Axis, Sony, Sony Corporation, Sony Electronics Inc., Alcatel-Lucent USA Inc., Alcatel-Lucent Holdings Inc., Dell Inc., Hewlett-Packard Company, Polycom, Inc., ShoreTel, Inc., and Juniper Networks, Inc. (collectively, "Defendants") therefore move for such a stay pending the IPR proceedings.

---

[8]     *Spa Syspatronic,* 2008 WL 1886020, at *1.

[9]     The average pendency for IPX and *ex parte* reexaminations are 36.1 months and 25.4 months, respectively. U.S. Patent and Trademark Office, "*Inter Partes* Reexamination Filing Data – June 30, 2012" (June 30, 2012) (Exhibit C).; U.S. Patent and Trademark Office, "*Ex Parte* Reexamination Filing Data - June 30, 2012" (June 30, 2012) (Exhibit D).

## BACKGROUND

### A.  Network-1 Does Not Offer Products that Compete with the Defendants' Products

Network-1 is an "intellectual property licensing company" that "focuses on the acquisition, development, licensing and protection of intellectual property assets."[10]  Network-1 has no products (let alone products that compete with Defendants) and its entire revenue stream is based on the royalties for the '930 patent.[11]

### B.  The Case is in its Infancy Due to Delays Caused by Network-1

On September 15, 2011, Network-1 filed suit against Defendants alleging infringement of the '930 patent.  Through a series of events brought about by Network-1, this case is still in its infancy.  Network-1 took over three months to effectuate service on all Defendants.  Returns of Service, ECF Nos. 31-46.  Network-1 also failed to properly plead its original complaint (*see* ECF No. 145), and the Court ordered Network-1 to amend its complaint on May 23, 2012.  Amended Complaint, ECF No. 148.  As a result of these delays, this Court did not set the *Markman* hearing and trial dates of September 19, 2013 and December 8, 2014, respectively, until September 7, 2012, almost one year from the filing of the original complaint.  Docket Control Order, ECF No. 237.  The parties have begun to exchange disclosures under the Patent Rules, and in particular Network-1 has asserted just two claims (claims 6 and 9) of the '930

---

[10]  *No Longer a Security Software Company, Network-1 Security Solutions, Inc. is Helping Other Companies Monetize Their Intellectual Property – the First Being a Patent Covering Power Over Ethernet, Which is a New Solution to Bringing Operating Power to Network Devices*, CFOCEO Magazine (January 28, 2011 Issue), available at http://www.ceocfointerviews.com/interviews/NSSI-Network-111.htm ("CFOCEO Article") (Exhibit E).

[11]  *Form 10-Q*, Network-1 Security Solutions, Inc. (Nov. 14, 2012) (Exhibit F).

patent in its September 20, 2012 Patent Rule 3-1 disclosures.[12]  Neither side has served any

discovery requests, including interrogatories, requests for admission, or deposition notices or

subpoenas.

### C.      The Sparse Original Prosecution History Does Not Help to Simplify the Issues

The prosecution history of the '930 patent is virtually non-existent.  Without a single

rejection or objection of any pending claim, the Examiner allowed the application and stated that

"no prior art reference utilizes the an [sic] apparatus for remotely powering access equipment in

a data network" with all of the limitations of claim 1."  Notice of Allowability, at 2 (Exhibit H).

The Examiner's search uncovered only 5 references, none of which were applied against the

claims and none of which correspond to the prior art cited in the IPR petitions.  Notice of

References Cited (Exhibit I).  The PTO subsequently issued the '930 patent on this thin record.

### D.      The Recently-Discovered New Anticipatory Prior Art and IPR Petitions

On or about October 1, 2012, Avaya discovered a new prior art reference—U.S. Pat. No.

5,754,644 to Akhteruzzaman ("*Akhteruzzaman*")—that anticipates at least claims 6 and 9 of the

'930 patent.[13]  Around the same time, Sony and Axis first obtained a full English translation of a

second prior art reference—Japanese Unexamined Patent Application No. 6-189535 to Satou

("*Satou*")—that anticipates claims 6, 8, and 9 of the '930 patent.  None of this prior art was

considered by the Examiner of the '930 patent application.

---

[12]      This Court has already invalidated method claims 1-5 in a prior litigation.  Mem. Op. and Order, *Network-1 Security Solutions, Inc v. Cisco Systems, Inc., et al.*, No. 6:08-cv-30-LED, ECF No. 251 (E.D. Tex. Feb. 26, 2010) (Exhibit G).

[13]      Avaya discloses the fact of when it discovered *Akhteruzzaman* without waiver of any attorney-client, work-product, or common interest privilege concerning other matters.

After the discovery of these two new pieces of prior art, Avaya timely petitioned the PTO for *inter partes* review of the '930 patent on December 5, 2012 seeking cancellation of claims 6 and 9 based on *Akhteruzzaman* and other prior art references.  *See* Petition for *Inter Partes* Review of U.S. Patent No. 6,218,930 ("Avaya IPR Petition") (attached as Exhibit J).  And on December 19, 2012, Sony and Axis timely filed a second petition for *inter partes* review seeking cancellation of claims 6, 8, and 9 of the '930 patent based on *Satou* and other prior art references.  *See* Petition for *Inter Partes* Review of U.S. Patent No. 6,218,930 ("Sony-Axis IPR Petition") (attached as Exhibit K).[14]  Network-1 has until March 13, 2013 and March 20, 2013, respectively, to file an optional preliminary response to the Avaya and Sony-Axis IPRs.  As soon as Network-1 files its preliminary responses (or the dates pass), the PTO is statutorily required to grant or deny both petitions within three months of these dates—*i.e.*, no later than June 20, 2013.  Network-1 may optionally notify the PTO if it does not intend to file an optional preliminary response, which would advance the date of required action by the PTO.[15]  Once the petitions are instituted, the PTO will have one year to issue final decisions.  35 U.S.C. § 316(a)(11).

---

[14]      A third post-grant proceeding, an *ex parte* reexamination, is also pending.  On July 20, 2012, an anonymous party filed a request for *ex parte* reexamination based on grounds entirely independent from the two IPR petitions.  On September 5, 2012, the PTO granted the *ex parte* request ordering reexamination of the '930 in view of substantial new questions of patentability relating to six prior art references and claims 6, 8, and 9.  The PTO subsequently issued an office action that rejected claims 6, 8, and 9 on both anticipation and obviousness grounds.  *See* Exhibit L.  The PTO has since stayed the *ex parte* reexamination pending the outcome of the two IPR proceedings.

[15]      In the pending *ex parte* reexamination, Network-1 did not file an optional patent owner response to the petition, but allowed the two-month period to lapse.

## ANALYSIS

A district court has the inherent power to control its own docket, including the power to stay proceedings. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) (Davis, J.); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Optimal management of the Court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254–55. In deciding whether to stay litigation pending reexamination,[16] courts primarily consider three factors: (1) whether a stay will unduly prejudice or present clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and the trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Soverain Software*, 356 F. Supp. 2d at 662.[17]

In this case, all three factors weigh in favor of granting a stay pending the two IPRs of the '930 patent.

---

[16]   As noted by the *Semiconductor* court, because IPR replaced IPX, the three-factor analysis previously applied to IPX stays should also be applied to IPR stays. *Semiconductor*, No. 8:12-cv-00021-JST-JPR, ECF No. 116, at 2.

[17]   District courts have also noted a number of other advantages in granting a stay to allow the PTO to determine the validity of the patent, including: (1) all prior art presented to the court will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated by the PTO examination, (3) in those cases resulting in effective invalidity of the patent, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without the further use of the court, (5) the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination, and (7) the cost will likely be reduced both for the parties and the court. *See Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006); *GPAC, Inc. v. D.W.W. Enter., Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992).

A.      **Network-1 Will Not Suffer Undue Prejudice**

Network-1 will suffer no undue prejudice if the Court stays the case.  *See Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04–03715, 2006 WL 1440363 at *2 (N.D. Cal. May 24, 2006) ("The delay inherent to the reexamination process does not constitute, by itself, undue prejudice.").  In particular, Network-1 will not suffer any harm if Defendants continue to make and use the accused products during the stay because Network-1 is a patent holding company that does not make or sell any product or service covered by the '930 patent.  *See Implicit Networks, Inc. v. Advanced Micro Devices, Inc.*, No. C08-184JLR, 2009 WL 357902, at *3 (W.D. Wash. Feb. 9, 2009) (holding that a technology licensing company "cannot be prejudiced by a stay because monetary damages provide adequate redress for infringement" and noting that courts have "consistently found" accordingly); *Roblar Marketing Group, Inc. v. GPS Industries, Inc.*, 633 F. Supp. 2d 1341, 1347 (S.D. Fl. 2008) (finding "no material prejudice" due to the stay pending reexamination where patentee does not produce a product, has no substantial operations, and "appears to exist only as a holding company whose only asset is the [patent in suit]").  Even if Network-1 ultimately prevails without having to amend claims 6 and 9, it will still be entitled to collect damages accrued during the stay.  *See Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir. 1985).

Network-1 has also failed to pursue this case with any urgency.  As early as January 2011, Network-1 was aware of "over two hundred other companies practicing the same Power over Ethernet standard that we would like to license."  CFOCEO Article.  Yet Network-1 waited until September 2011 to bring suit.  Once the case was filed, Network-1 also failed to demonstrate any particular urgency to prosecute this case.  It has not moved for a preliminary injunction, took over three months to effectuate service of the original complaint, improperly

pled its original complaint, and has also failed to serve any discovery requests.  *See Roblar*, 633

F. Supp. 2d at 1347 (basing a finding of "no material prejudice" additionally on patentee's not

seeking a preliminary injunction).[18]

Finally, Avaya, Sony, and Axis have acted diligently in filing their IPR petitions within

the statutory period specified by 35 U.S.C. § 315(b).  Moreover, the IPR procedure only became

available on or after September 16, 2012, and Defendants could not have petitioned for an IPR

prior to that date.  *See* 77 C.F.R. 157, at 48612.  The petitions for IPR were also prompted in part

by Network-1's September 20, 2012 infringement contentions, which rely on broad claim

constructions that further invite invalidity challenges.  Defendants became aware of three of the

anticipating pieces of prior art only after searching conducted in response to Network-1's

complaint.[19]  The most-recently discovered prior art reference was identified on October 1, 2012.

Also, as discussed below with respect to overall timeliness, Defendants move prior to completion

of a *Markman* hearing or significant discovery, all of which weighs in favor of granting a stay.

*See Spa Syspatronic*, 2008 WL 1886020, at *2 n.2.

---

[18]    Defendants are aware that this Court, in the context of IPX, has factored in what it
characterized as the "extreme delay" for *inter partes* reexamination proceedings to conclude.  In
particular, this Court noted one study finding that IPXs took on average 43.5 months to conclude
where the patentee contested the matter.  *BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp.2d
647, 651 (E.D. Tex. 2009).  This is no longer a concern, for the new IPR procedure must
conclude within one year from granting the petition, absent certain exceptions.  35 U.S.C. §
316(a)(11).  Any appeal time is also streamlined, since IPRs are appealed directly to the Federal
Circuit (as opposed to the prior IPX procedure which required appeal first to the Board of Patent
Appeals and Interferences and then to the Federal Circuit).

[19]    New references include the previously mentioned *Akhteruzzaman* and *Satou* references,
in addition to U.S. Patent No. 5,345,592 to Woodmas ("*Woodmas*"), asserted as a Section 102
reference in the Sony-Axis IPR petition.

**B.      The Two IPRs Will Simplify the Issues**

Under the new IPR procedures, the threshold for initiating review is elevated from "significant new question of patentability"—the standard for IPX—to a standard requiring petitioners to present information showing that their challenge has a "reasonable likelihood of success." This new, higher standard results in an "even higher likelihood than under the prior standard that the issues in this action will be simplified." *See Semiconductor*, No. 8:12-cv00021-JST-JPR, at 4.

This Court has noted other factors (all of which are present here) that would tend to simplify the issues:

> The PTO's guidance will also have a greater probability of simplifying the issues for trial in this case because all of the patents and claims that are the subject of this litigation will be before the PTO during the reexamination. Even if the PTO does not modify any of the claims, the reexamination still potentially focuses the issues in the case by either eliminating or validating some of the parties' present disputes over the claim terms. Also, claim construction will ultimately be simplified because statements made during the reexamination become part of the prosecution history, which allows a full development of the intrinsic evidence to be considered by the Court.

*See Spa Syspatronic*, 2008 WL 1886020, at *3 (internal citations omitted).

On the last point, and as noted above, the prosecution history for the '930 patent is virtually non-existent on the merits of validity. The record from the two IPRs will simplify and clarify the claim construction process. Also, without a stay of the litigation, the Court may be faced with the task of construing claim terms of the '930 patent that Network-1 later amends in the IPRs or that are part of a claim ultimately found to be invalid.

Simplification of the issues will also result from the statutory estoppel provision. Whereas statutory estoppel did not attach in an IPX until all appeals were exhausted, under 35 U.S.C. § 315(e), once the IPRs result in a final written decision, Petitioners Avaya, Sony, and

Axis may not assert in a civil patent infringement action "that the claim is invalid on any ground

that the petitioner raised or reasonably could have raised during that *inter partes* review."  35

U.S.C. § 315(e).

As a result of the IPRs, the asserted claims of the '930 Patent may be found invalid or

may have changed scope to such a degree that Network-1 cannot in good faith continue the case

against one or more of the moving Defendants.  *See Genzyme Corp. v. Cobrek Pharms., Inc.*, No.

10-CV-00112, 2011 U.S. Dist. LEXIS 16287, at *10 (N.D. Ill. Feb. 17, 2011) (a stay is merited

when the "suit will likely be dismissed if the reexamination results in effective invalidity of the

patent").  As a result, the IPR may require that Network-1 dismiss its complaint or it may

encourage settlement among the parties.  *See id.* (a stay is merited when the "outcome of the

reexamination may encourage settlement"); *see also Dennco, Inc. v. Cirone*, No. 94-455-SD,

1995 U.S. Dist. LEXIS 9988, at *3 (D.N.H. July 12, 1995) (granting motion to stay during the

pending USPTO proceeding because the "stay might well result in a reduction in the complexity

and length of the litigation and may induce settlement without further court intervention").  The

interests of judicial economy thus warrant a stay.

## C.    The Timing Favors a Stay

The case is still in its infancy, with the *Markman* hearing and trial set more than nine

months and 24 months, respectively, from the filing of this motion.[20]  Moreover, neither side has

served any discovery requests (including interrogatories, subpoenas, or deposition notices) and

fact discovery is not set to close until almost a year from now on December 20, 2013.  The

parties have not yet begun to brief claim construction and the Court has not issued a claim

---

[20]    As noted in the Certificate of Conference, Network-1 stipulated, for the purposes of any
laches or delay arguments, to treat this motion as being filed on January 17, 2013, the day after
the telephonic meet-and-confer conference between the parties.

construction order.  Indeed, "considering the general time line of patent litigation, there is more work ahead of the parties and the Court than behind the parties and the Court."  *See Tierravision, Inc. v. Google, Inc.*, No. 11-cv-2170, 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012) (granting stay where *Markman* briefs were soon due and parties had exchanged proposed claim constructions and extrinsic evidence).  Indeed, the requested stay is consistent with the stay granted in *Semiconductor Energy*, which issued before the petitions for IPR at issue were instituted by the PTO.  *See Semiconductor*, No. 8:12-cv00021-JST-JPR, at 2 (noting IPR petitions filed less than a month before issuing the stay order).

Finally, the two IPR petitions were filed within the one-year window provided by the AIA, which Congress recognized as a necessary time period for defendants to identify and understand the patent claims.  157 Cong. Rec. S5429 (daily ed. Sept. 8, 2011) (noting that "in light of the present bill's enhanced estoppels, it is important that the [one year] deadline afford defendants a reasonable opportunity to identify and understand the patent claims that are relevant to the litigation").

## CONCLUSION

All of the relevant factors weigh in favor of staying the litigation.  Consequently, Defendants respectfully request that the Court grant the instant motion to stay all proceedings pending final exhaustion of all pending IPR proceedings.


Dated:  January 25, 2013                    Respectfully Submitted,

                                            */s/ Deron R. Dacus*
                                            Deron R. Dacus
                                            State Bar No. 00790553
                                            Shannon Dacus
                                            State Bar No. 00791004
                                            THE DACUS FIRM, P.C.

12

821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone:      (903) 705-1117
Facsimile:      (903) 705-1117
ddacus@dacusfirm.com
sdacus@dacusfirm.com

/s/ Brian M. Koide
Jeffrey D. Sanok
Brian M. Koide
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 2004-2595
Telephone:      (202) 624-2500
Facsimile:      (202) 628-5116
jsanok@crowell.com
bkoide@crowell.com

Scott L. Bittman
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10028-2524
Telephone:      (212) 895-4223
Facsimile:      (212) 895-4201
sbittman@crowell.com

*Attorneys for Defendant Avaya Inc.*

/s/ Elliot C. Cook
Barry W. Graham
C. Gregory Gramenopoulos
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4400
Fax: (202) 408-4400
barry.graham@finnegan.com
c.gregory.gramenopoulos@finnegan.com

Elliot C. Cook
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.

13

Reston, VA 20190
Tel: (202) 571-2700
Fax: (202) 408-4400
elliot.cook@finnegan.com

Melvin R. Wilcox, III
State Bar No. 21454800
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Tel: (903) 595-1133
Fax: (903) 595-0191
mrw@yw-lawfirm.com

*Counsel for Defendants*
*Axis Communications AB and Axis*
*Communications, Inc.*

/s/ Craig E. Davis
Eric H. Findlay (SBN 00789886)
FINDLAY CRAFT, LLP
6760 Old Jacksonville Highway
Suite 101
Tyler, TX  75703
Tel:  (903) 534-1100
Fax:  (903) 534-1137
efindlay@findlaycraft.com

Mark D. Selwyn (CA SBN 244180)
(admitted *pro hac vice*)
Joseph F. Haag (CA SBN 248749)
(admitted *pro hac vice*)
Craig E. Davis (CA SBN 221356)
WILMER CUTLER PICKERING
HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Tel:  (650) 858-6000
Fax:  (650) 858-6100
mark.selwyn@wilmerhale.com
joseph.haag@wilmerhale.com
craig.davis@wilmerhale.com

William F. Lee – Lead Attorney
(MA SBN 291960)
(admitted *pro hac vice*)

14

WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000
william.lee@wilmerhale.com

*Counsel for Defendants Alcatel-Lucent USA Inc.,
Alcatel-Lucent Holdings Inc., and ShoreTel, Inc.*

/s/ Robert J. Walters
David H. Dolkas (CA Bar No. 11180)
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025
Tel:  (650) 815-7400
Fax:  (650) 815-7401
ddolkas@mwe.com

Robert J. Walters (D.C. Bar No. 463077)
McDERMOTT WILL & EMERY LLP
500 North Capitol Street, NW
Washington, DC  20001
Tel:  (202) 756-8000
Fax:  (202) 756-8087
rwalters@mwe.com

J. Thad Heartfield (Texas Bar No. 09346800)
The Heartfield Law Firm
2195 Dowlen Road
Beaumont, TX  77706
Tel:  (409) 866-3318
Fax:  (409) 866-5789
thad@jth-law.com

*Counsel for Defendant
Hewlett-Packard Co.*

/s/ J. Michael Woods
Thomas M. Dunham
(D.C. Bar No. 448407)
Attorney-in-Charge
J. Michael Woods
(VA Bar No. 73535)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC  20006
Tel:  (202) 282-5000
Fax:  (202) 282-5100
tdunham@winston.com
mwoods@winston.com

Deron R. Dacus
(Texas Bar No. 00790553)
The Dacus Firm, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX  75701
Tel:  (903) 705-1117
Fax:  (903) 705-1117
ddacus@dacusfirm.com

*Counsel for Defendant Dell Inc.*

/s/ Troy L. Gwartney
Lionel M. Lavenue
Troy L. Gwartney
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Dr.
Reston, VA  20105
Tel:  (571) 203-2700
Fax:  (202) 408-4400
lionel.lavenue@finnegan.com
troy.gwartney@finnegan.com

*Counsel for Defendants Sony Corporation, Sony
Corporation of America, and Sony Electronics Inc.*

16

/s/ James H. Hall
Keith A. Rutherford
(Texas State Bar No. 17452000)
Lead Attorney
Susan K. Knoll
(Texas State Bar No. 11616900)
James H. Hall
(Texas State Bar No. 24041040)
WONG, CABELLO, LUTSCH,
RUTHERFORD & BRUCCULERI, L.L.P.
20333 SH 249, Ste. 600
Houston, TX  77070
Tel:  (832) 446-2400
Fax:  (832) 446-2424
krutherford@counselip.com
sknoll@counselip.com
jhall@counselip.com

*Counsel for Defendant Polycom, Inc.*

/s/ Alan M. Fisch
Alan M. Fisch
(D.C. Bar No. 453068)
FISCH HOFFMAN SIGLER LLP
5335 Wisconsin Avenue, NW
Eighth Floor
Washington, DC  20015
Tel:  (202) 362-3500
Fax:  (202) 362-3501
alan.fisch@fischllp.com

*Counsel for Defendant Juniper Networks, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via email, facsimile and/or U.S. First Class Mail this 25th day of January, 2013.

*/s/ Deron R. Dacus*
Deron R. Dacus

## CERTIFICATE OF CONFERENCE

I hereby certify that I have complied with the meet and confer requirement in Local Rule CV-7(h), and that Network-1 Security Solutions, Inc. ("Network-1") opposes the motion. Personal conference or conferences required by this rule have been conducted.  On January 16, 2013 the parties held a telephonic conference with counsel for all moving defendants and counsel for the plaintiff, including the following counsel of record : Brian M Koide and Scott L. Bittman (counsel for Avaya Inc.), Deron R. Dacus (counsel for Avaya Inc. and Dell Inc.), Elliot C. Cook (counsel for Axis Communications AB and Axis Communications, Inc.), Lionel M. Lavenue and Troy L. Gwartney (counsel for Sony Corporation, Sony Corporation of America, and Sony Electronics Inc.), Craig E. Davis (counsel for Alcatel-Lucent USA Inc., Alcatel-Lucent Holdings Inc., and ShoreTel, Inc.), J. Michael Woods (counsel for Dell Inc.), Robert J. Walters (counsel for Hewlett-Packard Co.), Alan M. Fisch (counsel for Juniper Networks, Inc.), James H. Hall (counsel for Polycom, Inc.), and Sean Luner (counsel for Network-1 Security Solutions, Inc.). On the January 16th telephonic conference, Mr. Luner indicated that Network-1 did not know

18

whether they would oppose the motion or not, and asked for one additional week to consider its position on the motion.  Network-1 agreed to treat the motion as being filed on January 17, 2013 for purposes of any laches or delay arguments.  On January 22, 2013, Mr. Koide emailed Mr. Luner (copying all counsel of record) asking Network-1 to respond with its position on the motion by January 24, 2013, and that the motion would be filed on January 25, 2013 absent a response from Network-1.  On January 25, 2013, Mr. Luner responded by email indicating that Network-1 has not had an opportunity to finish processing the issues concerning the stay motion, and stated that the motion should be accordingly filed on an opposed basis if filed on January 25, 2013.  Given these meet and confer efforts, Network-1 did not consent to a stay and the discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Deron R. Dacus* _____
Deron R. Dacus