**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

NETWORK-1 TECHNOLOGIES, INC.

        *Plaintiff,*

vs.

ALCATEL-LUCENT USA INC., ET AL.,

        *Defendants*.

CASE NO. 6:11-cv-492-RWS-KNM

JURY TRIAL DEMANDED

**Network-1 Technologies, Inc.'s**

**Opposition to Defendants' Motion for Summary Judgment
of Invalidity Under 35 U.S.C. ¶305**

**Table of Contents**

I. Introduction. ................................................................................................................ 1

II.    Challenge 1:  The original '930 claims were not improperly broadened based on
       disclaimed claims 15 and 16. ......................................................................... 4

       A.    Reason 1:  Because claim 6 was an original claim not amended in
             reexamination, it cannot be found to have been broadened. ................................... 4

             1.    Dependent claims cannot broaden the scope of an underlying
                   independent claim. .................................................................... 5

             2.    *ArcelorMittal* did NOT hold that adding a broader dependent claim
                   will broaden the independent claim. ........................................... 9

             3.    Prosecution history cannot broaden the scope of the claim. .................... 12

       B.    Reason 2:  Claims 15 and 16 cannot broaden the scope of the original
             claims because they were disclaimed and, therefore, never existed. ................... 13

       C.    Reason 3:  The court's claim construction ruling for "secondary power
             source" will necessarily dictate that the scope of the term did not change
             after reexamination. ......................................................................... 14

             1.    The claim construction ruling from other cases is not law-of-the-
                   case, or binding in any way .................................................... 15

             2.    The Court will reach the same conclusion for part (1) and part (2). ......... 16

             3.    Network-1's proposed construction of "secondary power source"
                   does not result in a broader claim. .......................................... 17

III.   Challenge 2:  Claims were not improperly broadened by including the "current
       …" limitation in claim 21. ................................................................ 19

IV.    Challenge 3:  Claims 22 and 23 are not broader than original claim 6. ............................ 21

       A.    Claims 22 and 23 are not broader than original claim 6 based on the
             sensing elements. ............................................................................ 21

       B.    Claims 22 and 23 are not broader than original claim 6 based on the
             controlling elements. ........................................................................ 23

       C.    Claim 23 is not broader than original claim 6 based on the providing
             element. ..................................................................................... 23

**<u>Table of Authorities</u>**

**Cases**

*Abstrax, Inc. v. Hewlett-Packard Company,*
  2015 WL 156555 (E. D. Tex., 2015) ....................................................... 15

*Acumed LLC v. Stryker Corp.,*
  483 F.3d 800 (Fed. Cir. 2007) ................................................................. 6

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A,*
  657 F.3d 1264 (Fed. Cir. 2011) ............................................................... 8

*Albecker v. Contour Products, Inc.,*
  578 F. App'x 969 (Fed. Cir. 2014) ........................................................... 6

*Allergan Sales, LLC v. Sandoz., Inc.,*
  2013 WL 4854786 (E.D. Tex. Sept. 5, 2013) ......................................... 13

*Anderson v. Int'l Eng'g & Mfg., Inc.,*
  160 F.3d 1345 (Fed. Cir. 1998) ......................................................... 4, 22

*ArcelorMittal France v. AK Steel Corp.,*
  786 F.3d 885 (Fed. Cir. 2015) ..................................................... 2, 9, 10

*ArcelorMittal France v. AK Steel Corp.,*
  989 F. Supp. 2d 364 (D. Del. 2013) ....................................................... 16

*Ark. Game & Fish Comm'n v. United States,*
  637 F.3d 1366 (Fed. Cir. 2011) ............................................................. 11

*Creo Products, Inc. v. Presstek, Inc.,*
  305 F.3d 1337 (Fed. Cir. 2002) ............................................................... 1

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.,*
  438 F.3d 1374 (Fed. Cir. 2006) ............................................................... 6

*Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.,*
  272 F.3d 1365 (Fed. Cir. 2001) ............................................................. 12

*Embrex, Inc. v. Serv. Eng'g Corp.,*
  216 F.3d 1343 (Fed. Cir. 2000) ............................................................. 24

*Enzo Biochem Inc. v. Applera Corp.,*
  780 F.3d 1149 (Fed. Cir. 2015) ....................................................... 1, 5, 7

*Fenner Investments, Ltd. v. Cellco P'ship,*
  778 F.3d 1320 (Fed. Cir. 2015) ............................................................... 6

*Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.,*
  655 F.3d 1291 (Fed. Cir. 2011) ............................................................. 14

*George E. Warren Corp. v. United States,*
  341 F.3d 1348 (Fed. Cir. 2003) ............................................................. 11

*Guinn v. Kopf,* 96 F.3d 1419 (Fed. Cir. 1996) ............................................. 13

i

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
　183 F.3d 1369 (Fed. Cir. 1999) ................................................................... 23

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
　No. 2015-1232, 2016 WL 2754049 (Fed. Cir. May 12, 2016) ................ 6

*Luv N' Care, Ltd. v. Jackel International Limited*,
　115 F. Supp. 3d 808 (E.D. Tex., 2015) .................................................... 15

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
　602 F.3d 1306 (Fed. Cir. 2010) ..................................................... 1, 5, 18

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
　812 F.3d 1284 (Fed. Cir. 2015) .............................................................. 11

*Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*,
　937 F.2d 1572, (Fed. Cir. 1991) ............................................................. 12

*North American Vaccine v. American Cyanamid Co.*,
　7 F.3d 1571 (Fed. Cir. 1993) .................................................................... 6

*Nystrom v. Trex Co.*,
　424 F.3d 1136 (Fed. Cir. 2005) ......................................................... 3, 20

*Pfizer, Inc. v. Ranbaxy Labs. Ltd.*,
　457 F.3d 1284 (Fed. Cir. 2006) ........................................................... 1, 7

*Phillips v. AWH Corp.*,
　415 F.3d 1303 (Fed. Cir. 2005) ................................................. 2, 12, 21

*Predicate Logic, Inc. v. Distributive Software, Inc.*,
　544 F.3d 1298 (Fed. Cir. 2008) ............................................................. 24

*Quantum Corp. v. Rodime, PLC*,
　65 F.3d 1577 (Fed. Cir. 1995) .................................................................. 8

*Regents of Univ. of Minnesota v. AGA Med. Corp.*,
　717 F.3d 929 (Fed. Cir. 2013) ............................................................... 12

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
　2015 WL 627971 (E.D. Tex. Feb. 9, 2015) ........................................... 14

*Seachange Int'l, Inc. v. C-COR, Inc.*,
　413 F.3d 1361 (Fed. Cir. 2005) ............................................................... 6

*SimpleAir, Inc. v. Google, Inc.*,
　2015 WL 1906016 (E. D. Tex., 2015) .................................................... 15

*Thermalloy, Inc. v. Aavid Eng'g, Inc.*,
　121 F.3d 691 (Fed. Cir. 1997) ............................................................. 4, 8

*TomTom, Inc. v. Adolph*,
　790 F.3d 1315 (Fed. Cir. 2015) ............................................................. 13

*Toro Co. v. White Consol. Indus., Inc.*,
　199 F.3d 1295 (Fed. Cir. 1999) ............................................................... 7

*Total Containment, Inc. v. Environ Products, Inc.*,
 921 F. Supp. 1355 (E.D. Pa. 1995) ........................................................................................... 7

*Vectra Fitness, Inc. v. TNWK Corp.*,
 162 F.3d 1379 (Fed. Cir. 1998) ........................................................................................ 3, 14

## I. Introduction.

Defendants assert that all asserted claims were impermissibly broadened in reexamination contrary to 35 U.S.C. section 305.  To resolve these issues, the Court "must analyze the scope of the claim prior to reexamination and compare it with the scope of the claim subsequent to reexamination."  *Creo Products, Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002).

Defendants' Challenge 1:  Defendants challenge independent claim 6 (and all claims dependent on it) on the basis that the scope of the claim term "secondary power source" was broadened by virtue of adding dependent claims 15 and 16.  This challenge fails as a matter of law.  Independent claim 6 was never amended in reexamination.  As a result, no claim limitations were removed and it could not possibly have a broader claim scope (it may accrue a narrowing limitation due to prosecution history disclaimer, but can never lose limitations without amendment).  "When a reissue [or reexamination] patent contains the <u>unmodified original patent claims</u>" then the "[o]riginal patent claims will <u>always survive</u>" a challenge under section 305, because "original claims <u>cannot be broader than themselves</u>."  *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1319 (Fed. Cir. 2010) (emphasis added).   Under controlling Federal Circuit law, neither dependent claims 15 and 16 nor the reexamination prosecution history could have broadened claim 6, for the following reasons.

*First*, there is no rule that an independent claim must be deemed to encompass dependent claims and, therefore, that adding claims 15 and 16 necessarily broadened independent claim 6.  Instead, the opposite is true: "dependent claims cannot broaden an independent claim from which they depend."  *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1156-57 (Fed. Cir. 2015).  If a dependent claim is broader than its independent claim, the scope of the independent claim is not expanded; instead, the dependent claim is deemed invalid for indefiniteness.  *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006).  Moreover, because claim

differentiation based on dependent claims is not a rule of required claim scope, but instead a potential tool for finding the ordinary meaning of claim terms during claim construction, claim differentiation is considered only if the court is presented with a claim differentiation argument during claim construction.  But neither side has argued that dependent claims 15 and 16 should be considered when interpreting "secondary power source" or any other term in claim 6.

_Second_, under controlling Federal Circuit law, prosecution history statements cannot broaden the scope of claims; they can only "make[] the claim scope narrower than it would otherwise be."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*).

_Third_, *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885 (Fed. Cir. 2015), the case Defendants hinge their entire argument on, did not overrule the above controlling precedent, and did not, as Defendants assert, hold that "dependent claims were found to improperly broaden the scope of an independent claim."  Mot. 8, 9, 12.  Instead, as we show below, the parties in that case had stipulated that the reissued independent claim had a broader construction.  The court in *ArcelorMittal* (i) never addressed the scope of the reissued claims, and (ii) never suggested (much less held) that adding a broader dependent claim necessarily broadens the scope of an independent claim.  Nor did the court in *ArcelorMittal* construe the original claim, because that construction was established by a binding mandate from an earlier appeal and the law-of-the-case doctrine.  The sole issue before the court was whether that doctrine could be overcome.  The holding of the court was: "The successful prosecution of [a reissue] patent is not 'new evidence' sufficient to trigger the extraordinary circumstances exception to the mandate rule and the law-of-the-case doctrine."  *Id*. at 898.  Finally, as we show below, the reasoning of the court in *ArcelorMittal* does not imply that a dependent claim added in reexamination should be use to interpret an unmodified original claim as having broader scope.  Instead, the court's stated reasoning implies exactly the opposite.

*Fourth*, dependent claims 15 and 16 may not be considered at all because they are subject to a statutory disclaimer and, therefore, "the patent is treated as though the disclaimed claims never existed." *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998).

*Fifth*, to decide the section 305 challenge, the Court must determine part (1), the scope of "secondary power source" before reexamination, and part (2), the scope "secondary power source" after reexamination.  An unstated necessary premise of Defendants' argument is that for part (1), the Court is bound by the *Cisco* court's construction of "secondary power source."  That is false.  As we show below, in determining the scope of claim 1 before reexamination, this Court is not bound by a prior claim construction ruling.  Instead, this Court's claim construction ruling as to "secondary power source" will necessarily dictate that the claim had the same claim scope both before and after reexamination.  Moreover, if the Court adopts Network-1's proposed construction of "secondary power source," it will not produce a broader claim.

Challenge 2:  Defendants again challenge independent claim 6 and all other claims that contain "low level current" on the basis that the scope of the phrase was broadened by virtue of adding independent claim 21.  This challenge fails as a matter of law.  Independent claim 6 was never amended in reexamination.  As a result, no claim limitations were removed and it could not possibly have a broader claim scope.  Moreover, Defendants' argument—that if two independent claims use different phrases (one narrower and one broader), the narrower phrase should be "replaced" with the broader phrase, and the scope of the broader phrase "overrides" the ordinary meaning of the narrower phrase, simply because the broader phrase is "probative" of the meaning of the narrower phrase (Mot. 1, 6, 14—is contrary to Federal Circuit law which holds that "[w]hen different words or phrases are used in separate claims, a difference in meaning [not the same meaning] is presumed." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005).

3

Challenge 3:  Defendants also assert that Claims 22 and 23 broader than original claim 6 based on the sensing elements, control elements, and providing elements.  But Defendants fail to identify how of these claims are broader in claims 22 and 23—they are not.  "[W]hether the claims have been materially or substantially enlarged must be determined upon the claim as a whole."  *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1349 (Fed. Cir. 1998).  Here, analyzing claims 22 and 23 "as a whole" demonstrates that they are not broader than original claim 6.

## II.     Challenge 1:  The original '930 claims were not improperly broadened based on disclaimed claims 15 and 16.

Defendants assert that all '930 claims are invalid because disclaimed dependent claims 15 and 16 improperly broadened the scope of "secondary power source" found in each claim.  Mot. 7-14.  This challenge fails for three independently sufficient reasons:

Reason 1:  Independent claim 6 was as original claim that was never amended in reexamination.  The addition of a dependent claim, or prosecution history, can never broaden an unmodified independent claim.

Reason 2:  Claims 15 and 16 were disclaimed and disclaimed claims cannot effect any claim construction analysis because they never existed.

Reason 3:  The construction of "secondary power source" in the *Cisco* case does not establish the scope of claim 6 before reexamination.  Instead, this Court's claim construction ruling as to "secondary power source" will necessarily dictate that the claim had the same claim scope both before and after reexamination.

### A.     Reason 1:  Because claim 6 was an original claim not amended in reexamination, it cannot be found to have been broadened.

The only way that an existing original claim can be broadened is if limitations on claim scope are removed.  The only way that can happen is if the original claim is amended.  *E.g.*,

4

*Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 693-94 (Fed. Cir. 1997) ("The original claim contains a limitation absent from the reexamined claim…. [D]uring reexamination, Thermalloy removed the relevant portion of the 'whereby' clause from the claim.").  As we show below, (i) adding a dependent claim can never broaden an independent claim, and (ii) prosecution history statements can never remove a claim limitation (a claim can only accrue narrowing limitations through prosecution disclaimer).  Accordingly, reexamination or reissue cannot broaden the claim scope of an unmodified independent claim.

Absent contrary stipulation of the parties, [1] an independent claim that was unmodified in reexamination will never have a broader claim scope and, as a matter of law, is never subject to section 305.  "When a reissue patent contains the unmodified original patent claims and [additionally added] reissue claims, a court can only invalidate the [new] reissue claims." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1319 (Fed. Cir. 2010).  "Original patent claims <u>will always survive</u>," because "[t]he original claims <u>cannot be broader than themselves</u>." *Id.* (emphasis added).

Below we demonstrate (1) dependent claims cannot broaden the scope of an underlying independent claim, (2) *ArcelorMittal* did NOT hold to the contrary, and (3) prosecution history cannot broaden the scope of the claim.

### 1.    Dependent claims cannot broaden the scope of an underlying independent claim.

Defendants assert that disclaimed dependent claims 15 and 16 broadened the scope of the phrase "secondary power source" through implication, *i.e.*, claim differentiation.  Mot. 7-9, 13-14.  Defendants' theory fails because "dependent claims cannot broaden an independent claim

---

[1]     Parties may of course stipulate to a construction, and may stipulate that an unamended claim has a scope that is broader by virtue of the reexam or reissue.  That was the case in *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885 (Fed. Cir. 2015), as we show below.

from which they depend." *Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1156-57 (Fed. Cir. 2015) (internal quotations omitted).

The principle of claim differentiation—that "independent claims are presumed to have broader scope than their dependents," *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 806 (Fed. Cir. 2007)—is only an aid to claim interpretation.  Defendants are wrong, however, when they assert that claim differentiation is a rule that "compel[s] [a] conclusion."  Mot. 13-14.  "Claim differentiation is not conclusive; it is a guide, not a rigid rule.  Although it is a useful tool, claim differentiation does not require that the dependent claim tail ... wag the independent claim dog." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 2015-1232, 2016 WL 2754049, at *8 (Fed. Cir. May 12, 2016) (internal quotations and citations omitted).  "While it is true that dependent claims can aid in interpreting the scope of the claims from which they depend, they are only an aid to interpretation and are not conclusive." *North American Vaccine v. American Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993); *Albecker v. Contour Products, Inc.*, 578 F. App'x 969, 971 (Fed. Cir. 2014) ("Albecker's position is that if claim 11 depends on claim 10, it is *axiomatic* that claim 10 is broad enough to include embodiments [of claim 11]. … This is essentially a claim differentiation argument.  And, importantly, claim differentiation is a guide, not a rigid rule." (internal quotes omitted)).

As a result, "claim differentiation can not broaden claims beyond their correct scope," *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) (internal quotations omitted):

- "Although claim differentiation is a useful analytic tool, it <u>cannot enlarge the meaning of a claim</u> beyond that which is supported by the patent documents… [T]he doctrine of claim differentiation <u>does not serve to broaden claims beyond their meaning in light of the specification</u>."  (*Fenner Investments, Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1327 (Fed. Cir. 2015)) (internal quotations omitted);

- "claim differentiation <u>can not broaden claims</u> beyond their correct scope"

> *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (internal quotations omitted);

- "as claim 1 is limited to indirect detection by its own plain meaning, it would be <u>inappropriate to use the doctrine of claim differentiation to broaden claim 1</u> to include a limitation imported from a dependent claim, such as direct detection" (*Enzo*, 780 F.3d at 1156-57);

- "claim differentiation <u>does not serve to broaden claims</u> beyond their meaning in light of the specification" (*Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1302 (Fed. Cir. 1999)).

For example, assume an independent and dependent claim as follows—Claim 1:  A car having at least four wheels. Claim 2:  The car of claim 1, wherein the car has only two wheels. Does claim differentiation require that the scope of claim 1 include a car with two wheels?  No. "[A]s claim 1 is limited to [at least four wheels] by its own plain meaning, it would be inappropriate to use the doctrine of claim differentiation to broaden claim 1 to include a limitation imported from a dependent claim, such as [two wheels]."  *Enzo*, 780 F.3d at 1156-57.

If there is a conflict between the scope of the independent claim and the scope required by a dependent claim, this does not result in broadening the independent claim; instead, under controlling Federal Circuit law, the dependent claim would be invalid as indefinite under section 112.  *Pfizer, Inc. v. Ranbaxy Labs. Ltd.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006); *Total Containment, Inc. v. Environ Products, Inc.*, 921 F. Supp. 1355, 1385-86 (E.D. Pa. 1995) ("If [dependent] claim 13 expands the scope of [independent] claim 11 …, [dependent] claim 13 is invalid."), *aff'd in part, vacated on other grounds*, 106 F.3d 427 (Fed. Cir. 1997).  For example, in *Pfizer* the court held, "Ranbaxy correctly argues that [dependent] claim 6 … is completely outside the scope of [independent] claim 2.  We must therefore reverse the district court with respect to this issue and hold [dependent] claim 6 invalid for failure to comply with § 112, ¶ 4." *Pfizer*, 457 F.3d at 1292.

Defendants assert that these controlling Federal Circuit cases "are inapplicable as they do

not address claim broadening under §305." Mot. 11.  The necessary premise of this argument is that there are two different standards for interpreting claims—one standard for regular claim construction and a different standard for purposes of section 305.  That premise is false.  Under controlling Federal Circuit law, traditional principles of claim construction apply equally to a section 305 analysis.  *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1272 (Fed. Cir. 2011); *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1580 (Fed. Cir. 1995).  Because a section 305 analysis requires applying correct constructions, it has the same interpretive goal as regular claim construction and, therefore, requires applying the same interpretive rules to ascertain correct construction:

> Whether amendments enlarge the scope of a claim is a matter of claim construction.… Claim interpretation is the <u>process of giving proper meaning to the claim language</u>. … Therefore, the language of the claim frames and ultimately resolves all issues of claim interpretation. In determining the meaning of disputed claim terms, however, a construing court considers the written description, the prosecution history, and extrinsic evidence.

*Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 692-94 (Fed. Cir. 1997) (emphasis added).

Finally, because claim differentiation is not a rule of required claim scope, but instead a potential tool for finding the ordinary meaning of claim terms during claim construction, claim differentiation is considered only if the court is presented with a claim differentiation argument during claim construction.  But neither side here has argued that dependent claims 15 and 16 should be considered when interpreting the terms in claim 6.  In fact, dependent claims 15 and 16 are never even mentioned in either side's claim construction brief. [2]  Accordingly, claim

---

[2]      Defendants suggest that because Network-1's P.R. 4-3 disclosures cited claims 15 and 16, it follows that Network-1 is relying upon them to interpret the claims.  That is not correct, as demonstrated by Network-1's *Markman* Brief.  Moreover, Network-1 notified Defendants in writing that "Network-1 is not relying on … disclaimed claims 15 and 16 as intrinsic evidence that supports Network-1's construction of 'secondary power source,'" and offered to file an amended P.R. 4-3 if Defendants desired any further clarification of the record.  Ex. 54.

differentiation can have no impact on the scope of claim 6.

      **2.**    ***ArcelorMittal* did NOT hold that adding a broader dependent claim will broaden the independent claim.**

Defendants assert: in *ArcelorMittal*, "dependent claims were found to improperly broaden the scope of an independent claim." Mot. 8-9; 12. That is false; the court did no such thing. As we show below, the parties had stipulated to the construction of the reissued independent claim, which construction was broad enough to encompass the dependent claims. The court in *ArcelorMittal* (i) never addressed the scope of the reissued claims, and (ii) never suggested (much less held) that adding a broader dependent claim would broaden the scope of an independent claim that did not otherwise encompass the dependent. In fact, the only inference from the court's holding is precisely the opposite.

In *ArcelorMittal*, the district court construed the phrase "a very high mechanical resistance" to mean a mechanical resistance "greater than 1500 MPa." *ArcelorMittal*, 786 F.3d at 887. The jury found non-infringement. *Id*. ArcelorMittal appealed, and the Federal Circuit "affirmed the district court's construction of 'a very high mechanical resistance,' but reversed and remanded on other grounds." *Id*. While that appeal had been pending, ArcelorMittal had prosecuted a reissue of the patent, which added dependent claim 23 that encompassed a mechanical resistance of between 1000 MPa and 1500 MPa. *Id*. at 887-888. When the case came back from appeal, the district court addressed improper broadening, which required comparing part (1), the scope of the claims prior to reissue, with part (2) the scope of the claims in the reissued patent. For part (2), both sides stipulated that the scope of independent claim 1 in the reissue patent encompassed mechanical resistance above 1000 MPa (all emphasis added): "All parties and the district court agree that 'very high mechanical resistance' in the RE153 patent means steel with a mechanical resistance of 1000 MPa or more … and defendants

stipulated to that construction." Ex. 58 (*ArcelorMittal* Reply Brief) at 6; *id*. at 4-5 ("The scope

of [reissue] claims 1-23 is undisputed"); Ex. 57 (*ArcelorMittal* Opening Brief) at 31 ("all parties

and the district court agreed"); *id*. at 32 ("undisputed that reissue claim 1 reaches 1000 MPa").

Because that claim scope was stipulated, neither the district court nor (later) the court of

appeal addressed part (2), the scope of the reissued claim (much less whether adding the

dependent claim broadened the independent claim). The sole issue concerned part (1), the scope

of the claim prior to reissue proceedings. Defendants argued that the district court was bound by

the mandate of the court of appeals affirming the narrower claim construction and that the court

could not revisit the issue under the law-of-the-case doctrine and the mandate rule.

ArcelorMittal argued that an exception applied for "new evidence" by virtue of the subsequent

prosecution history. *ArcelorMittal*, 786 F.3d at 889.

The court of appeal held: "The successful prosecution of [a reissue] patent is not 'new

evidence' sufficient to trigger the extraordinary circumstances exception to the mandate rule and

the law-of-the-case doctrine." [3] *Id*. In particular, the court of appeal noted that while prosecution

history can be used "to narrow the interpretation of a disputed term" if it "includes disavowals of

claim scope," "ArcelorMittal makes no argument" that the reissue proceedings "otherwise

narrowed" the claims. *Id*. at 890. "Accordingly, the prosecution history of the reissue patent

here is not 'new evidence' of the scope of the original claims for the purposes of the § 251

inquiry. Under the law-of-the-case doctrine, therefore, the district court was bound by this

court's prior construction of the original claims, which ArcelorMittal concedes was narrower

than the scope of the reissue claims." *Id*. The following points are relevant.

*First*, the Federal Circuit never addressed part (2), the scope of the independent claim

---

[3]     Defendants assert that Network-1 is "[u]nable to distinguish the holding of ArcelorMittal." Mot.
12. In truth, Defendants never even mention, much less address, the holding of *ArcelorMittal*, which is
stated in the text above. We have no difficulty distinguishing that holding.

after reissue; instead, the parties stipulated to that claim scope.  Accordingly, the Defendant are

wrong when they assert that "dependent claims were found to improperly broaden the scope of

an independent claim."  Mot. 12.  Defendants quote, out of context, the court of appeals'

statement that the addition of a dependent claim had "the practical effect of expanding the scope

of claim 1."  Mot. 8, *quoting ArcelorMittal*, F.3d at  890.  By that sentence the court was not

holding (or stating in dicta) that adding a dependent claim serves to broaden an independent

claim sufficiently to cover that dependent claim.  Instead, the court made that statement while

considering whether the reissue proceedings contained "new evidence."  The court merely

affirmed that the only potential effect of the dependent claim would be to broaden, not narrow,

which meant it could not be new evidence because only narrowing prosecution history is given

effect.  The court of appeal never held that the dependent claim should be used to broaden.

<u>Second</u>, the court in *ArcelorMittal* did not purport to overrule or distinguish the

controlling precedent cited above that a dependent claim cannot broaden, and that if the two are

in conflict, the dependent claim is invalid, not the independent claim.  The court did not mention

this authority, attempt to distinguish it, or include any analysis of the issue.  And the court could

not overrule those prior precedents, because it was not sitting *en banc*.  *George E. Warren Corp.*

*v. United States*, 341 F.3d 1348, 1351 (Fed. Cir. 2003) ("to overrule a precedent, the court must

rule *en banc*"); *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1291 (Fed. Cir.

2015) ("We are bound by prior Federal Circuit precedent unless relieved of that obligation by an

*en banc* order of the court or a decision of the Supreme Court") (internal quotations omitted).

<u>Third</u>, it is improper to read into *ArcelorMittal* an implied holding on an issue that was

not addressed by the court.  "We have consistently held that panel authority that does not address

an issue is not binding as to the unaddressed issue."  *Ark. Game & Fish Comm'n v. United*

*States*, 637 F.3d 1366, 1378, n.7 (Fed. Cir. 2011); *Dethmers Mfg. Co. v. Automatic Equip. Mfg.*

*Co.*, 272 F.3d 1365, 1378 (Fed. Cir. 2001); *Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581, (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.").  Because in *ArcelorMittal* the scope of reissue claim 1 was resolved by stipulated construction, the court of appeals assumed (*i.e.* did not decide) that the claim scope was broadened to encompass the dependent claim.  An assumed proposition is not a holding.

*Fourth*, were it proper to infer from *ArcelorMittal* a holding by unexpressed implication, the inference would be precisely the opposite.  If a dependent claim could broaden the scope of an independent claim, then the addition of a dependent claim would have constituted new evidence sufficient to override the law of the case.  But the court held that the prosecution history did not constitute new evidence.  The necessary inference is that a dependent claim cannot be used to broaden the scope of an independent claim.

### 3.    Prosecution history cannot broaden the scope of the claim.

Defendants argue that, although claims 15 and 16 were disclaimed and cannot be considered (as discussed below), the prosecution history associated with these disclaimed claims broadened the scope of the underlying independent claims.  Mot. 13.  Defendants are wrong.  Under controlling Federal Circuit law, prosecution history cannot broaden the scope of claims; it can only "make[] the claim scope narrower than it would otherwise be:"

- "prosecution history can often inform … whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be" (*Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005));

- "Although the prosecution history can and should be used to understand the language used in the claims, it ... cannot enlarge… the limitations in the claims.") (*Regents of Univ. of Minnesota v. AGA Med. Corp.*, 717 F.3d 929, 945 (Fed. Cir. 2013) (internal quotations omitted));

- "where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary

meaning of the claim." *TomTom, Inc. v. Adolph*, 790 F.3d 1315, 1325 (Fed. Cir. 2015) (internal quotations omitted).

Indeed, *ArcelorMittal* specifically noted that prosecution history may be relevant "to <u>narrow</u> the interpretation of a disputed term," but "we have <u>never found</u> that such reissue prosecution history is relevant to whether an applicant <u>broadened the scope</u> of an original claim in the § 251 analysis." *ArcelorMittal*, 786 F.3d at 890 (emphasis added). And finally, Defendants themselves admit (in their Claim Construction Brief) that there is "no support for the notion of a 'broadening disclaimer,' and indeed the law is contrary." Dkt. 611 at 18-19.

*Allergan*, relied on by Defendants (Mot. 12), does not suggest that prosecution history can broaden claim scope. In *Allergan*, the Court determined that "the term 'brimonidine' has an accepted scientific meaning" and "the plain and ordinary meaning of brimonidine encompasses brimonidine free base and brimonidine tartrate." *Allergan Sales, LLC v. Sandoz., Inc.*, 2013 WL 4854786, at *5 (E.D. Tex. Sept. 5, 2013). In holding that brimonidine should be construed consistent with its plain and ordinary meaning, the Court observed that prosecution history associated with disclaimed claims "supports" the plain and ordinary meaning of brimonidine. *Id.* at *6. The Court did not suggest, much less hold, that prosecution statements could be used to broaden the scope of a claim.

**B.     Reason 2:  Claims 15 and 16 cannot broaden the scope of the original claims because they were disclaimed and, therefore, never existed.**

Under Federal Circuit law, if a patent owner files a statutory disclaimer for a claim under 35 U.S.C. § 253, "the patent is viewed as though the disclaimed claims had never existed:"

- "A statutory disclaimer under 35 U.S.C. § 253 has the effect of canceling the claims from the patent and the patent is viewed as though the disclaimed claims <u>had never existed</u> in the patent." (*Guinn v. Kopf*, 96 F.3d 1419, 1422 (Fed. Cir. 1996) (emphasis added));

- "upon entry of a disclaimer under § 253, we treat the patent as though the disclaimed claim(s) <u>had never existed</u>" (*Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (internal quotations omitted) (emphasis

13

added));

- "the patent is treated as though the disclaimed claims never existed" (*Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed. Cir. 1998));

- "Under Federal Circuit precedent, a disclaimed patent claim is treated as if it never existed." (*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13CV213-JRG-RSP, 2015 WL 627971, at *1 (E.D. Tex. Feb. 9, 2015) (internal quotations omitted).

Network-1 filed a statutory disclaimer of claims 15 and 16 under 35 U.S.C. § 253.  Ex. 56.

Accordingly, because disclaimed claims 15 and 16 "never existed," they cannot broaden claim

scope and cannot be the basis of any alleged improper broadening claim.

Defendants suggest that Network-1's disclaimer was "untimely" (Mot. 12) but present no

legal or logical basis for this suggestion.  If disclaimed claims 15 and 16 "never existed," it does

not matter if they were disclaimed the day after they issued or on May 6, 2016.  There is no

exception to the rule that disclaimed claims "never existed," *e.g.*, that disclaimed claims never

existed, unless the patent owner filed the disclaimer after a party files a letter brief asserting that

the disclaimed claims broadened the underlying independent claims.  Defendants also assert that

the disclaimers "reinforce" their improper broadening arguments.  Mot. 12.  Defendants do not

explain how eliminating the factual basis for their argument (it "never existed") reinforces their

argument. Claims cannot be invalid based on "attempted" broadening; it requires actual

broadening.

### C.  Reason 3:  The court's claim construction ruling for "secondary power source" will necessarily dictate that the scope of the term did not change after reexamination.

As discussed, to decide the section 305 challenge, the Court must determine part (1), the

scope of "secondary power source" before reexamination, and part (2), the scope "secondary

power source" after reexamination.  An unstated necessary premise of Defendants' argument is

that for part (1), the Court is bound by the *Cisco* court's construction of secondary power source.

That is false.  As we show below, in determining the scope of claim 1 before reexamination, this Court is not bound by a prior claim construction ruling.  Instead, this Court's claim construction ruling as to "secondary power source" will necessarily dictate that the claim had the same claim scope both before and after reexamination.  Moreover, if the Court adopts Network-1's proposed construction of "secondary power source," it will not produce a broader claim.

> **1.     The claim construction ruling from other cases is not law-of-the-case, or binding in any way.**

The claim construction rulings in *D-Link* and *Cisco* did not fix the scope of the claim, because those two cases settled before a verdict, and, therefore, the constructions were never appealed or affirmed in a final judgment.  Accordingly, "the previous construction is not binding on the court." *Luv N' Care, Ltd. v. Jackel International Limited*, 115 F. Supp. 3d 808, 816 (E.D. Tex., 2015); *SimpleAir, Inc. v. Google, Inc.*, 2015 WL 1906016, at *3 (E. D. Tex., 2015) (same); *Abstrax, Inc. v. Hewlett-Packard Company*, 2015 WL 156555, at *4 (E. D. Tex., 2015) (same). Defendants agree that "that *D-Link* and *Cisco* are not legally binding." Mot. 11.

This is another critical distinction between this case and *ArcelorMittal*.  While Defendants assert that *ArcelorMittal* involved "[n]early identical facts," (Mot. at 8) the critical facts for both part (1) and part (2) are very different.  As shown above, for part (2) the parties in *ArcelorMittal* stipulated that the scope of the reissued claim was broadened to encompass a dependent claim.  That is not true here.  And for part (1), the district court in *ArcelorMittal* was bound by the law-of-the-case and the mandate from the court of appeals and could not revisit the construction of the original claim.  That is not true here.  Both of these very different facts were necessary to the *ArcelorMittal* court's ruling:  "Under the law-of-the-case doctrine, therefore, the district court was bound by this court's prior construction of the original claims, which ArcelorMittal concedes was narrower than the scope of the reissue claims." *ArcelorMittal*, 786

F.3d at 890.

Moreover, the result in *ArcelorMittal* was dictated by another key difference from the present case.  The patent owner in *ArcelorMittal* had lost on infringement on the claim construction that was affirmed by court of appeals. *ArcelorMittal France v. AK Steel Corp.*, 989 F. Supp. 2d 364, 370 (D. Del. 2013) ("As conceded by ArcelorMittal, the accused products did not meet the limitation at issue, as [previously] construed by the Federal Circuit.").  The only way the patent owner could establish infringement, therefore, was (i) to stipulate that the claim was broadened in reexamination and (ii) attempt to undo the law-of-the-case by arguing that new evidence justified reopening the original claim construction.

Just the opposite is true here.  Network-1 can, and did, prove infringement under the *Cisco* court's construction of "secondary power source."  Network-1 asserted claim 6 against industry leader Cisco and six other power-over-Ethernet switch manufacturers' switches who all employed an industry standard detection method, the same method used by Defendants here.  On the fourth day of a five-day trial, after both sides' infringement experts had testified and been cross-examined, all defendants agreed to license the '930 patent and to pay royalties that directly reflected the strength of the infringement proof:  an upfront payment of $32 million and running royalties of over $50 million to date.  Exs. 52, 53.

## 2. The Court will reach the same conclusion for part (1) and part (2).

The Court's claim construction ruling will determine part (2), the scope of "secondary power source" after reexamination.  To do so, the Court will apply claim construction principles to the relevant evidence identified by the arguments of the parties and reach a conclusion. Notably, neither party asserted, and both sides agreed, (i) dependent claims 15 and 16 play no role in construing "secondary power source," and (ii) no prosecution history statements were made by the patentee that disavowed claim scope.  Both sides' arguments focused on the

meaning of the words "secondary power source," the surrounding claim language, and the specification.

To determine part (1), the scope of "secondary power source" before reexamination, the Court will be analyzing the exact same claim language (it was never amended).  The Court will apply the exact same claim construction principles to the exact same words, surrounding claim language, and specification, and will therefore necessarily reach the exact same conclusion as it reaches for part (2).  As a result, regardless of which proposed claim construction for "secondary power source," the Court adopts the Court will conclude that the reexamination did not change the scope of the claim.  Therefore, because the *Cisco* claim construction ruling has no preclusive effect and the Court will reach the same decision for both part (1) and part (2), Claim 6 cannot be found to be broadened.

Defendants assert that this key distinction between *ArcelorMittal* is not important because "[m]any broadening cases have invalidated claims under § 305 without a prior binding claim construction."  Mot. at 11.  But what Defendants leave out is that in each of the cases they cite, the reexamination or reissue had <u>amended the claim</u> to remove a limitation of the claim. [4] No case has ever invalidated an unmodified original claim, apart from *ArcelorMittal*, where for part (1) the patent owner was subject to a binding claim construction and for part (2) the patent owner had stipulated that the reissue claim was broadened.

### 3.     Network-1's proposed construction of "secondary power source" does not result in a broader claim.

In addition to erroneously assuming that the scope of the claim prior to reexamination

---

[4]     In *Thermalloy*, the patentee deleted a "6 to 1 ratio" limitation from all reexamined claims. *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 692-93 (Fed. Cir. 1997) ("The reexamined patent contains eight new claims, none of which contain the 6 to 1 ratio language of original claim 1."). *Anderson* involved a single independent claim in which 13 words and phrases were deleted from the original claim.  *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1348 (Fed. Cir. 1998).  In *Quantum*, the patentee amended the original claims during the reexamination to include the word "approximately." *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1578 (Fed. Cir. 1995).

was fixed by the *Cisco* construction, Defendants also erroneously assume that Network-1's proposed construction of "secondary power source" results in a claim that is broader than one under the *Cisco* construction.  That is not true.  Our proposed construction makes clear to a lay jury exactly the claim scope that the Cisco court intended by that construction.

The disputed portion of Network-1's construction is that "the secondary power source can be the same source of power as the main power source."  In construing "secondary power source," the *Cisco* court explained that the secondary power source can be the same source of power as the main power source.  The *Cisco* court explained that the proper construction "does not impose a requirement of 'entirely separate and distinct'" power sources, and "does not require 'separate identifiable physical elements' for each of the power sources." *Cisco*, at 11.  Instead, the construction "requires only that there be physically separate 'driving points' because each power source 'drives' a separate load." *Cisco*, at 12.  The secondary power source can simply be a "type of controlled valve" for power from the main power source rather than a different source of power:  "the claim language indicates that the secondary power source is used between the main power source and the access device as a type of controlled valve for electrical energy applied from the main power source to the access device." *Cisco*, at 14.  Accordingly, when the *Cisco* Court's construction is understood with the additional explanations provided by the Court itself, the *Cisco* construction encompasses a "secondary power source" where "the secondary power source can be the same source of power as the main power source."  Network-1's construction is not broader.

* * *

Because "claims cannot be broader than themselves" (*MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1319 (Fed. Cir. 2010)), unmodified claim 6 cannot be found to have been improperly broadened.  No case has ever found an un-amended claim broader and

invalid where the patent owner did not expressly assert and stipulate that the reexamination did in fact broaden the scope of the claim, much less found clams broadened based on the addition of disclaimed claims.  To do so would be contrary to controlling Federal Circuit law.

## III.    Challenge 2:  Claims were not improperly broadened by including the "current …" limitation in claim 21.

Defendants assert—contradicting their *Markman* Brief—that new claim 21 broadens the scope of "low level current" in claim 6. [5]   For the reasons set forth above, because claim 6 was an original claim that was not modified in reexamination, it cannot possibly have been broadened. [6]  In addition, the "current" of claim 21 cannot broaden the scope of "low level current" in claim 6 because neither side asserted that independent claim 21 is relevant to (much less broadens) the scope of "low level current."  Dkt. 596 at 16-23; Dkt. 611 at 2-7; Ex. 54. What's worse for Defendants, any claim differentiation argument that the parties could have made with respect to claims 6 and 21 would have created a presumption that the "low level current" of claim 6 and the "current" of claim 21 have different—not the same—meanings.

Defendants assert that "low level current" was expanded beyond its ordinary meaning and "replaced" with the "current…" of claim 21, which Defendants assert is broader.  Mot. 6, 17. The necessary premise underlying Defendants' argument is that if two independent claims use different phrases (one narrower and one broader), the narrower phrase should be "replaced" with the broader phrase, and the scope of the broader phrase "overrides" the ordinary meaning of the narrower phrase, simply because the broader phrase is "probative" of the meaning of the

---

[5]        If the Court adopts Defendants' construction of "low level current", then the scope of "low level current" would not have been broadened and this challenge fails.

[6]        For the same reasons set forth above with respect to "secondary power source," regardless of which proposed claim construction for "low level current" the Court adopts, the Court will conclude that the reexamination did not change the scope of the claim.  Therefore, because the *Cisco* claim construction ruling has no preclusive effect and the Court will reach the same decision for both part (1) and part (2) of the broadening analysis, claim 6 cannot be found to be broadened.

narrower phrase.  Mot. 1, 6, 14.  Defendants do not (and cannot) cite any support for this

approach to construing claims which is contrary to Federal Circuit law.

To the extent that the "current…" of claim 21 is used to interpret the "low level current"

of claim 6 (which neither party argued), the opposite presumption would apply:  "[w]hen

different words or phrases are used in separate claims, a difference in meaning [not the same

meaning] is presumed."  *Nystrom v. Trex Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005).  Defendants

do not (a) cite authority for their proposition that if two independent claims use different phrases

in "parallel structure" or "similar placement" in the claims (Mot. 15, 17), both phrases should be

given identical constructions based on the broader of the two phrases, or (b) demonstrate that

either side even suggested that claim 21 was relevant in construing "low level current." [7]

Instead, Defendants make three arguments.  Each fails.

Defendants' argument 1:  Defendants assert that because Network-1 identified claim 21

as support for "low level current" in its PR 4-3 disclosure, independent claim 21 must broaden

the scope of claim 6.  Mot. 16-17.  There are two critical flaws with this argument.  *First*, there is

zero support for the necessary premise underling Defendants' argument—that if a party identifies

an independent claim as support for a phrase found in another independent claim in a PR 4.3

disclosure, the terms used in "similar placements" in both claims should be given the identical

construction (which must be based on the broader of the two phrases).  The flaw in Defendants'

premise can be illustrated using a simple example:  Independent claim 1:  "A car with four

wheels."  Independent claim 2:  "A car with five wheels."  If the patent owner cites, in its 4-3

disclosure, claim 2 as support for its construction of "four wheels," does it mean that "four

wheels" should be broadened to "five wheels" based on the "similar placement" of "four" and

---

[7]       To the extent Defendants' manufactured tool of interpretation were valid, it could impact claim
scope only if a party used the tool during claim construction.  Here, neither side made such an argument.

"five" in the claims?  No.  _Second_, patent owner confirmed that it did not rely on claim 21 for its construction of "low level current."  Ex. 54.  Accordingly, neither side relies on claim 21 to construe "low level current" and it cannot be a basis for broadening the scope of the phrase.

Defendants' argument 2:  Defendants assert that because the '930 specification discloses only a single embodiment, "low level current" and the "current…" of claim 21 must both be limited to the preferred embodiment and, in doing so, must both be given the broader construction of the two.  Mot. 16.  This argument is contrary to Federal Circuit law which "rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."  _Phillips_, 415 F.3d at 1323.

Defendants' argument 3:  Defendants assert that, in prosecution, Network-1 "linked" "low level current" from claim 6 and the "current…" from claim 21, and therefore, they must both be construed identically with the broadest scope.  Mot. 15-16.  Defendants are wrong. _First_, no canon of claim construction holds that if two different phrases are "linked" during prosecution, both terms should be construed to have the same scope, much less that of the broader term.  _Second_, if Network-1's construction of "low level current" is correct independent of claim 21, then there cannot be improper broadening.  The cited prosecution history confirms that Network-1's construction is correct independent of claim 21.

## III.     Challenge 3:  Claims 22 and 23 are not broader than original claim 6.

### A.     Claims 22 and 23 are not broader than original claim 6 based on the sensing elements.

Defendants assert that reexamination claims 22 and 23 are broader than original claim 6 because "sensing a voltage level" is required in claim 6 but is an "optional" "non-requirement" in claims 22 and 23.  Mot. 1, 18-19. [8]  Contrary to Defendants' assertion, claims 22 and 23 both

---

[8]     A claim is broadened only when its scope is broader than each and every original claim.  35 U.S.C. 251; MPEP 1412.03 (a claim is not broadened if it is "equal in scope to, any other claim which

require "sensing a voltage level."

"[W]hether the claims have been materially or substantially enlarged must be determined upon the claim as a whole." *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1349 (Fed. Cir. 1998). Here, analyzing claims 22 and 23 "as a whole" demonstrates that they are not broader than original claim 6. While the phrase "can be sensed" found in one element of claims 22 and 23 might be considered optional by itself, other contextual language in both claims requires that the voltage level actually be sensed. Both claims 22 and 23 require that power be

"controlled" in response to a "preselected condition of the sensed voltage level" *i.e.*, steps [e] in claims 22 ("the sensed voltage level") and 23 ("said voltage level"). The language "the sensed voltage level" and "said voltage level" in element [e] of each

> (d) a main power source connected to supply power to the data node and deliver a low level current from said main power source to the access device over said at least one data signaling pair resulting in a ==voltage level on the data signaling pair that can be sensed== in response to the low level current;
>
> (e) a secondary power source arranged to supply power from the data node via said data signaling pair to the access device, wherein the power supplied by said secondary power source to the access device is ==controlled in response to a preselected condition of the sensed voltage level.==

claim demonstrates that the voltage level must actually be sensed—"the sensed voltage level" can only exist if the voltage level is actually sensed. Moreover, power can only be controlled "in response to" a preselected condition of "the sensed voltage level" if the voltage level is actually sensed.

Defendants focus exclusively on the first time the voltage level is referenced in each claim but ignore the other contextual claim language referring to "the sensed voltage" and "said voltage level." Accordingly, "[v]iewing the claim amendments in conjunction [*e.g.*, elements [d] and [e] of claims 22 and 23], the amended claim does not encompass any subject matter beyond that encompassed by the original claim." *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183

---

appears in the patent."). Accordingly, Defendants must show that claims 22 and 23 are broader than original claim 6. Defendants' argument based on the "sensing means" of claim 1 is therefore irrelevant.

F.3d 1369, 1373-75 (Fed. Cir. 1999). [9]

**B.    Claims 22 and 23 are not broader than original claim 6 based on the controlling elements.**

Defendants assert that new claims 22 and 23 are broader than original claim 6 because they do not include "controlling power" as required by claim 6.  Mot. 19-20. [10]   Contrary to Defendants' assertion, Claims 22 and 23 both require "controlling power."

Again, "the question of whether the claims have been materially or substantially enlarged must be determined upon the claim as a whole."  *Anderson*, 160 F.3d 1349.  Here, analyzing claims 22 and 23 "as a whole" demonstrates that they both require "controlling power" and are therefore not broader than original claim 6.  Claim 22 requires that "said secondary power source is controlled…." and claim 23 requires "receiving at said access device controlled power…."  If a "power source is controlled" or "controlled power" is received, "controlling power" must have taken place.  There cannot be "controlled power" unless power is actually controlled.

Defendants do not identify <u>any</u> scope of claims 22 and 23 that is outside the scope of claim 6 with respect to "controlling power."  Instead, Defendants assert that the new claims do "not specify how (or by whom) the power is controlled."  Mot. 20.  But original claim 6 does not specify "how (or by whom) the power is controlled" and, as a result, "how" and by "whom" cannot be the basis for improper broadening.

**C.    Claim 23 is not broader than original claim 6 based on the providing element.**

Defendants assert that new claim 23 is broader than original claim 6 because original claim 6 requires "providing" five elements while claim 23 requires "providing" only one

---

[9]     Contrary to Defendants' suggestion, whether the sensing "may be performed by another entity" does not change the scope of the claims which "is a matter of claim construction."  *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1302 (Fed. Cir. 2008) (internal quotations omitted).

[10]     Again, Defendants must show that claims 22 and 23 are broader than original claim 6.  As a result, Defendants' argument based on the "control means" of claim 1 is irrelevant.

element.  Mot. 20-21.  Contrary to Defendants' assertion, claim 23 requires all five elements of

claim 6, as illustrated in the following color-coded chart:



That claim 23 does not specifically use the word "providing" with respect to four elements does

not mean that these elements are not required—they are all claim limitations and are therefore

required.

Defendants do not (and cannot) demonstrate how the scope of claim 23 is broader

because it does not specifically use the word "providing."  Instead, Defendants assert that the

word "providing" is "relevant in this case because of what Network-1 accuses of infringement."

Mot. 21.  But what Network-1 accuses of infringement is irrelevant in a broadening analysis

because whether claims are broadened "is a matter of claim construction," *Predicate Logic, Inc.*

*v. Distributive Software, Inc.*, 544 F.3d 1298, 1302 (Fed. Cir. 2008) (internal quotations omitted),

and claim construction does not depend on what is accused, *Embrex, Inc. v. Serv. Eng'g Corp.*,

216 F.3d 1343, 1347 (Fed. Cir. 2000) ("In claim construction the words of the claims are

construed independent of the accused product" (internal quotations omitted)).  Similarly,

"Network-1's impetus behind the new claim" (Mot. 21) is also irrelevant as to whether the claim

scope of claim 23 is broader than claim 6.

24

Dated:  May 29, 2016                              Respectfully submitted,


                                                 By:  /s/ Sean A. Luner
                                                 Sean A. Luner
                                                 State Bar No. 165443
                                                 Gregory S. Dovel
                                                 State Bar No. 135387
                                                 DOVEL & LUNER, LLP
                                                 201 Santa Monica Blvd., Suite 600
                                                 Santa Monica, CA 90401
                                                 Telephone:  310-656-7066
                                                 Email:  sean@dovel.com
                                                 Email:  greg@dovel.com

                                                 T. John Ward, Jr.
                                                 State Bar No. 00794818
                                                 Claire Henry
                                                 State Bar No. 24053063
                                                 Andrea Fair
                                                 State Bar No. 24078488
                                                 WARD, SMITH & HILL, PLLC
                                                 1127 Judson Road, Suite 220
                                                 Longview, Texas 75601
                                                 Telephone: (903) 757-6400
                                                 Facsimile: (903) 757-2323
                                                 Email: jw@wsfirm.com
                                                 Email: claire@wsfirm.com
                                                 Email: andrea@wsfirm.com


                                                 ATTORNEYS FOR PLAINTIFF,
                                                 NETWORK-1 TECHNOLOGIES, INC.


**<u>Certificate of Service</u>**

       I certify that this document is being filed electronically and, as a result, is being served on
counsel of record through the Electronic Filing System on the filing date listed above.

                                   /s/ Sean Luner


25