IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF TEXAS TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § § § | |
| v. | § § § § | CIVIL ACTION NO. 6:11-cv-492-RWS-KNM |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

# ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Before the Court are the parties' cross-objections to the Report and Recommendation of the United States Magistrate Judge (Docket No. 693) regarding the disputed claim terms in United States Patent No. 6,218,930 ("the '930 Patent"), and regarding Defendants' Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 305.[1]  Having reviewed the written objections *de novo*, both Plaintiff's and Defendants' objections are **OVERRULED**.  The Magistrate Judge's Report and Recommendation (Docket No. 693) ("Report") is accordingly **ADOPTED**.

## PLAINTIFF'S OBJECTIONS

Plaintiff has filed two sets of objections to the Report. First, Plaintiff objects to the Magistrate Judge's construction of certain disputed claim terms.  Docket No. 722.  Second, Plaintiff objects to the Report regarding Defendants' Motion for Summary Judgment of Invalidity under 35 § 305.  Docket No. 723.

---

[1] The Defendants in this case are Axis Communications AB, Axis Communications, Inc., Hewlett-Packard Company, Avaya, Inc., and Juniper Networks, Inc.

**I.     Plaintiff's Objections to the Report and Recommendation Regarding Claim Construction (Docket No. 722)**

**A. Main Power Source**

Plaintiff first objects to the Report's construction of "main power source" as a "DC power source." Docket No. 722 at 1. Plaintiff argues that the Report improperly excluded AC power sources because: (1) neither the claim language, specification, nor prosecution history supports such a construction; and (2) construing the term as including an AC power source would not render the claims inoperable since (a) Network-1's proposal encompasses both AC and DC power sources, and therefore would fully encompass an embodiment that used an AC power source; and (b) it is quite common to have infringing switches operate from an AC power source. Docket No. 722 at 2–3.

Plaintiff's first point—that a construction excluding AC power sources is unsupported by the claim language, specification, or prosecution history—is unavailing. The Court discussed this argument in *Cisco*. *See Cisco Markman* at 8–10; *see also Cisco Reconsideration* at 3–4.[2] As the Report noted, Defendants' expert explained that the '930 Patent itself states that "[t]here are three states which can be determined: no voltage drop, a fixed level voltage drop, or a varying level voltage drop." *See* Docket No. 693 at 7 (quoting Docket No. 612, Ex. B ("Neikirk Decl.") at ¶ 37 (citing '930 Patent at 3:2–4)). The Report found persuasive the opinion of Defendants' expert that if the "main power source" provided AC current, it would be unable to detect the second state, a fixed voltage drop. Docket No. 693 at 7–8 (citing Neikirk Decl. at ¶ 37); Docket No. 742 at 2. As the Report concluded, "[a] construction that renders the claimed invention inoperable should be

---

[2] The Court previously construed terms of the '930 Patent in *Network-1 Security Solutions, Inc. v. D-Link Corp., et al.*, No. 6:05-cv-291, Docket No. 137 (E.D. Tex. Nov. 20, 2006) ("*D-Link Markman*" or "*D-Link*"), and *Network-1 Security Solutions, Inc. v. Cisco Systems, Inc.*, No. 6:08-cv-30, Docket No. 251 (E.D. Tex. Feb. 16, 2010) ("*Cisco Markman*" or "*Cisco*"), Docket No. 328 (May 18, 2010) ("*Cisco Reconsideration*").

viewed with extreme skepticism." Docket No. 693 at 8 (quoting *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371, 1376 (Fed. Cir. 2002), *vacated and remanded on other grounds*, 537 U.S. 802 (2002)). *See also CANVS Corp. v. United States*, 126 Fed. Cl. 106, 117 (2016) ("Even if defendant's definition were the more customary meaning accepted in the field at the time of invention, it directly contradicts the intrinsic evidence and thus, cannot stand.") (citing *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

To this end, Plaintiff next objects:

> [T]he argument that an AC power source would render the claims inoperable because it could not detect "a fixed voltage drop" as in the preferred embodiment rests on the false premise that Network-1's proposal *precludes* an AC power source. Network-1's proposal encompasses both AC and DC power sources, and, therefore would fully encompass an embodiment that used an AC power source.

Docket No. 722 at 2–3.

Plaintiff appears to argue that construing the term as an AC power source does not render the claims inoperable because its proposal construes the term to include an AC power source. *Id.* This conclusory argument fails to address the crux of the Magistrate Judge's finding that such a construction would be inconsistent with the specification, as discussed in the above-cited proceedings in *Cisco*, and would render the device inoperable. *See* Docket No. 693 at 7–8. Indeed, Plaintiff has not presented evidence to counter Defendants' evidence, cited in the Report, that it is not feasible to detect a fixed voltage drop in the presence of an AC current. *Id.*

Plaintiff's third point—that it is quite common to have switches operate from an AC power source—even if taken as true, similarly fails because it does not respond to the Report's finding that construing "main power source" to include AC power sources would render the claims inoperable. Docket No. 693 at 7–8 (citing Neikirk Decl. at ¶ 37).

The Court **OVERRULES** Plaintiff's objections as to "main power source."

### B. Secondary Power Source

The Report construed "secondary power source" as "a source of power connected to provide power between the data node and the access device using the data signaling pair; the driving points of the secondary power source must be physically separate from the driving points of the main power source." Docket No. 693 at 10. Plaintiff objects to this construction because "it fails to tell the jury explicitly that 'the secondary power source can be the same source of power as the main power source,' as in Network-1's proposal." Docket No. 722 at 3. Specifically, Plaintiff objects:

> [1] [b]y using the modifiers "main" and "secondary" (rather than "first"/"second"), the claims are drafted such that the "main power source" and the "secondary power source" may be the same, different, or overlapping, as long as they perform their respective functions . . . ; and [2] the preferred embodiment expressly uses a single power source as both the "main power source" and the "secondary power source."

*Id.* at 3–4.

Plaintiff's first argument merely rehashes the argument from its claim construction brief. *See* Docket No. 596 at 13 ("By using the modifiers 'main' and 'secondary' (rather than first/second), the claims are drafted such that the 'main power source' and the 'secondary power source' may be the same, different, or overlapping, as long as they perform their respective functions."). As the Report stated, this exact argument was rejected by the court in *Cisco*, which noted that the terms "main" and "secondary" are not mere identifier terms such as "second" and "third", but rather, the terms "main" and "secondary" set forth an operational hierarchy. Docket No. 693 at 9 (citing *Cisco Markman* at 11 (discussing *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1055 (Fed. Cir. 2009))). The Magistrate Judge properly concluded that "main" and "secondary" set forth an operational hierarchy in this case. Docket No. 693 at 9 (citing *Cisco Markman* at 11).

Regarding the second point, Plaintiff also made an identical argument in its claim

construction brief:

> The preferred embodiment in the specification uses a single power source as both the "main power source" and the "secondary power source" . . . .
>
> * * *
>
> Therefore, the specification does not disclaim a device with a single power source that performs all power functions. Instead, it expressly states that a single power source is "the preferred embodiment" in "accordance with the present invention." Accordingly, Defendants' construction would improperly exclude the preferred embodiment.

Docket No. 596 at 14. The specification refers to a "power source 16." *See* '930 Patent at 2:52–57. Nonetheless, as *D-Link*, *Cisco*, and the Report have all discussed, although the power sources may obtain power from a common origin, the "main power source" and "secondary power source" are recited distinctly. *D-Link* at 6–7; *see also Cisco* at 12; Docket No. 693 at 9. In other words, Plaintiff has not demonstrated that the specification discloses that the main power source and the secondary power source can be one and the same.

The Court therefore **OVERRULES** Plaintiff's objections as to "secondary power source."

**C. Low Level Current**

Plaintiff next objects to the Report's construction of "low level current" as "a non-data-signal current that is sufficient to begin the start up of the access device but that is not sufficient to sustain the start up." Docket No. 693 at 12.

Specifically, Plaintiff objects that:

> [t]he Report's recommended construction—that a low level current is "sufficient to begin start up of the access device"—is not based on the purpose served by the low level current for the invention, *but instead serves the particular purpose of a preferred embodiment, namely the effect of the dc-dc switching supply of the preferred embodiment*. This is contrary to controlling Federal Circuit law.

Docket No. 722 at 6 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005))

(emphasis added).

As the Report notes, the *D-Link* and *Cisco* courts ruled that the patentee used the phrase "low level" to have a particular meaning in the context of the patent-in-suit and the relevant art. *See* '930 Patent at 3:12–19; *see also Cisco Markman* at 15–16 ("Thus, the only objective benchmark to guide one skilled in the art is a varying voltage level produced in the return path when the access device is beginning to start up, but is unable to sustain start up. This standard is necessary to guide one skilled in the art in determining a 'low level current' in the context of the '930 Patent and provides a signpost as to whether an accused device is delivering a low level current from the main power supply."); *D-Link Markman* at 8–10. Plaintiff has not persuasively shown any error in this regard.

Plaintiff's remaining objections to the Report's construction of this term revolve around the prosecution history of the term:

> The prosecution history controls the construction of a claim term when the patentee has made a clear and unambiguous disavowal of claim scope . . . . In an IPR [(*Inter Partes* Review)], Network-1 applied the construction of "low level current" to distinguish the prior art: "the claimed 'low level current' must be below a threshold level such that it would not, by itself, operate the access device." . . . "Matsuno does not disclose . . . that the current generated from the 48 volts is insufficient to operate the access devices." . . . This prosecution history constitutes an unambiguous disclaimer. In addition, during a reexamination proceeding, Network-1 submitted the definition from the IPR proceeding, thereby expressly confirming the meaning of "low level current." . . . Under controlling Federal Circuit law, when a patentee in a reexamination submits a claim term definition and manifests agreement with it, that definition is binding in any subsequent litigation.

Docket No. 722 at 5.

However, Plaintiff's reliance on any IPR proceedings does not account for the broader claim construction standard applied in the IPR proceeding. *See In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1276–78 (Fed. Cir. 2015), *aff'd, Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131

(2016). Further, whereas Plaintiff has asserted a disclaimer regarding an upper boundary on the "low level current" (as reproduced above), Plaintiff has not shown that the resulting construction in IPR proceedings should somehow operate so as to preclude any lower boundary on the "low level current."

The Court hereby **OVERRULES** Plaintiff's objections as to "low level current."

II. **Plaintiff's Objections to the Report and Recommendation Regarding Motion for Summary Judgment of Invalidity (Docket No. 723)**

Plaintiff also objects to the Report's conclusion that Claim 23 is impermissibly broader than original Claim 6 because it removes the "providing" step that was originally recited. Docket No. 693 at 22. Specifically, the Report concluded that Claim 23 was impermissibly broadened during the '401 reexamination[3] because while original Claim 6 requires providing five elements (the data node, the access device, the data signaling pair, the main power source, and the secondary power source), new Claim 23 requires "providing" only one element (an access device). Docket No. 693 at 23.

Plaintiff objects:

> The scope of Claim 6 and Claim 23 are, however, equivalent with respect to the "providing" limitations.
>
> * * *
>
> [B]oth claims expressly require that to perform the method for remotely powering access devices there must be provided [a data node, a signaling pair, a main power source, and a secondary power source].
>
> The difference between the two claims is not in scope, but that Claim 6 recites these limitations (i.e., a data node, a data signaling pair, a main power source, and a secondary power source) in one "providing" element, while Claim 23 recites them in separate elements. That Claim 23 does not specifically use the word "providing" with respect to four components does not mean that it has a different claim scope than Claim 6, because Claim 23 uses *other language* to require that these four components be provided, and

---

[3] Reexamination Control No. 90/012,401 ("'401 Reexamination").

> Claim 23 *cannot be performed* without providing these four components
> . . . .

Docket No. 723 at 3–4 (emphasis added).

This objection is substantively similar to the argument Plaintiff made in its claim construction brief and at the *Markman* hearing. *Compare* Docket No. 723 at 24 ("That Claim 23 does not specifically use the word 'providing' with respect to four components does not mean that it has a different claim scope than Claim 6, because Claim 23 uses *other language* to require that these four components be provided, and Claim 23 *cannot be performed* without providing these four components. . . .") (emphasis added) *with* Docket No. 634, June 2, 2016 *Hearing Transcript* at 140:6–11 ("[O]ther claim elements expressly require steps that use them.") and Docket No. 622 at 4 ("That Claim 23 does not specifically use the word 'providing' with respect to four elements does not mean that these elements are not required—they are all claim limitations and are therefore required."). Indeed, the Magistrate Judge's Report noted that Network-1 has not demonstrated that the appearance of such elements as part of other method steps in Claim 23 is equivalent to the recital of the "providing" limitations recited in Claim 6. Docket No. 693 at 23.

This objection is further overruled because it is conclusory. Plaintiff states that "Claim 23 uses other language to require that these four components be provided" and that "Claim 23 cannot be performed without providing these four components." Docket No. 723 at 4. However, Plaintiff has not demonstrated that any "other language" requires affirmatively "providing."

The Court therefore **OVERRULES** Plaintiff's objections to the Report's conclusion that Claim 23 is invalid pursuant to 35 U.S.C. § 305 because of impermissible broadening.

# DEFENDANTS' OBJECTIONS

Defendants have filed two sets of objections to the Report. In their first set, Defendants object to the Report's construction of certain disputed claim terms. In their second set, Defendants object to the Report's recommendation regarding Defendants' Motion for Summary Judgment of Invalidity under 35 U.S.C. § 305.

I. **Defendants' Objections to the Report and Recommendation Regarding Claim Construction (Docket No. 711)**

   A. **Secondary Power Source**

Defendants first object to the Court's construction of "secondary power source" because it includes the phrase "driving points." Docket No. 711 at 1. Specifically, Defendants argue that the phrase "driving points" "finds no support in the '930 Patent, rendering the construction ambiguous and creating a risk of jury confusion."[4] *Id.* Defendants contend that the phrase driving points should not have been included in the Report's construction because the term does not appear in the Court's prior constructions, the patent, the parties' proposals, deposition testimony, or product datasheets. *Id.*

Defendants' argument fails. First, as Plaintiff points out in its Response, there is no rule that the Court may only use words from prior constructions, patents-in-suit, proposals, depositions, or data sheets in its construction of a disputed claim term. Docket No. 736 at 1. Indeed, the relevant question is what a "person of ordinary skill in the art at the time of the invention" would understand the patent claim to mean. *See, e.g., Phillips*, 415 F.3d at 1313 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys. Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

---

[4] HPE also asks this Court to clarify the construction of the term *secondary power source*, and presents additional arguments for why the Court should remove the phrase "driving points" from its construction of "secondary power source." *See* Docket No. 710, Section II, pg. 1–2. The Court does not address those arguments in this Order. The Court will address HPE's Motion for Clarification in a separate Order.

Second, although the phrase "driving points" is not found in the intrinsic evidence, the Court used the phrase in *D-Link* to explain the separateness required between the main power source and the secondary power source. *See D-Link Markman* at 7 ("The additional driving point . . . would necessarily be physically separate from the main power source driving point because each 'drives' separate loads."); *see also Cisco Markman* at 12 ("The Court's construction in the *D-Link* case requires only that there be physically separate 'driving points' because each power source 'drives' a separate load.").

Third, the concept of "driving points" was discussed on the record by Defendants' own counsel at the *Markman* hearing:

> Now, the claims are an important guide to the meaning of these two terms, and in this case they derive the outcome, they derive the correct construction. As the Court noted in *Cisco*, there are separate loads in the claim. One load is the data node and another load is the access device. Each has its own unique power requirements. Each is being powered separately, one by the main power source, the other by the secondary power source. Each power source is providing the necessary power for those different loads to -- to operate based on their unique needs, and for that reason these two different power sources are *separate driving points*.

Docket No. 634, June 2, 2016 *Hearing Transcript* at 40:4–16 (emphasis added).

Likewise, Defendants' counsel agreed at the *Markman* hearing that the *Cisco Markman* defined "secondary power source" by referencing the phrase driving points:

> THE COURT: In *Cisco*, the Court ultimately determined, though, that what must be separate are these driving points in the circuits and that's what must be separated, not the whole thing?
> MR. COOK: Yes, your Honor.

*Id.* at 42:8–12.

Finally, Defendants' own expert has agreed that the secondary power source is a separate driving point. *See* Neikirk Decl. at ¶ 54 ("[A] POSITA would understand that the 'main' and 'secondary' power sources are separate power *driving points*.") (emphasis added).

The Court hereby **OVERRULES** Defendants' objections as to "secondary power source."

### B. Pre-Selected Condition

Defendants next argue that because the Court's construction of "low level current" refers to beginning "start up of the access device," the construction of "preselected condition" should refer to beginning start up of a "power supply of the access device." Docket No. 711 at 2. Defendants argue that the specification does not disclose any other type of "preselected condition." *Id.* Alternatively, Defendants argue that the construction should at least refer to "voltage level" instead of "voltage." *Id.*

Defendants do not explain why the Court should depart from the Report's finding that "preselected condition" is *not* limited to the disclosed embodiments in which the condition refers to sensing that a *power supply* begins to start up, but is unable to sustain the start up. Docket No. 693 at 14. As to Defendants' alternative argument, because the claims themselves recite a preselected condition "of said voltage level" or "of the sensed voltage level," the word "voltage" in the Report's construction is sufficiently clear in the context of the claims.

The Court **OVERRULES** Defendants' objections as to "pre-selected condition."

## II. Defendants' Objections to The Report and Recommendation Regarding Motion for Summary Judgment of Invalidity (Docket No. 713)

### A. Elimination of the "Physically Separate" Requirement

Defendants also object to the Report's finding that the addition of Claims 15 and 16, added during the '401 Reexamination, did not impermissibly broaden Claim 6 and render it invalid. Docket No. 713 at 1.

Defendants argue that the fact that Claims 15 and 16 are not asserted in the present case is irrelevant to the issues of claim construction and claim broadening. Docket No. 713 at 1. The Report's discussion in this regard, that Claims 15 and 16 are not asserted in the present case,

provides background to frame the parties' dispute because Defendants did not challenge Claims 15 and 16 themselves. Rather, Defendants argued that because dependent Claims 15 and 16 must be narrower than Claim 6 from which they depended—and because Claims 15 and 16 purportedly suffered from impermissible broadening in violation of 35 U.S.C. § 305—therefore Claim 6 was also impermissibly broadened. *See* Docket No. 609 at 7–8. The Report merely noted that "Defendants have not adequately demonstrated that any invalidity as to [dependent] Claim 15 or Claim 16 necessarily renders [independent] Claim 6 invalid." Docket No. 693 at 18.

In this regard, Defendants object to the Report's treatment of *ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 887 (Fed. Cir. 2015). In its opening claim construction brief, Defendants argued that because "[n]early identical facts were addressed in *ArcelorMittal* . . . ," it controls the instant case. Docket No. 609 at 8. The Report noted that *ArcelorMittal* is distinguishable from the instant case because "[t]he patentee in *ArcelorMittal* conceded that the scope of the original claims was narrower than the scope of the reissue claims, a fact that is disputed in this case." Docket No. 693 at 18 (citing 786 F.3d at 890). Defendants now argue that the Court erred by treating the claim broadening issue as a question of fact rather than a question of law. Docket No. 713 at 2–3.

Defendants have mischaracterized the Report's use of the word "fact." The Report did not treat the broadening dispute as a factual dispute. Rather, the Report distinguished the facts of the *ArcelorMittal* case from the facts of the instant case to conclude that the outcome in *ArcelorMittal* does not control. Docket No. 693 at 18; 786 F.3d at 890.

Further, Defendants object to the Report's conclusion that *ArcelorMittal* is distinguishable from the present case because *ArcelorMittal* involved the "law-of-the-case" doctrine. Docket No. 713 at 4. Defendants argue that improper broadening should be assessed irrespective of whether

law-of-the-case applies. Docket No. 713 at 4 (citing *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1582 (Fed. Cir. 1995); *Thermalloy, Inc. v. Aavid Eng'g, Inc.*, 121 F.3d 691, 694 (Fed. Cir. 1997)). Defendants urge that "if the law required parties to appeal to the Federal Circuit and obtain a binding claim construction before the issue of claim broadening could be raised, that would seriously undermine the policy against broadening and incentivize patentees to run the risk of improperly broadening their claims." Docket No. 713 at 4.

Defendants' argument assumes the premise that the addition of dependent Claims 15 and 16 had a broadening effect on independent Claim 6. Yet, the central dispute is whether the addition of dependent Claims 15 and 16 in fact had a broadening effect on independent Claim 6. In *ArcelorMittal*, the issue of broadening was not in dispute. 786 F.3d at 890. Rather, the parties disputed whether the law-of-the-case doctrine barred the district court from revisiting the original construction based on subsequent reissue prosecution history. *Id.* Here, unlike *ArcelorMittal*, the issue of broadening is disputed. *Id.* Plaintiff properly urges that to whatever extent dependent Claims 15 and 16 are interpreted as attempting to broaden independent Claim 6, the result would simply be that Claims 15 and 16 are invalid for failure to comply with the requirement that a dependent claim must be narrower than the claim from which it depends. Docket No. 734 at 4; *See* 35 U.S.C. § 112(d) (formerly 35 U.S.C. § 112, ¶ 4); *see also Enzo Biochem Inc. v. Applera Corp.*, 780 F.3d 1149, 1156–57 (Fed. Cir. 2015) ("dependent claims cannot broaden an independent claim from which they depend"). The scope of independent Claim 6 remains unchanged.

Finally, Defendants object to the Report's reliance on *MBO Labs., Inc. v. Becton, Dickinson & Co.*:

> [T]he Report and Recommendation relied on *MBO Labs., Inc. v. Becton, Dickinson & Co.*, which addressed the distinct doctrine of "reissue

recapture" . . . [and] did *not* address whether the addition of a dependent claim can force a broader scope into an independent claim. In *MBO Labs.*, newly added reissue claims 27, 28, 32, and 33 were found invalid under the recapture doctrine, and there was no suggestion that their invalidity affected any original claims. Unlike *MBO Labs.*, *ArcelorMittal* directly controls the present case because there, as here, the addition of a new dependent claim did have the effect of broadening an original independent claim.

Docket No. 713 at 6 (citations omitted); *see MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306 (Fed. Cir. 2010).

For the reasons stated above, *ArcelorMittal* does not control the instant case. Moreover, Defendants' argument against the Court's reliance on *MBO Labs., Inc.* is unavailing. *MBO Labs., Inc.* addressed the general issue of reissue and the rule of recapture:

> Finally, the district court erroneously invalidated the entire [Reissue '885 Patent] based solely on its holding that [the] reissue claim[s] . . . were invalid under the rule against recapture . . . . When a reissue patent contains the unmodified original patent claims and the reissue claims, a court can only invalidate the reissue claims under the rule against recapture."[5]

*MBO Labs., Inc.*, 602 F.3d at 1319.

Thus, the Report properly reasoned that the principles regarding reissue and the rule against recapture are analogous and helpful in analyzing the present dispute regarding reexamination and improper broadening under 35 U.S.C. § 305. *See, e.g., id.* ("The original claims cannot be broader than themselves.").

The Court therefore **OVERRULES** Defendants' objections as to the purported elimination of the "physically separate" requirement.

### B. Replacement of "Low Level Current" with "Current"

Defendants submit that the Report erred by failing to address whether Claim 21 (which

---

[5] Under the rule against recapture, a patentee's reissue claims are invalid when the patentee broadens the scope of a claim in reissue to cover subject matter that he surrendered during prosecution of the original claims. *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 602 F.3d 1306, 1313 (Fed. Cir. 2010).

was added during reexamination, and which recites a "current") is improperly broader than Claim 6 (which recites a "low level current."). Docket No. 713 at 5. Plaintiff responds that Defendants are attempting to raise a new argument, which, must be rejected. *Id.* at 5.

In the four pages of Defendants' Motion for Summary Judgment of Invalidity that address this point, only one sentence can be construed as supporting the argument that Defendants now advance: "Because the 'current' recited in claim 21 does not need to be 'sufficient to cause the access device to start up, but not sufficient to sustain the start up,' it is impermissibly broader than the 'low level current' recited in original independent claim 6." Docket No. 609 at 14 (emphasis omitted).

However, Defendants' Motion for Summary Judgment primarily argued that Claim 21 defined the "current" in Claim 21, as well as in Claim 6, and therefore improperly broadened the scope of Claim 6. Defendants argued that the Court should invalidate Claim 6 for being improperly broadened by Claim 21 because the "current" in Claim 21 redefined "low level current" in Claim 6 (by removing the lower boundary requirement). *Id.* Defendants did not argue that the Court should invalidate Claim 21 for being improperly broader than Claim 6:

> Network-1's addition of new independent claim 21 during the '401 reexamination is additional intrinsic evidence that improperly broadens the scope of all asserted claims. This claim recites "a current . . . , said current being insufficient, by itself, to operate said access device," and is highly probative of the construction of the term "low level current," as recited in independent claims 6, 20, 22, and 23. Because claim 21 results in a construction of "low level current" that is broader than the Court's *D-Link* and *Cisco* construction of that term, each asserted claim has been broadened by claim 21.
>
> * * *
>
> In the '401 reexamination, Network-1 added new claim 21, which forces a new meaning of "current" and "low level current" into the '930 Patent.
>
> * * *

> Because claim 21 has the effect of broadening the meaning of "low level current" in claims 6, 20, 22, and 23, those claims have been improperly broadened under § 305 and are invalid. Likewise, consistent with *ArcelorMittal* and § 112(d), that broadening is incorporated into dependent claims 11, 13, 14, and 17, rendering all asserted claims in this case invalid.

Docket No. 609 at 14, 17.

The *Markman* hearing transcript reaffirms that Defendants originally argued that Claim 6 should be invalidated as being improperly broadened by Claim 21. *See* Docket No. 634, June 2, 2016, *Hearing Transcript* at 129:4–132:18 ("And so for that reason, we believe also the addition of claim 21 has a practical effect of broadening the scope of each of the other independent claims where it recites low level current, but that would necessarily inflict and cause a broader construction on those terms.").

Plaintiff's Opposition to Defendants' Motion for Summary Judgment of Invalidity also confirms that the central dispute between the parties was whether Claim 6 and related claims should be invalidated in light of Claim 21. *See* Docket No. 622 at 8 ("Defendants again challenge independent claim 6 and all other claims that contain 'low level current' on the basis that the scope of the phrase was broadened by virtue of adding independent claim 21. This challenge fails as a matter of law.").

On balance, Defendants' argument urged not that the "current" in Claim 21 is broader than the "low level current" in Claim 6 and other claims that recited the term "low level current," but rather, that Claim 21 defined the "current" for Claim 21 *and* for Claims 6, 20, 22, and 23. Thus, Defendants' objection that the "current" limitation recited in Claim 21 is broader than the corresponding limitation recited in Claim 6 is an argument that was not fully presented to the Court. *See Stangel v. Sparkman*, 2007 WL 2725382, at *1 (E.D. Tex. Sept. 18, 2007) ("It is noted that the Plaintiff is trying to raise new claims in his objections, but issues raised for the first time

in objections to a Report and Recommendation are not properly before the Court.") (citing *Cupit v. Whitley*, 28 F.3d 525, 535 n.5 (5th Cir. 1994); *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992)). As a result, the Court hereby **OVERRULES** Defendants' objections to the Court's denial of Defendants' Motion for Summary Judgment of Invalidity as to Claim 21.[6]

### C. Elimination of "Sensing"/"Sensing Means" and "Controlling"/"Control Means"

As to Claim 22, Defendants urge as follows regarding "sensing":

> Unlike original claim 1's requirement of a "sensing means" and original claim 6's requirement of an affirmative "sensing" step, new claim 22 makes both requirements of the original claims optional. Claim 22 recites "a voltage level . . . that can be sensed." Based on the language of claim 22, there is no requirement to utilize a "sensing means" or perform a "sensing" operation. . . . Under 35 U.S.C. § 112(f), the "sensing means" is a means-plus-function limitation that imposes a distinct structural limitation on the scope of the claim, requiring the use of the particular corresponding structure disclosed in the specification of the '930 Patent for performing the "sensing" function. Eliminating this structural limitation thus necessarily broadened the claim. For at least these reasons, claim 22 is broader than original claims 1 and 6 and therefore invalid for improper broadening.

Docket No. 713 at 6.

Defendants present a similar argument as to "controlling":

> Similarly, unlike original claim 1's requirement of a "control means" and original claim 6's requirement of an affirmative "controlling" step, claim 22 makes these elements optional as well. Claim 22 passively recites "wherein the power . . . is controlled." Thus, claim 22 is broader as it does not require a "control means" or "controlling" step. While these are affirmative elements of the original claims, claim 22 eliminates these limitations altogether. For this additional reason, claim 22 is broader than original claims 1 and 6 and therefore invalid.

*Id.* at 7.

Defendant then concludes:

> [W]hile claim 22 refers to a "voltage level . . . that can be sensed" and "power supplied by said secondary power source . . . is controlled in

---

[6] The Court overrules Defendants' objection to the denial of Defendants' Motion for Summary Judgment of Invalidity as to Claim 21 solely on procedural grounds. This Order does not opine on the merits of Defendants' new argument that Claim 21 should be invalidated for improper broadening.

> response to a preselected condition of the sensed voltage level," there is no actual requirement of a "control means" or "sensing means" or any steps of "sensing" and "controlling" in claim 22. Therefore, in view of the plain language of the claim, claim 22 is necessarily broader than claims 1 and 6, which in contrast include these elements or steps. By eliminating the "controlling" and "sensing" requirements of the original claims, claim 22 has been improperly broadened and, as a matter of law, is invalid.

*Id.* at 7–8.

Plaintiff responds that "[a]nalyzing claim 22 'as a whole,' demonstrates that it is not broader than original claim 6." Docket No. 734 at 6. Plaintiff submits that "the sensed voltage level" in Claim 22 "can only exist if the voltage level is actually sensed." *Id.* at 7. Likewise, Plaintiff argues that because a "power source is controlled" in Claim 22, "'controlling power' must have taken place." *Id.*

As to whether Claim 22 is improperly broader than the "sensing" limitation in Claim 6, the Report correctly explains that "Defendants have not adequately shown that elimination of the word 'sensing' resulted in a broader claim scope because Claims 22 and 23 each require that a voltage level must have been sensed." Docket No. 693 at 21; *see Anderson v. Int'l Eng'g & Mfg., Inc.*, 16 F.3d 1345, 1349 (Fed. Cir. 1998) ("[T]he question of whether the claims have been materially or substantially enlarged must be determined upon the claim as a whole.").

As to whether Claim 22 is improperly broader than the "sensing means" limitation in Claim 1, Defendants urge: "[t]he Report and Recommendation identifies no authority to suggest that an invalid claim is irrelevant to claim construction." Docket No. 713 at 7.[7] Here, however, the issue is not whether the indefinite claim can be considered for claim construction purposes, but rather whether the breadth of a claim can be compared to the breadth of an indefinite claim. Particularly because "the question of whether the claims have been materially or substantially enlarged must

---

[7] *Cisco* held that Claim 1 is indefinite because "control means" lacks corresponding structure. *See Cisco Markman* at 18–23.

be determined upon the claim as a whole," Defendants have not shown that such a comparison can be made. *Anderson*, 160 F.3d at 1349.

Regarding whether Claim 22 is improperly broader than the "control means" step of Claim 1 and the "controlling" step of Claim 6, the Report noted that Claim 1 was indefinite based on lack of adequate corresponding structure as to the "control means," which is one of the limitations that Defendants argue was improperly broadened. *See Cisco Markman* at 18–23. Defendants have not explained how broadening can occur with reference to a term that has been deemed indefinite, particularly based on lack of adequate corresponding structure. As to Claim 6, substantially the same analysis applies for "controlling" as is set forth above regarding "sensing." *See Anderson*, 160 F.3d at 1349 ("[T]he question of whether the claims have been materially or substantially enlarged must be determined upon the claim as a whole."). Specifically, whereas Claim 6 recites "controlling power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level," Claim 22 expressly recites: "the power supplied by said secondary power source to the access device *is controlled* in response to a preselected condition of the sensed voltage level." '930 Patent, 2:65–67; '401 Reexamination, 2:46–49 (emphasis added).

Thus, the Court **OVERRULES** Defendants' objections as to the "sensing," "sensing means," "controlling," and "control means" terms.

## **CONCLUSION**

For the reasons set forth above, the Court **OVERRULES** Defendants' objections regarding claim construction and Plaintiff's objections regarding claim construction. Docket Nos. 711, 722.

The Court further **OVERULES** Defendants' and Plaintiff's Objections to the Report and Recommendation Regarding Defendants' Motion For Summary Judgment of Invalidity Under 35 U.S.C. § 305. Docket Nos. 713, 723. Accordingly, Defendants' Motion for Partial Summary

Judgment of Invalidity is **GRANTED** as to Claim 23, but is otherwise **DENIED**.

**SIGNED this 2nd day of May, 2017.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE