IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:11-cv-492- |
| v. | § | RWS-KNM |
| | § | |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

# ORDER

Before the Court is Network-1 Technologies, Inc.'s Motion to Exclude an Opinion and the Testimony of Juniper's Technical Expert Dr. Cameron H. G. Wright. Doc. No. 817. The Court held a hearing on this Motion on June 19, 2017. The Motion is **GRANTED-IN-PART**.

# BACKGROUND

Plaintiff Network-1 Technologies, Inc. ("Network-1") accuses Defendants[1] of infringing U.S. Patent No. 6,218,930 ("the '930 Patent"). The '930 Patent is titled "Apparatus and Method for Remotely Powering Access Equipment Over a 10/100 Switched Ethernet Network." *See* '930 Patent.

The '930 Patent discloses, for example:

> delivering a low level current from the main power source to the access device over the data signaling pair, sensing a voltage level on the data signaling pair in response to the low level current, and controlling power supplied by the secondary power source to the access device in response to a preselected condition of the voltage level.

*Id.* at 2:8–14.

---

[1] The remaining Defendants in this case are Hewlett Packard Enterprise Company, Hewlett-Packard Company ("HP Defendants" or "HPE Defendants") and Juniper Networks, Inc. ("Juniper"). The only relevant Defendant to this Motion is Juniper.

1

A disclosed embodiment describes using a fixed voltage drop associated with a "resistive termination" to identify equipment that cannot receive remote power. *Id.* at 3:2–11 ("If a fixed voltage level is detected then the remote equipment contains a dc resistive termination . . . , and this equipment is identified as unable to support remote power feed.").

Dr. Cameron H. G. Wright ("Dr. Wright"), Juniper's technical expert, generally opines that Juniper does not infringe the '930 Patent.

## APPLICABLE LAW

*Daubert Motion*

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Indeed, "[t]he proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th. Cir. 1998). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema*, *Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).

Factors to consider in determining whether a proposed expert's methodology is scientifically valid or reliable are:

    (1) whether the expert's theory can be or has been tested;
    (2) whether the theory has been subject to peer review and publication;
    (3) the known or potential rate of error of the technique or theory when applied;
    (4) the existence and maintenance of standards and controls; and
    (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*See Daubert,* 509 U.S. at 593–95. A court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

In *Kumho Tire Company, Limited v. Carmichael*, the Supreme Court applied the *Daubert* principles to technical or specialized expert testimony. 526 U.S. 137 (1999). The Court explained that the overarching goal of *Daubert*'s gate-keeping requirement is to "ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. A trial court has the discretion to exclude expert testimony if there is "simply too great an analytical gap" between the expert's reasoning and the conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

"To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–16 (Fed. Cir. 2011) (citation omitted). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship*, 598 F.3d at 856. "The jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.*

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *Id.* at 854. Also, the "existence of other facts . . . does not mean that the facts used failed to meet the minimum standards of relevance or reliability." *Id.* at 855–56. For example, "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation and internal quotation omitted).

*Expert Opinion and Claim Construction*

Under the infringement analysis, "the court first determines the meaning of disputed claim terms and then compares the accused device to the claims as construed." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)). "The infringement inquiry compares properly construed claims with the accused product or process." *Atl. Thermoplastics Co., Inc. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992) (citations omitted).

"A court may not, for instance, compare the accused product with a preferred embodiment described in the patent or with a commercial embodiment of the patented invention." *Id.* (citing *Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)).

4

"Expert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for a jury to resolve." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) (citing *In re Maxim Integrated Products, Inc.*, No. 12-945, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015)). To this end, courts allow experts to testify regarding preferred embodiments to educate the jury about teachings of the patent itself. *See EMC Corp. v. Pure Storage, Inc.*, No. 13-1985-RGA, 2016 WL 775742, at *4 (D. Del. Feb. 25, 2016) (ruling that the defendant's experts "are not precluded from making any reference whatsoever to patent specifications and commercial embodiments"). *See also SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 492 (E.D. Tex. 2013) (denying motion for judgment as a matter of law and ruling that the defendant's "expert's testimony regarding the preferred embodiments amounted to nothing more than an effort to educate the jury about the teachings of the . . . patent"), *aff'd*, 769 F.3d 1073 (Fed. Cir. 2014).

However, "[e]xpert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury. *EMC Corp.*, 154 F. Supp. 3d at 109 (citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006)). *See also Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS, 2014 WL 807736, at *1–*2 (D. Del. Feb. 27, 2014); *Chicago Mercantile Exch., Inc. v. Tech. Research Group, LLC*, 782 F. Supp. 2d 667, 673–74 (N.D. Ill. 2011); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 900 (D. Minn. 2010); *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 821–22 (N.D. Ill. 2010); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009*); CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).

## DISCUSSION

The disputed portion of Dr. Wright's Report is as follows:

> I further note that determining whether a connected device can accept power over Ethernet by delivering a current to a connected device and observing (and making the determination entirely upon) the resulting voltage is fundamentally different from determining whether a connected device can accept power over Ethernet by calculating the termination resistance at the remote end of the Ethernet cable by calculating the ratio of observed voltage and current pairs. Under Ohm's law, resistance equals voltage divided by current, and the calculation of the termination resistance in this way is the only method the 802.3af and 802.3at Standards specify specifies [sic] that equipment should use to determine whether a connected device can accept power over Ethernet. This differs in a most fundamental way from making the determination based only on an observed voltage, *as described in the '930 patent. Indeed, the '930 patent clearly states that any equipment presenting a resistive termination would be classified as unable to accept power.* However, all modern Ethernet equipment that can accept power over Ethernet is designed to present a resistive termination. *Therefore, following the method described in the '930 Patent would result in never being able to properly detect if a device can accept power over Ethernet.*

Doc. No. 817, Ex. 1, Nov. 30, 2016 Wright Decl. at 24 (emphasis added) (footnote omitted).[2]

Plaintiff argues that Dr. Wright improperly compares the accused products to the preferred embodiments disclosed in the specification of the '930 Patent. Doc. No. 817 at 4. In particular, Plaintiff argues that the claims do not require that a fixed voltage drop must indicate an inability to accept remote power. *Id.* Plaintiff emphasizes that the claim construction in the present case cites a *Daubert* ruling in *Cisco*[3] that rejected limiting the "preselected condition" to being a fixed voltage drop, no voltage drop, or a varying voltage drop. *Id.*

---

[2] As support for the entire disputed paragraph, Dr. Wright relies on a description of the preferred embodiment. Doc. No. 817, Ex. 1, Nov. 30, 2016 Wright Decl. at 24 n.122. This description of the preferred embodiment states: "If a fixed voltage level is detected then the remote equipment contains a dc resistive termination (a 'bob smith' is typical for Ethernet terminations), and this equipment is identified as unable to support remote power feed." '930 Patent at 3:7–11.

[3] *Network-1 Sec. Solutions, Inc. v. Cisco Sys., Inc.*, No. 6:08-CV-30, Doc. No. 475 at 4–6, 8 (E.D. Tex. June 30, 2010).

Juniper responds that Dr. Wright merely confirms that the description of the preferred embodiment in the '930 Patent is consistent with his non-infringement arguments. Doc. No. 840 at 1–2. Moreover, Juniper contends that Dr. Wright does not provide this confirmation to the exclusion of opining on the claims, nor does Dr. Wright assert that the patent is limited to this embodiment. *Id.*

For support, Juniper relies on, for example, *SSL Services, LLC v. Citrix Systems, Inc. Id.* at 2 n.4. However, in *SSL Services*, the defendant's expert relied upon claim language rather than the preferred embodiment:

> On cross-examination, Citrix's expert testified that Figure 3 is "a preferred embodiment of the invention, yes." . . . Citrix's expert also testified that it would be improper to predicate an infringement opinion based on a comparison of Figure 3 and the accused products. . . . Citrix's expert even explained 'that's why I continually tie it back to the claim language, and that's why we had the claim on the board." . . .

940 F. Supp. 2d at 492 (citations omitted), *aff'd*, 769 F.3d 1073 (Fed. Cir. 2014). The court noted that the "expert's testimony regarding the preferred embodiments amounted to nothing more than an effort to educate the jury about the teachings of the . . . Patent" and that "the jury was presented with substantial evidence and testimony to show that Figure 3 was only a preferred embodiment and that infringement was determined by analyzing the claims and not the preferred embodiments." *Id.*

By contrast, the above-italicized portions of the disputed opinion go beyond merely educating the jury about the teachings of the '930 Patent. Instead, Dr. Wright directly compares the accused instrumentalities with an embodiment disclosed in the '930 Patent, which is impermissible. Doc. No. 817, Ex. 1 at 24 ("This differs in a most fundamental way from making the determination based only on an observed voltage, *as described in the '930 Patent*. Indeed, *the '930 Patent clearly states* that any equipment presenting a resistive termination would be classified

7

as unable to accept power.") (emphasis added) (relying on the '930 Patent at 3:7–11, a description of the preferred embodiment). *See, e.g., EMC Corp.*, 2016 WL 775742, at *4 ("Testimony that embodiments in a patent specification support an expert's opinions regarding the plain and ordinary meaning of claim terms would amount to claim construction and suggest that literal infringement can be established by a comparison between accused products and specification embodiments."); *SRI Int'l*, 775 F.2d at 1121 ("If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. . . . It is the *claims* that measure the invention.").

Regarding the above non-italicized portions of Dr. Wright's opinion, the Court does not exclude them as impermissibly comparing the accused products to the preferred embodiment. In the non-italicized portions, Dr. Wright opines that using a resulting voltage level is fundamentally different from determining a termination resistance. This has not been shown to be impermissible because claim 6 of the '930 Patent, for example, expressly recites "sensing a voltage level" and acting "in response to a preselected condition of said voltage level." '930 Patent at Cl. 6. The problem arises where Dr. Wright relies upon the disclosed embodiment. That is, in the above-italicized portions, Dr. Wright improperly implies that the claimed invention is limited not just by the claim language, but also by the disclosed embodiment.

## **CONCLUSION**

The above-italicized portions of Dr. Wright's opinions that impermissibly compare the accused instrumentalities to an embodiment disclosed in the '930 Patent, rather than to the claims, are therefore excluded under Rule 702. Plaintiff's Motion to Exclude is accordingly granted as to

the above-italicized portions of the opinions on page 24 of Dr. Wright's November 30, 2016 Declaration.

For the foregoing reasons, Plaintiff's Motion to Exclude an Opinion and the Testimony of Juniper's Technical Expert Dr. Cameron H. G. Wright (Doc. No. 817) is **GRANTED-IN-PART**, as set forth above.

So ORDERED and SIGNED this 12th day of September, 2017.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE