# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC. § | |
| § | |
| § | CIVIL ACTION NO. 6:11-cv-492- |
| v. § | RWS-KNM |
| § | |
| § | |
| ALCATEL-LUCENT USA, INC., ET AL. § | |

## ORDER

Before the Court is Plaintiff's Motion to Exclude Certain Opinions and Testimony of Hewlett Packard Company's ("HP") Damages Expert Ambreen Salters. Doc. No. 815. The Court held a hearing on this Motion on June 1, 2017. The Motion is **DENIED**.

## BACKGROUND

Plaintiff Network-1 Technologies, Inc. ("Network-1") accuses Defendants[1] of infringing U.S. Patent No. 6,218,930 ("the '930 Patent"). Hewlett Packard Company ("HP") offers the testimony of Salters, who opines on the damages amount owed by HP to Plaintiff.[2] Plaintiff moves to exclude certain opinions of Ambreen Salters, as unreliable.

## APPLICABLE LAW

*Daubert Motion*

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

---

[1] The remaining Defendants in this case are: Hewlett Packard Enterprise Company; Hewlett-Packard Company ("HP Defendants" or "HPE Defendants") and Juniper Networks, Inc. ("Juniper").

[2] On May 1, 2017, Network-1 filed a notice stating that HP has withdrawn certain challenged opinions from Salters's Report. Doc. No. 842. This Order thus only addresses the remaining disputes.

1

understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Indeed, "[t]he proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th. Cir. 1998). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema*, *Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).

Factors to consider in determining whether a proposed expert's methodology is scientifically valid or reliable are:

(1) whether the expert's theory can be or has been tested;
(2) whether the theory has been subject to peer review and publication;
(3) the known or potential rate of error of the technique or theory when applied;
(4) the existence and maintenance of standards and controls; and
(5) the degree to which the technique or theory has been generally accepted in the scientific community.

*See Daubert,* 509 U.S. at 593–95. A court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

In *Kumho Tire Company, Limited v. Carmichael*, the Supreme Court applied the *Daubert* principles to technical or specialized expert testimony. 526 U.S. 137 (1999). The Court explained that the overarching goal of *Daubert*'s gate-keeping requirement is to "ensure the reliability and

relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. A trial court has the discretion to exclude expert testimony if there is "simply too great an analytical gap" between the expert's reasoning and the conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–16 (Fed. Cir. 2011) (citation omitted). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship*, 598 F.3d at 856. "The jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.*

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *Id.* at 854. Also, the "existence of other facts . . . does not mean that the facts used failed to meet the minimum standards of relevance or reliability." *Id.* at 855–56. For example, "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation and internal quotation omitted).

**DISCUSSION**

I. **Salters's Royalty Calculations Based on HP's Purported Incremental Profits from PoE Chips (¶¶ 129–138; 142, 146)**

Salters opines that based on HP's purported incremental profits on the sale of PoE chips attributable to the '930 Patent, the appropriate royalty amount would be $415,000. Doc. No. 815, Ex.1 ("Salters's Report) at 44. In so opining, Salters isolates HP's fixed operating costs on the accused products from variable costs. *Id.* at ¶ 136. Specifically, she treats half of HP's operating expenses other than research and development (field selling, marketing, administration) as fixed ("50% rule of thumb"). *Id.*

Plaintiff argues that Salters's reliance on this 50% rule of thumb is impermissible under *Daubert* because it is not tied to the facts of this case, and is justified only by *ipse dixit*, i.e., her own experience. Doc. No. 815 at 12. Plaintiff concludes that Salters's calculated royalty is unreliable. *Id.* Plaintiff urges the Court to strike this calculation and resulting reasonable royalty. *Id.*

HP notes that in arriving at her apportionment calculation, Salters cites to "StoneTurn Workpaper 11" as a source of support. Doc. No. 845 at 2. HP notes that in StoneTurn Workpaper 11, Salters references the evidence she relied upon in arriving at her apportionment profit calculation: (1) an income statement prepared by HPE, showing revenue and expenses for HP's Switching Business Segment, which sells the accused network devices ("HPE Shreadsheet"); and (2) the deposition testimony of Mark Thompson, HPE Director of Product Line Management for Campus Switching, a corporate witness for HPE. *Id.* at 2–3.

Specifically, HP highlights Thompson's testimony that "other expenses"—such as field selling, marketing, and administrative—were allocated, meaning HP allocated those expenses based on revenue. Doc. No. 845 at 3 (citing Ex. C, Thompson Depo. at 49:9–23). HP argues that

4

although this testimony supports Salters's decision to treat these "other expenses" or allocated costs as 100% variable, she chose a more conservative 50% approach, which benefits Plaintiff. *Id.* at 4.[3] Plaintiff does not dispute this. Doc. No 815 at 12 ("... Salters purports to isolate HP's fixed operating costs on the accused products (*which do not reduce incremental profits*) from variable costs (*which do*).") (emphases added).

HP also notes that the HPE Spreadsheet reflects the fact that the absolute dollar amounts of these "other expenses" did not remain constant (fixed), while the costs as a percentage of total sales were inconsistent (variable). Doc. No. 845 at 4. HP concludes that this supports Salters's decision to treat these allocated expenses as variable. *Id.*

Plaintiff's concerns regarding Salters's testimony goes to its weight, not admissibility. As Plaintiff concedes, "[t]he dispositive question is: did Ms. Salters rely on anything other than her own 'experience'—i.e., actual evidence tied to the facts of this case—to conclude that 50% of HP's non-R&D operating expenses (e.g., field selling, marketing and administrative) are fixed costs?" Doc. No. 884 at 2. The answer is yes. Salters admits that she relies on her experience as an economist in applying the 50% rule of thumb, and that she does not have sufficient detail to fully understand the variable and fixed components of these operating expenses.[4] However, Salters's decision to treat 50% of the allocated operating costs as variable is based on Thompson's deposition testimony and on the HPE Spreadsheet. Both support sources reflect the facts of this case, and are cited in Salters's Report. *See* Salters's Report at ¶¶ 135–136

At the Hearing, Plaintiff's counsel challenged Ms. Salters's conclusion that these "other expenses" in the HPE spreadsheet are variable, merely based on the fact they fluctuate annually.

---

[3] In its Reply Brief, Plaintiff argues that there is no such testimony from Thompson to accompany this assertion in the brief. Doc. No. 884 at 3. However, both HP's Response Brief Salters's Report cite to/reference Thompson's deposition testimony. *See* Salters's Report at ¶ 135, n. 259; Doc. No. 845 at 2.

[4] Salters's Report at ¶¶ 136; Doc. No. 845 at 4.

5

H'ring Tr., Doc. No. 931, at 18–20. Plaintiff's Reply Brief also argues that Thompson's testimony that the amount of HP's expense are "actual amounts" and "allocated amounts" is irrelevant to whether costs are fixed or variable. Doc. No. 884 at 3 n.3. However, to the extent Plaintiff disagrees with the accuracy of Salters's decision to treat the fluctuating numbers in the spreadsheet as variable costs, or her decision to be conservative by treating only 50% of the operating costs as variable based on Thompson's deposition testimony, these concerns are best addressed through vigorous cross examination at trial, not wholesale exclusion. These concerns, as well as the other concerns Plaintiff has raised in the briefing, go to the weight, not admissibility of Salters's testimony.

II. **Salters's Opinion Applying the IEEE's 2015 Definition of a "Reasonable Rate" (¶¶ 32–35 and ¶ 126)**

Plaintiff next argues that the Court should exclude portions of Salters's testimony that apply the 2015 Patent Policy definition of "reasonable rates" to the 2003 LOA. Doc. No. 810 at 4–5. Plaintiff's argument mirrors the argument from its Motion to Exclude the Testimony of Juniper's Damages Expert Alan Ratliff. *Compare* Doc. No. 809 *with* Doc. No. 815. The Court denies this part of the Motion for the same reasons it denies Plaintiff's Motion to Exclude the Testimony of Alan Ratliff. *See* Doc. No. 958.

## CONCLUSION

For the reasons stated above, the Motion is **DENIED**. Doc. No. 815.

So ORDERED and SIGNED this 13th day of September, 2017.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

6