IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| NETWORK-1 TECHNOLOGIES, INC. | § | |
|---|---|---|
| | § | |
| | § | CIVIL ACTION NO. 6:11-cv-492- |
| v. | § | RWS-KNM |
| | § | |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

**ORDER**

Before the Court is Hewlett-Packard Company, Hewlett Packard Enterprise Company, Axis Communications, Inc., and Axis Communications AB's ("Defendants") Motion to Strike Certain Portions of John Doll's Expert Report and Testimony. Doc. No. 807.[1] The Court held hearings in this case on June 1, 2017. The Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**BACKGROUND**

Network-1 Technologies, Inc. ("Network-1" or "Plaintiff") filed the above-captioned suit on September 15, 2011, alleging infringement of the U.S. Patent No. 6,218,930 ("the '930 Patent"). In July 2012, a request for *ex parte* reexamination was filed. Control No. 90/012,401 (the '401 reexamination"). Doc. No. 609 at 3. In response to the rejections of challenged claims 6, 8, and 9, Network-1 filed an Amendment and Reply, and added new claims 10–23 to the '930 Patent. *Id*. The '930 Patent was subject to a subsequent *ex parte* reexamination. Control No. 90/013,333 ("the '444 reexamination"). Doc. No. 609 at 4.

---

[1] Since the filing of this Motion, Network-1 has reached a settlement in principle with Axis Communications, Inc. and Axis Communications AB. Doc. No. 925.

Defendants respond to Plaintiff's infringement allegations by arguing that Network-1 has engaged in inequitable conduct before the United States Patent and Trademark Office ("USPTO" or "PTO"). Specifically, Defendants argue that during the pendency of the '444 reexamination, Network-1 failed to include Defendants' contentions—that Network-1's addition of new claims 10–23 during the '401 reexamination—improperly broadened the scope of the '930 Patent (Defendants' broadening contentions). *See* Doc. No. 807, Ex. 3, Nov. 22, 2016 Expert Report of John Doll ("Doll Report") at 11, 13–20.

Network-1 counters this defense with testimony from its patent law expert, John Doll. In his report, Doll provides testimony on PTO rules, practices, and procedures, and certain issues relevant to Defendants' allegations of inequitable conduct. *See generally* Doll Report. Defendants move to strike certain portions of Doll's expert testimony. *See generally* Doc. No. 807.

Doll's Qualifications include a master of science degree in Physical Chemistry and a bachelor of science degree in Chemistry and Physics. Doll Report at 1. He started at the USPTO as a patent examiner in September 1974, and by 2009, was promoted to Acting Under Secretary and Acting Director of the USPTO. *Id.* at 3–4. As Acting Under Secretary, Doll advised the President, the Secretary of Commerce, and the Administration on all intellectual property matters. *Id.* at ¶ 13.

During his time at the PTO, Doll examined and supervised thousands of patent applications, including several reexaminations. *Id.* at ¶ 14. In October of 2009, after thirty-five years at the PTO, Doll retired. *Id.* at ¶ 15. Doll is now self-employed as a consultant on USPTO practice and procedure. *Id.* at ¶ 18.

## APPLICABLE LAW

*Inequitable Conduct*

"Applicants for patents have a duty to prosecute patents in the PTO with candor and good faith, including a duty to disclose information known to the applicants to be material to patentability." *Aventis Pharma S.A. v. Amphastar Pharm., Inc.*, 176 F. App'x 117, 119 (Fed. Cir. 2006) (citation and internal quotation marks omitted). *See* 37 C.F.R. § 1.56(a) (2015) (explaining that a party appearing before the USPTO has "a duty to disclose . . . all information known to that individual to be material to patentability."). A breach of this duty may constitute inequitable conduct and render a patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc); *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1186 (Fed. Cir. 2006).

A party asserting inequitable conduct as a defense must prove by "clear and convincing evidence that the alleged nondisclosure or misrepresentation occurred, that the nondisclosure or misrepresentation was material, and that the patent applicant acted with the intent to deceive the United States Patent and Trademark Office." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F3d 982, 999 (Fed. Cir. 2007) (citing *Glaxo, Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1048 (Fed. Cir. 1995)).

The Federal Circuit has recognized at least five tests (stemming from case law and the Code of Federal Regulations) for materiality: (1) the objective "but-for" standard, under which the misrepresentation is so material that the patent should not have issued; (2) the subjective "but-for" test, under which the misrepresentation is material because it actually caused the examiner to approve the patent application, when he would not otherwise have done so; (3) the "but it may have" standard, under which the misrepresentation is material because it may have influenced the

parent [sic] examiner in the course of prosecution; (4) the "reasonable examiner" test, under which information is material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent; and (5) the "cumulative" standard, under which information is material when it is not cumulative to information already of record or being made of record in the application. *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1315 (Fed. Cir. 2006) (citations and internal quotation marks omitted).

*Expert Testimony*

Federal Rule of Evidence 702 provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.

"Under *Daubert v. Merrell Dow Pharmaceuticals, Inc. . . .* , and Rule 702, courts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008) (citation omitted). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding that Rule 702 applies not only to "scientific" testimony, but to all expert testimony). "Patent cases, like all other cases, are governed by Rule 702." *Sundance*, 550 F.3d at 1360.

# DISCUSSION

I. **Materiality of Defendants' Broadening Contentions**

Defendants first seek to exclude the portions of Doll's Report where Doll opines on "[t]he 'materiality' of Defendants' broadening contentions for purposes of assessing patentability." Doc. No. 807 at 3. In these disputed portions, Doll explains that Network-1 did not need to disclose the Defendants' broadening contentions to the PTO because they were not material to information already considered by the PTO. Doll Report at ¶ 49.

Defendants argue that these opinions are impermissible because Doll, as a patent law expert, and as a non-technical expert, is not one of ordinary skill in the art of the '930 patent, and is therefore not qualified to opine on the materiality of Defendants' broadening contentions. Doc. No. 807 at 2–3. Plaintiff responds that these opinions do not derive from technical knowledge about Power over Ethernet (PoE) technology or the scope of the claims, but rather, from Doll's familiarity with patent office rules and practice. Doc. No. 838 at 3–4.

Defendants rely on *Sundance* for the proposition that because Doll is not qualified as a technical expert, his opinions on materiality should be excluded. Doc. No. 807 at 3 (citing 550 F.3d 1356, 1364 (Fed. Cir. 2008)). Defendants' reliance on *Sundance* is misplaced because the challenged opinions in *Sundance* concerned technical issues such as infringement and invalidity, not materiality. *See Sundance*, 550 F.3d at 1363 ("We hold that it is an abuse of discretion to permit a witness to testify as an expert on the issues of *noninfringement or invalidity* unless that witness is qualified as an expert in the pertinent art.") (emphasis added).

To this end, at least one district court has acknowledge the limited context under which *Sundance* was decided:

> However, in *Sundance*, the Federal Circuit was applying this potentially "high level of scrutiny" to an expert that was seeking to provide testimony

5

> on issues of infringement and validity. . . . Because these issues are analyzed from the perspective of a person of ordinary skill in the art, the Federal Circuit concluded that the patent attorney, who lacked the appropriate level of skill in the relevant art, was inappropriate as an expert; she was "technically unqualified." Thus, *Sundance* actually advises district courts to consider the perspective from which the relevant issue of patent law will be analyzed when the court determines whether an expert is qualified to testify as an expert on that issue. . . .
>
> * * *
>
> In contrast to inquiries into infringement and validity, the materiality prong of the inequitable conduct inquiry is analyzed from the perspective of the PTO. . . . Accordingly, an appropriate expert on this topic could be an individual who has knowledge of and experience with the procedures of the PTO. Often, such an individual will be an attorney with experience practicing before the PTO.

*Aevoe Corp. v. AE Tech Co.*, 2014 WL 4182343, at *2 (D. Nev. Aug. 20, 2014) (applying the "but-for" materiality standard) (citing *Sundance*, 550 F.3d at 1362) (citing *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1345 (Fed. Cir. 2012) (applying the "but-for" materiality standard)). *See also Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2037732, at *3 (N.D. Cal. May 12, 2008) ("Some issues of materiality may be so independent of scientific complexity that even patent lawyers can understand them. . . . if scientists are needed to explain . . . then mere lawyers should refrain from purporting to explain the science part. . . . Lawyers skilled in practice before the PTO and familiar with how the duty of candor works in practice should be allowed to opine on whether both should have been revealed to the PTO. The lawyer witnesses, however, should stop short of trying to explain the underlying science.") (applying the "reasonable examiner" materiality standard); *Nisus Corp. v. Perma-Chink Sys., Inc.*, 2005 WL 6112992, at *5 (E.D. Tenn. May 27, 2005) ("Mr Lipscomb[2] may be qualified to testify, at least to some extent, on the issue of

---

[2] Mr. Lipscomb was one with "expertise in patent law, patent prosecution practice, inequitable conduct and fraud, and sanctions charges." *Nisus Corp. v. Perma-Chink Sys.*, 2005 WL 6112992, at *2 (E.D. Tenn. May 27, 2005).

materiality.") (applying the "reasonable examiner" materiality standard); *Oasis Indus., Inc. v. G.K.L. Corp.*, 1996 U.S. Dist. LEXIS 1057, at *33 (N.D. Ill. Feb. 2, 1996) (finding that the experts were qualified to testify regarding materiality) (referring to the "reasonable examiner" materiality standard).

To be sure, there are several instances in which the Federal Circuit has upheld the district court's exclusion of testimony by a patent law expert. In *Sundance*, the Federal Circuit recapped these occasions:

> We have on several occasions upheld a district court's exclusion of testimony by a patent law expert. *See, e.g., Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 934, 741 (Fed. Cir. 1986) (determining no abuse of discretion where trial court excluded patent law expert's testimony relating to the infringement of the asserted claims); *see also Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1572 (Fed. Cir. 1984) (agreeing with a district court that gave little weight to the opinion [that a piece of prior art was not analogous art] of a former patent attorney with no "expertise as to the scope of the field of endeavor of the inventions of the patents in suit or as to what other fields are analogous art."); *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997) ("Indeed, this court has on numerous occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide.").

550 F.3d at 1363. However, as illustrated above, these occasions are confined to situations in which the patent law experts opined on technical issues such as infringement, analogous art, and claim interpretation, not materiality.

Here, Doll does not offer an opinion on technical issues such as infringement or invalidity; he merely opines as to the materiality of Defendants' broadening contentions. Further, these

opinions regarding the materiality of Defendants' broadening contentions stem from his expertise in PTO rules and practice, not in the underlying PoE technology.[3]

Defendants argue that without "knowing the technical meaning of Defendants' broadening contentions or the scope of the claims as construed by the Court, Mr. Doll cannot opine on their materiality during reexamination, nor to whether the contentions were cumulative of information already submitted to the USPTO." Doc. No. 807 at 4. Similarly, in their reply brief, Defendants argue that "issues of claim broadening necessarily involve claim construction, which inescapably includes analysis from the perspective of one of ordinary skill in the art." Doc. No. 880 at 3 (citing *Quantum Corp v. Rodime,* PLC, 65 F.3d 1577, 1580 (Fed. Cir. 1995)). At the hearing on the motion, Defendants also relied on *Quantum* to argue that claim construction and materiality go hand-in-hand, and that an opinion regarding materiality contentions necessarily requires some analysis from a person of ordinary skill in the art ("POSITA"). *See* Doc. No. 931, June 18, 2017 Hr'g Tr. at 117:21–118:7.

However, Defendants have not explained how or why Doll's testimony regarding materiality implicates claim construction. *See generally id.*; Doc. No. 807; Doc. No. 880. Moreover, Defendants' reliance on *Quantum* is misplaced. In *Quantum*, the Federal Circuit stated that "[w]hether claims have been enlarged is a matter of claim construction. . . ." 65 F.3d at 1580. As Plaintiff's Counsel confirmed at the hearing, Doll does not opine as to the ultimate issue of whether the claims have been enlarged. *See* Doc. No. 931, June 18, 2017 Hr'g Tr. at 117:25–118:1–7. Doll simply opines as to the materiality of certain information. Moreover, Defendants have failed to explain "the science part," for which a POSITA in the field of PoE technology would

---

[3] Similar to the expert in *Oasis Indus., Inc. v. G.K.L. Corp.*, Doll bases his opinion regarding the materiality of Defendants' broadening contentions using the "cumulative" standard, as articulated in the Code of Federal Regulations. 1996 U.S. Dist. LEXIS 1057, at *33 (N.D. Ill. Feb. 2, 1996); 37 C.F.R. §§ 1.565 and 1.555; Doll Report at ¶ 48.

8

be required. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008). Thus, to the extent Doll relies on his experience in PTO policy, practice, and procedure, and not on his experience, or lack thereof, in PoE technology, he may render an opinion regarding the materiality of Defendants' broadening contentions.

## II. Testimony About Possible Examiner Responses

Defendants next seek to exclude portions of Doll's Report that discuss whether an examiner would have considered certain evidence, if presented, what an examiner would have done under an alternative set of facts, all as unreliable speculation. Doc. No. 807 at 4–5. Plaintiff responds that such opinions are supported by substantial evidence and reasoned analysis. Doc. No. 838 at 9–11.

In *Barry v. Medtronic*, the court excluded similar testimony under Rule 702:

> Both opinions raise the issue of whether an expert can testify as to the thought processes of an examiner who was provided with different information. Mr. Carmichael's [the expert's] resume fails to establish his education, training, or experience in the field of retroactive mind reading of the thoughts of patent examiners. . . . such testimony will not assist the trier of fact.[4]

2016 WL 7665782, at *2 (E.D. Tex. July 19, 2016).

Statements regarding what a PTO examiner would have done under a different scenario and a PTO examiner's general thought process are not admissible. Plaintiff's argument that such opinions are supported by substantial evidence and reasoned analysis does not change the fact that they are intrinsically impermissible. Doll may not opine about the mental thought processes of a PTO examiner.

---

[4] The opinions at issue were: (1) what an examiner could have done if informed of a certain piece of prior art; and (2) whether, under PTO procedure, certain information would have been considered not experimental. *Barry v. Medtronic, Inc.*, 2016 WL 7665782, at *2 (E.D. Tex. July 19, 2016).

9

### III. Network-1's Subjective State of Mind

Defendants next argue that Doll's speculation about Network-1's intent behind certain submissions during reexamination of the '930 patent is inadmissible. Doc. No. 807 at 5. Network-1 responds that far from improperly speculating on its intent without support, Doll reviewed the underlying factual record and properly concluded that the "evidence does not support or suggest any intent to misrepresent the Court's construction to the Patent Office." Doc. No. 838 at 11.

This dispute raises the issue of whether an expert may testify about whether an individual had the intent to deceive the PTO during patent prosecution. On balance, the case law establishes that although an expert may point to and even testify about evidence relevant to intent, he may not speculate about a party's intent. Indeed, Plaintiff's own brief cites to a variant of this rule. *See* Doc. No. 838 at 11 ("Expert analysis of evidence relevant to intent (as opposed to mere speculation of a party's intent) is routinely admitted when (as here), the expert has specialized expertise to explain the underlying facts.").

For instance, in *Realtime Data, LLC v. Packeteer, Inc.*, the relevant portions of the defendant's expert report stated:

> [i]t is also important to bear in mind that DeRosa [the prosecuting attorney] claimed the benefit of the earlier filed '024 and '424 applications when he filed the '761 patent application (RD 00335900) in October 2001. This demonstrates that DeRosa was aware of the close nexus between the '024, '424, and '761 applications.

No. 6:08-cv-144 (E.D. Tex. Nov. 19, 2009), Doc. No. 474, Ex. 3 at 51. The plaintiff in that case challenged the last sentence of this opinion. *Id.*, Doc. No. 706 at 3. The court held that the expert was precluded from "opining as to the intent and credibility of Mr. DeRosa, the prosecuting attorney for the '761 patent." *Id.*

Network-1 relies on *ClearValue, Inc. v. Pearl River Polymers, Inc.* and on *United States v. West* for support. Both cases are distinguishable. In *ClearValue, Inc.*, the court considered expert testimony that pointed to and discussed evidence suggestive of the defendant's intent. 735 F.Supp.2d 560, 576 (E.D. Tex. 2010), *aff'd in part*, *rev'd in part*, 668 F.3d 1340 (Fed. Cir. 2012), and order *vacated in part*, 2012 WL 12914642 (E.D. Tex. July 9, 2012), *aff'd*, 546 F. App'x 963 (Fed. Cir. 2013). However, the expert did not speculate or conclude as to the defendant's actual intent. *Id.* ("Dr. Stoll testified that, in his opinion, SNF's training manuals and Dr. George Tichenor's deposition testimony regarding his training seminars 'encourage[d] people.' . . . Dr. Stoll further testified that Dr. Tichenor's training reports show . . . SNF was in fact 'encouraging their suppliers to combine those products.'") (citation omitted). That the defendant had the requisite intent for induced infringement was ultimately the jury's, not the expert's conclusion.[5]

In *United States v. West*, the court referred to another case, *United States v. Lankford*, 955 F.2d 1545, 1550 (11th Cir. 1992). 22 F.3d 586, 600 n.40 (5th Cir. 1994). Plaintiff is correct that in *Lankford*, the Court of Appeals held that the district court "erred in excluding testimony by an expert witness." *Lankford*, 955 F.2d at 1551. However, the court in *Lankford* only ruled against the district court's disallowance of "expert testimony on the gift/income issue"; the court did not opine as to whether the expert should have been permitted to opine on the defendant's actual subjective intent. *See id.* ("The gift/income tax opinion of the defense's expert witness could have had a powerful impact on the issue of Lankford's willfulness. . . . By disallowing expert testimony on the gift/income issue, the trial court deprived Lankford of evidence showing that his asserted

---

[5] *ClearValue* is further distinguishable because the court in this case did not specifically assess the admissibility of expert testimony. 735 F.Supp.2d at 576. In *ClearValue*, the defendant alleged that the plaintiff presented insufficient evidence to support a jury finding of an affirmative intent to induce others to infringe. *Id.* Thus, the court was addressing whether such expert testimony, in conjunction with other evidence, was sufficient to support the jury's finding of induced infringement. *Id.*

state of mind was reasonable. Accordingly, we hold that the exclusion of expert testimony on this issue was error.").

Thus, while Doll may explain and point to the underlying factual record and other evidence bearing on issues of intent and knowledge, he may not opine as to Network-1's subjective intent.[6]

### IV. The Reasonableness of Network-1's Statements and Beliefs

Finally, Defendants challenge Doll's opinion on whether Network-1's statements and beliefs were reasonable. Doc. No. 807 at 4, 5. Defendants argue that an expert may not conclude about the reasonableness of a party's beliefs, "when such opinion necessarily would have required an interpretation of the relevant law." *Id* (citation omitted). Plaintiff responds that in certain contexts, expert testimony on reasonableness is useful, and even required. Doc. No. 838 at 14.

Courts permit experts to testify regarding reasonableness in certain contexts, such as reasonable royalty rates. *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1117 n.1 (S.D.N.Y. 1970). However, such testimony is improper when it derives from or is intertwined with an underlying legal standard, such that it usurps the role of the factfinder by telling it what result to reach. *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004)(permitting the expert to opine as to the actions a reasonable corporation undertakes upon learning of a patent relevant to its business, but not as to whether the particular defendant's conduct in that case was reasonable); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2015 WL 6750899, at *1 (E.D. Pa. Nov. 5, 2015), *recon*sideration denied, 2016 WL 5887152 (E.D. Pa. Jan. 22, 2016) (The reasonableness opinions proposed by Dr. Dahling can only be derived by applying the legal standards of invalidity and infringement to the relevant facts and assessing their legal merit. Such

---

[6] To this end, at the hearing on the motion, Plaintiff's Counsel admitted that the statement, "Network-1intended full disclosure" is "an example of poor word choice," and that "[w]hat he is actually talking about is the form and the content of the actual IDS rather than kind of trying to get into the mind of Network-1." *See* Doc. No. 931, June 18, 2017 Hr'g Tr. at 125:8–14.

12

opinions would clearly usurp the role of the jury and merely tell them which conclusion to reach as to an essential element.); *QVC, Inc. v. MJC Am., Ltd.*, 2012 WL 13565, at *1 (E.D. Pa. Jan. 4, 2012).

The disputed portion of Doll's expert report reads:

> [a]ccordingly, Defendants' repeated assertion that "[t]he only plausible explanation for Network-1's statements that such claims do not broaden the scope of original claim 6 is an intent to deceive the USPTO" is contrary to the evidence. *The more plausible explanation* is that the statements were reasonable, and Network-1 and its representatives believed them to be true.

Doll Report at ¶ 153 (emphasis added) (citation and internal quotation marks omitted).

According to Network-1, Doll's reasonableness opinion responds to certain Defendants' assertion that "Network-1's decision not to disclose any papers containing the [D]efendants' amended position . . . is *unusual and inexplicable*. . . ." Doc. No. 838 at 15; Doc. No. 838, Ex. 2, Godici Report, at ¶ 110 (emphasis added).

However, Network-1 later admits that Doll's characterization of Network-1's decision as "reasonable" is intertwined with the issue of whether Defendants' broadening contentions were material. *See* Doc. No. 838 at 15 ("In response, Mr. Doll analyzed the same record and determined the non-disclosure was not 'inexplicable,' but in accord with the general practice and procedures of the Patent Office. . . . Because there was a valid reason for non-disclosure (i.e., the information was cumulative and thus not material), a decision not to disclose them would be 'reasonable,' not 'inexplicable.'") (citations omitted). Thus, like the expert opinions in the aforementioned cases, Doll's opinion about the reasonableness of Network-1's statement applies an underlying legal

standard (that of materiality), and thus usurps the role of the factfinder by telling it what result to reach. This opinion is stricken.[7]

Defendants finally urge that ¶ 153 is also an impermissible opinion on intent and state of mind. Doc. No. 807 at 5. When Doll opines that "[Network-1's] representatives believed them to be true," Doll addresses Network-1's intent. This portion of ¶ 153 is thus excluded as impermissible speculation regarding Network-1's intent.

**V.     Remaining Opinions**

Defendants originally moved to also exclude Doll's opinions regarding the following three additional issues: (1) whether the '930 patent is valid; (2) whether the '930 Patent was improperly broadened during reexamination; and (3) whether Network-1 engaged in inequitable conduct before the USPTO. Doc. No. 807 at 1. At the hearing on the motion, Plaintiff's Counsel confirmed that Doll's Report does not contain testimony pertaining to any of these topics:

> [Mr. Thane:] Those three points or issues in our motion are not in dispute.
> [The Court:] Before you move on, can I just get on the record if that is the case? I mean, is Network-1 agreeing as to those three points, they are not disputing that?
> [Ms. Cho:] We think it should be denied as moot because Mr. Doll does not have those opinions in his report. All they cite is deposition testimony where they asked a question, elicited an opinion that is not in his report. He doesn't intend to opine about it. There is nothing in the report to strike. It is moot.

Doc. No. 931, June 18, 2017 Hr'g Tr. at 117:21–118:7.

To the extent Defendants maintain those portions of the Motion arguing for exclusion of Doll's testimony about these three topics, they are **DENIED as moot.**

---

[7] Plaintiff cites to *Securus Technologies, Incorporated v. Global Tel\*Link Corporation* for support that expert testimony on the issue of reasonableness is useful and sometimes, even required. Doc. No. 837 at 14. This reliance is misguided. Although the Federal Circuit in *Securus* concluded that a party seeking an award of attorneys' fees is required to introduce expert testimony to establish that the fees were reasonable and necessary, the Federal Circuit was applying Texas state law.

14

## CONCLUSION

Defendants' Motion to Strike Certain Portions of John Doll's Expert Report and Testimony is **GRANTED-IN-PART** and **DENIED-IN-PART**, as articulated above. Doc. No. 807.

So ORDERED and SIGNED this 21st day of September, 2017.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE