# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:11-cv-492- |
| v. | § | RWS-KNM |
| | § | |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

## ORDER

Before the Court is Network-1 Technologies, Inc.'s Motion to Exclude Certain Opinions of Hewlett-Packard Company's ("HP") Expert, Dr. M. Ray Perryman. Doc. No. 810.[1] The Court held a hearing on this Motion on June 19, 2017 ("Hearing on the Motion"). The Motion is **GRANTED-IN-PART**.

## BACKGROUND

Network-1 filed the above-captioned suit on September 15, 2011, alleging infringement of U.S. Patent No. 6,218,930 ("the '930 Patent"). Defendant Hewlett-Packard Company ("HP") retained M. Ray Perryman ("Perryman") to generally opine regarding "F/RAND licensing and the F/RAND licensing commitment" to the IEEE of Network-1 Security Solutions, Inc. ("Network-1). Doc. No. 810, Ex. 1 at 3.

---

[1] Network-1's Motion states that Perryman is HP's damages expert. Doc. No. 810 at 1. Moreover, Perryman states that he drafted the Report on behalf of HP. Doc. No. 810, Ex. 1 at 4. Both HP and HPE are signatories to the Response opposing the Motion. Doc. No. 844.

## APPLICABLE LAW

### *Daubert Motion*

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Indeed, "[t]he proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th. Cir. 1998). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema*, *Inc.*, 685 F.3d 452, 259 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 61, 668 (5th Cir. 1999)).

Factors to consider in determining whether a proposed expert's methodology is scientifically valid or reliable is:

> (1) whether the expert's theory can be or has been tested;
> (2) whether the theory has been subject to peer review and publication;
> (3) the known or potential rate of error of the technique or theory when applied;
> (4) the existence and maintenance of standards and controls; and
> (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Id.* at 593–95. A court must decide whether the *Daubert* factors are appropriate, use them as a starting point and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

In *Kumho Tire Company, Limited v. Carmichael*, the Supreme Court applied the *Daubert* principles to technical or specialized expert testimony. 526 U.S. 137 (1999). The Court explained that the overarching goal of *Daubert*'s gate-keeping requirement is to "ensure the reliability and relevancy of expert testimony. It is to make certain an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. A trial court has the discretion to exclude expert testimony if there is an "analytical gap" between the expert's reasoning and the conclusion. *General Electric Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 177 A.L.R. Fed. 667 (1997).

"At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–16 (Fed. Cir. 2011). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship*, 598 F.3d at 856. "The jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.*

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *Id.* at 854. Also, the "existence of other facts . . . does not mean that the facts used failed to meet the minimum standards or reliability." *Id.* at 855–56. "Any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation and internal quotation omitted).

## DISCUSSION

Plaintiff seeks to exclude Perryman's opinions: (1) regarding royalty stacking; (2) applying definitions from the IEEE's 2015 update to its patent policy; (3) regarding patent hold-up; (4) and that past licenses were influenced by threat of injunction.

### I.     Royalty Stacking

According to Plaintiff, Perryman offers several opinions regarding "royalty stacking." Doc. No. 810 at 1. Plaintiff argues that Perryman's opinions that royalty stacking could impact HP's accused products, with no evidence that HP is applying any stacked royalties on the accused technology, is unreliable. *Id.*

Defendant responds that Perryman's royalty stacking opinions are helpful because: (1) Network-1 has asserted that the '930 Patent is essential to practicing the 802.3af and 802.3at standards; (2) Network-1 is bound by the 2003 LOA, which obligates it to offer licenses for the '930 Patent on a "fair, reasonable, and non-discriminatory rate"; (3) because of the nature of a FRAND commitment, as well as the explanation of letters of assurance ("LOA") and standard-essential patents ("SEPs"), Perryman's testimony will help the jury to determine Network-1's FRAND commitment; (4) each instance of royalty stacking must start somewhere—i.e, with the first excessive royalty being demanded by an owner of a declared standard-essential patent; (5)

and Network-1's position would exempt the first licensor from its FRAND commitment against royalty stacking.  Doc. No.  844 at 1; 2; 3.

However, none of the above arguments tie royalty stacking to the facts of *this case*. *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015).   Indeed, the Federal Circuit has stated that "abstract recitations of royalty stacking theory, and qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—are insufficiently reliable."  *Commonwealth Scientific and Indus. Research Organization v. Cisco Systems, Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) (citing *Ericsson*, 773 F.3d at 1234 ("The district court need not instruct the jury on hold-up or stacking unless the accused infringer presents actual evidence of hold-up or stacking.")).

For support, Defendants rely on *Core Wireless Licensing S.A.R.L. v. Apple Inc.*   2016 WL 8231157, at *2–3; Doc. No. 907 at 3.  Defendants note that in that case, the court allowed the plaintiff's expert to testify regarding royalty stacking despite not presenting evidence that Apple had a royalty stacking problem.  *Id.*  However, in *Core Wireless*, Apple presented other evidence sufficiently linking the expert opinion on royalty stacking to the facts of the case.  As the court noted:

> [a]lthough Apple does not appear to present evidence that it currently has a royalty stacking problem, Apple does present evidence that (1) numerous specific royalty demands have been made that, if paid, would exceed the profit margin of the baseband chip; and (2) Apple considers royalty stacking in real-world licensing negotiations.

*Core Wireless Licensing S.A.R.L.*, 2016 WL 8231157, at *3 (N.D. Cal. Nov. 18, 2016).[2]

---

[2] The Court in *Core Wireless*, however, noted that it would exclude this opinion at trial if the expert failed to identify a sufficient factual basis for his assertion that Apple would consider royalty stacking in its hypothetical negotiation. 2016 WL 8231157, at *3.

Here, HP has identified no evidence that it has received requests for multiple royalties, or that it considers royalty stacking in real-world licensing negotiations.

HP also argues that Network-1 has not attacked the veracity of Perryman's royalty stacking opinions, nor the qualifications of Perryman, and as such, the opinions are admissible under Rule 702. Doc. No. 844 at 1. However, reliability is a prerequisite to admissible testimony under Rule 702. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Thus, by challenging whether Dr. Perryman's testimony on royalty stacking is sufficiently tied to the facts of this case, Plaintiff has questioned the reliability of Perryman's testimony, which is a viable basis for challenge under Rule 702.

Perryman's opinions that discuss "royalty stacking" are excluded.

## II.     Opinion Applying Definitions From the IEEE's 2015 update to its patent policy

Plaintiff next argues that the Court should exclude portions of Perryman's testimony that apply the 2015 Patent Policy definition of "reasonable rates" to the 2003 LOA. Doc. No. 810 at 4–5. Plaintiff's argument mirrors the argument from its Motion to Exclude the Testimony of Juniper's Damages Expert Alan Ratliff. *Compare* Doc. No. 809 *with* Doc. No. 810. The Court denies this part of the Motion for the same reasons it denied Plaintiff's Motion to Exclude the Testimony of Alan Ratliff. *See* Doc. No. 958.

## III.     Opinion on Patent Hold-Up

Plaintiff next argues that Perryman's patent hold-up opinion for non-comparable patents should be excluded. Doc. No. 810 at 5. The disputed paragraph of Perryman's testimony cited examples where courts have awarded lower reasonable royalties than the patent owner sought:

> Several recent court cases demonstrate how owners of SEPs exploit their position by demanding excessive royalties. For example, in the case of *Microsoft Corp. v. Motorola, Inc.* in 2012, the court found that Motorola's patents "contribute[d] very little to the standard." The court ruled that

reasonable royalties for Motorola's WiFi and H.264SEPs were $0.03471 and $0.0555 per unit, respectively, which was considerably less than the $6 and $8 per unit that Motorola had previously sought. Similarly, in the 2012 case of *Realtek Semiconductor Corp. v. LSI Corp.*, the court found that the appropriate royalty rate for LSI's SEPs was "only 0.19% of the selling price of Realtek's Wi-Fi chips." This amount was about 500 times below LSI's initial demand. The potential for patent hold-up is also illustrated by Innovatio IP Ventures' demand in 2013 for a royalty rate for its Wi-FI SEPs that amounted to $16 per unit for tablet computers," when the court determined that an appropriate FRAND rate was only $0.0956 per unit.

Doc. No. 810, Ex. 1 at paragraph 37.[3]

Plaintiff seeks to exclude the above paragraph of Perryman's testimony. Doc. No. 810 at 6.

HP argues that Perryman observes that patent hold up is a problem that occurs with SEPs. Doc. No. 844 at 4. According to HP, Perryman does not contend that the damages amount in above-mentioned cases should inform the damages amount in this case. *Id.* Rather, HP notes that Perryman uses the cases above to illustrate the problem of patent hold up and to support his point that several courts ultimately award damages amounts, which are less than the amount initially requested. *Id.*

However, Defendant has not presented evidence or suggested that patent hold-up is a problem in this case. The Federal Circuit has addressed this exact issue, in the context of appropriate jury instructions:

> In this case, we agree with the district court that D–Link failed to provide evidence of patent hold-up and royalty stacking sufficient to warrant a jury instruction. . . . If D–Link had provided evidence that Ericsson started requesting higher royalty rates after the adoption of the 802.11(n) standard, the court could have addressed it by instructing the jury on patent hold-up or, perhaps, setting the hypothetical negotiation date before the adoption of the standard. D–Link, however, failed to provide any such evidence.

---

[3] Patent holdup refers to "[t]he ability of a holder of [a standard-essential patent] to demand more than the value of its patented technology and to attempt to capture the value of the standard itself. . . .")*. Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217, at *10 (W.D. Wash. Apr. 25, 2013).

> Absent evidence that Ericsson used its SEPs to demand higher royalties
> from standard-compliant companies, we see no error in the district court's
> refusal to instruct the jury on patent hold-up or to adjust the instructions
> expressly to take patent hold-up into account.

*Ericsson, Inc. v. D-Link Sys.*, Inc., 773 F.3d 1201, 1218 (Fed. Cir. 2014).[4]

Similarly, here, HP has not presented evidence suggesting that Network-1 actually uses its SEP's to extract higher royalties from standard-compliant entities, i.e., engages in patent holdup. HP has not identified, for instance, facts indicating that any of Network-1's licensees have actually complained about hold-up.

At the Hearing, Defense counsel stated that Dr. Perryman "went out and found actual real world examples of patent hold-ups to show here is what it looks like, here is the concern, did the analysis. The same issue - - it *the same issue* that we have here." Doc. No. 931 at 103:14–17 (emphasis added).

However, HP has provided no evidence that patent hold up, is indeed an issue that exists in this case. Perryman's opinion regarding patent holdup is theoretical, and not tied to the facts of this case. Moreover, at the Hearing, Defense counsel admitted that he did not have any authority to support the notion that an expert may generally discuss examples of courts awarding royalties lower than what the plaintiff has asked for, without tying patent hold up to the facts of the specific case at hand. H'ring Tr., Doc. No. 931 at 105:8–12. *See Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 2773944, at \*1 (E.D. Tex. May 26, 2017) (granting the plaintiff's motion in limine to preclude, at trial, any use of the term "hold up.").

---

[4] In its Response, HP argues that Network-1's reliance on *Ericsson, Inc. v. D-Link Sys., Inc.*, is inapposite. Doc. No. 844 at 2. HP explains that in *Ericsson*, the issue was appropriate jury instructions, not appropriate testimony. *Id.* However, the Federal Circuit has itself relied on *Ericsson* in the *Daubert* context. *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016) ("And as we have repeatedly held, '[t]he essential requirement' for reliability under *Daubert* 'is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'") (citing *Ericsson*, 773 F.3d at 1226).

Thus, because Dr. Perryman's opinions on patent hold up are not tied to the facts of this case, they are excluded as unreliable under Rule 703.

## IV.    Opinion regarding Past Licenses

Plaintiff finally argues that Perryman's opinion that Network-1's past licenses were influenced by the threat of injunction should be excluded. (Doc. No. 810, Ex. 1 at ¶¶ 91, 92, 107, 117, 133, 142).

Plaintiff argues that Perryman has admitted that he did not identify supporting evidence, nor is he aware of any, for such an opinion. Doc. No. 810 at 7 (citing Doc. No. 810, Ex. 2 (Perryman Depo.) at 184:19–24). Plaintiff notes that Perryman admits that this opinion is just a mere "possibility," based only on the fact that Network-1 pleaded injunctive relief. *Id.* at 8. Plaintiff argues that Perryman admits that he is unaware of a situation where a non-practicing entity could even possibly get an injunction, because irreparable harm is typically not the case. *Id.* Plaintiff concludes that Perryman's opinion that it is "possible" that Network-1's past settlements were influenced by the threat of injunction is unsupported speculation. *Id.*

Defendant responds that Perryman's opinions are based on the pleadings in this and other litigation, and on Network-1's own statements in those pleadings. Doc. No. 844 at 5.

For support, Perryman's Report identifies the Original and Amended Complaints in this case. Doc. No. 844, Ex. 3 at Appendix C. Defendants' Response further identifies a complaint from previous litigation, *Network-1 Security Solutions, Inc. v. Cisco Sys., Inc., et al.*, No. 6:08-cv-30, Doc. Nos. 1 (E.D. Tex. Feb. 7, 2008).

The sole source of support for Perryman's opinions that Network-1's settlement agreements have been influenced by the threat of injunction is the Original and Amended Complaints in the instant case. Perryman cites to no evidence suggesting that any of Network-1's

9

settlement agreements were actually influenced by the threat of litigation. At the hearing, Defense counsel stated,

> [w]e don't know what was in the mind of each of those licensors or licensees at the exact time; but what we do know is that the facts show that there was a potential for an injunction because it was being sought in the complaint and that injunction was continued to be sought when the settlement agreement was entered.

H'ring Tr., Doc. No. 931 at 106:4–11.

Indeed, Dr. Perryman, in his deposition, admitted that he has not seen any evidence that Network-1 suffered irreparable harm in any of its past cases, or that Network-1 could not be compensated by money damages in its past cases. Doc. No. 810, Ex. 2 (Perryman Depo.) at 181:14–21; 183:3–9. The following excerpt from Dr. Perryman's deposition further illustrates the unreliability of his opinions to this case:

> [Plaintiff's Counsel:] Are you here offering the opinion that the explicit or implicit threat of an injunction actually did influence past Network-1 license agreements?
>
> [Dr. Perryman:] I have the opinion that there's that possibility because— because of the filing we discussed earlier today, but I -- I do not have evidence that that actually was the case.
>
> [Plaintiff's Counsel:] In your report, do you identify any evidence that shows that any of Network-1's past settlement licenses were influenced by the threat of an injunction?
>
> [Dr. Perryman:] I don't believe so, because I'm – I'm not aware of anything.

Perryman may not opine that Network-1's licenses have been influenced by the threat of injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Exclude an Opinion of HP's Damages

Expert, M. Ray Perryman, is **GRANTED-IN-PART** as outlined above.


So ORDERED and SIGNED this 21st day of September, 2017.


_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE