**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:11-cv-492- |
| v. | § | RWS-KNM |
| | § | |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

## ORDER

Before the Court is Defendant Juniper Networks. Inc.'s ("Juniper" or "Defendant") Motion to Strike Portions of Dr. Knox's Infringement Opinions and Supplemental Infringement Reports. Doc. No. 822. The Court held a hearing on this Motion on June 1, 2017. The Motion is **DENIED**.

## BACKGROUND

Plaintiff Network-1 Technologies, Inc. ("Network-1") accuses Defendants[1] of infringing U.S. Patent No. 6,218,930 ("the '930 Patent"). The '930 Patent was issued on April 17, 2001, and relates to an apparatus and method for remotely powering access equipment over a 10/100 switched Ethernet network. *See* '930 Patent. Network-1 retained Dr. Knox to opine about the validity and infringement of the '930 Patent by the Defendants' accused products. Doc. No. 596-23 at 7.

## APPLICABLE LAW

***Daubert Motion***

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a)

---

[1] The remaining Defendants in this case are HP, HPE, and Juniper.

the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Indeed, "[t]he proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th. Cir. 1998). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).

Factors to consider in determining whether a proposed expert's methodology is scientifically valid or reliable are:

(1) whether the expert's theory can be or has been tested;
(2) whether the theory has been subject to peer review and publication;
(3) the known or potential rate of error of the technique or theory when applied;
(4) the existence and maintenance of standards and controls; and
(5) the degree to which the technique or theory has been generally accepted in the scientific community.

*See Daubert,* 509 U.S. at 593–95. A court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

In *Kumho Tire Company, Limited v. Carmichael*, the Supreme Court applied the *Daubert* principles to technical or specialized expert testimony. 526 U.S. 137 (1999). The Court explained

that the overarching goal of *Daubert*'s gate-keeping requirement is to "ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. A trial court has the discretion to exclude expert testimony if there is "simply too great an analytical gap" between the expert's reasoning and the conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–16 (Fed. Cir. 2011) (citation omitted). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship*, 598 F.3d at 856. "The jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.* Ultimately, "*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."

## DISCUSSION

Defendant seeks to exclude: (1) Knox's 2016 opinion that transistors create temporary connections; and (2) Knox's Second Supplemental Infringement Report and Knox's corrections to his initial infringement report because they introduce new infringement theories not present in

Network-1's 2012 infringement contentions, thus violating Patent Local Rule 3-1. Doc. No. 822. Defendant also notes that Knox's Second Supplemental Infringement Report and Knox's corrections to his initial infringement report were served four months after the deadline for the service of infringement reports. Doc. No. 822 at 2.

In the alternative, if the Court does not strike Knox's reports, Defendant seeks a half-day deposition of Dr. Knox. Doc. No. 822 at 3.

## I. Transistors Create Temporary Connections

Defendant seeks to exclude Knox's 2016 opinion that transistors create temporary connections because it introduces a new infringement theory not present in Network-1's 2012 infringement contentions. Doc. No. 822.

Network-1 served its infringement contentions on September 24, 2012, which alleged that Juniper's switches and routers contain a "data node adapted for data switching." Doc. No. 246; Doc. No. 822-2 at 12-13. On October 14, 2016, Network-1 served Knox's infringement expert report, which opined that the "adapted for data switching" claim element is satisfied when transistors in the accused product are activated to create temporary connections. Doc. No. 822-1. Defendant argues that Knox's 2016 infringement opinion propounds a new infringement theory, thus violating Patent Local Rule 3-1. Doc. No. 822 at 2.

Patent Rule 3-1 governs the disclosure of asserted claims and infringement contentions in patent infringement actions. Patent Rule 3-1 provides that, in its disclosure, the party asserting infringement must: (a) identify each patent claim that is infringed; (b) identify each accused product for each claim; (c) provide a chart identifying specifically where each limitation of each asserted claim is found in each accused product for each claim; and (d) specify whether infringement is literal or based on the doctrine of equivalents. *See* Patent L.R. 3-1.

Defendant sets forth a five-factor test that courts in this District have utilized when determining whether it is appropriate to exclude evidence based on a party's failure to comply with the Patent Rules: "prejudice to the non-movant, the length of the delay, the reason for the delay, the important of the matter sought to be excluded, and diligence." Doc. No. 822 at 5-5; citing *LML Patent Corp. v JPMorgan Chase & Co.,* 2011 WL 5158285 at *4 (E.D. Tex. Aug. 11, 2011); *Tycho Healthcare Group LP v. Applied Med. Res, Corp.,* 2009 WL 5842062 at *1-2 (E.D. Tex. Mar. 30, 2009). However, there must first be a threshold inquiry of whether Knox's infringement opinions violate the Local Patent Rules.

Defendant alleges that because Network-1's 2012 infringement contentions do not specifically allege that transistors create temporary connections, Knox's 2016 infringement expert report introduced a new infringement theory, thus violating Patent Local Rule 3-1. Doc. No. 822 at 4-5.

Network-1 counters by citing *Orion IP, LLC v. Staples, Inc.,* to demonstrate that the rules do not require "overly factual contentions from plaintiffs." There, the Court stated:

> The Patent Rules intend to strike a balance of providing fair notice to defendants without requiring unrealistic, overly factual contentions from plaintiffs, but the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword.

407 F. Supp. 2d 815, 817 (E.D. Tex. 2006). Thus, the underlying intent of Patent Local Rule 3-1 is to put defendants on notice. *Id.*

Here, Network-1 specifically identified the component that constitutes a "data node adapted for data switching" in Juniper's allegedly infringing products. Doc. No. 853 at 3. Network-1 also contends that it "went beyond" the requirements of Rule 3-1 by detailing "where the data node adapted for data switching" is in each accused product and explained how the data nodes satisfied the infringement contention. Doc. No. 853 at 3. Knox's 2016 report did not change the

scope of its infringement theory, but rather articulates how transistors constitute a "data node adapted for data switching." Doc. No. 853 at 7. Thus, Knox's opinion that transistors are activated to create temporary connections is not a new infringement theory because it merely articulates how Juniper's products satisfy the alleged infringement term "data node adapted for data switching." *See Linex Technologies, Inc. v. Belkin Int'l, Inc.,* 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008) (finding that Plaintiff did not have to explain how OFDM is a spread spectrum modulation technique in its Patent Local Rule 3-1 infringement contentions because expert opinion testimony after claim construction should address the issue).

Accordingly, the five-factor test Juniper outlines in its brief regarding Knox's opinion regarding transistors is irrelevant because Network-1 did not introduce a new infringement theory and thus Network-1 did not violate any Local Patent Rule. There is no grounds for the exclusion of Knox's opinion that transistors create temporary connections under *Daubert.*

## II.     Second Supplemental Expert Report and Corrections to Initial Infringement Report

Defendant also seeks to exclude Knox's Second Supplemental Infringement Report and Knox's corrections to his initial infringement report (collectively, "Second Reports") because they introduce new infringement theories and were served after the deadline for the service of infringement reports. Doc. No. 822 at 2.

Network-1 served Knox's Second Supplemental Expert Report on February 24, 2017. Doc. No. 789. On March 6, 2017, Network-1 served Knox's corrections to Knox's infringement opinions. Doc. No. 822-5. Defendant points out that Network-1 served Knox's Second Reports more than four months after the deadline to do so without leave of the Court. Doc. No. 822 at 7. Defendant contends that the late submission of the Second Reports violates the five-factor test set

forth above as a violation of a federal or local rule by introducing new infringement theories after the deadlines for opening and rebuttal reports. Doc. No. 822 at 7.

Network-1 counters with a different standard used in this District, originally set forth by the Fifth Circuit, that weighs: "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party fit he witness is allowed to testify; (3) the possibility that a continuance would cure potential prejudice; and (4) the explanation given for the failure to identify the witness." *Green v. Blintz U.S.A.,* No. CIV.A. 2:07-CV-372, 2008 WL 5572822 at *2 (E.D. Tex. Sept. 30, 2008) (*citing Campbell v. Keystone Aerial Surveys, Inc.,* 138 F.3d 996, 1000 (5th Cir. 1998)). Here, the *Green* standard is the correct standard for determining whether Knox's Second Supplemental Expert Report should be excluded since it is a supplemental expert disclosure submitted after the discovery deadline. *See id.*[2] Further, Defendant cites *Green*[3] when asserting that "this Court and others regularly strike expert reports" but analyzes the five-factor test for the violation of a federal or local rule. Doc. No. 822 at 7.

The Court will address the *Green* factors.

### a. *Importance of Witness Testimony*

Network-1 argues that that Knox's Reports are important because they address arguments not previously disclosed in Juniper's interrogatory responses. Doc. No. 853 at 13. Defendant argues that the Second Reports are not important to Network-1's case because Knox's initial infringement reports already set forth his infringement opinions and his first supplemental report addresses the Court's claim construction. Doc. No. 822 at 8.

---

[2] The *Green* Court applied the *Campbell* standard because Defendant submitted supplemental expert reports after the discovery deadline
[3] Doc. No. 822 at 7 n. 20.

Network-1 notes that Juniper's expert report included arguments not found in Juniper's August 2016 interrogatory responses. Doc. No. 853 at 12. Network-1 specifically points out that Juniper's August 2016 interrogatory response stated "Juniper's accused products do not have a secondary power source, either literally or under the doctrine of equivalents," but its expert, Dr. Wright, presented 30 pages specifically addressing the "secondary power source" limitation as well as other new opinions not presented in the interrogatory responses. Doc. No. 853 at 12.

Since Juniper's expert report included arguments not addressed in its August 2016 interrogatory responses, Knox's Second Supplemental Expert Report is important to the case.

### b. Prejudice to Opposing Party and Possibility that a Continuance Would Cure Prejudice

Juniper asserts that Knox's Second Reports are prejudicial to Juniper because the reports were issued after the deadlines for opening and rebuttal reports, thus preventing Juniper's expert from responding to Knox's report. Doc. No. 822 at 7-8. However, this assertion is incorrect because Defendants HP and Axis received Knox's Second Supplemental Expert Report at the same time as Juniper and responded with their own supplemental expert reports within two weeks of receipt of Knox's Second Supplemental Expert Report. Doc. No. 853 at 8.

HP's infringement expert, Dr. Davies, served a supplemental expert report two weeks after receiving Dr. Knox's Second Supplemental Report "[i]n response to the Knox Second Supplemental Report." Doc. No. 853-5 at 2. Further, Axis's infringement expert, Dr. Neikirk, who is also Juniper's validity expert, served a supplemental expert report two weeks after receiving Knox's Second Supplemental Expert Report in which he specifically "address[es] certain opinions of Dr. James M. Knox set forth in his Second Supplemental Expert Report dated February 16, 2017." Doc. No. 853-6 at 2. Thus, Juniper could have also responded to Knox's Second

Supplemental Expert Report either within two weeks upon receipt as HP and Axis did or even after the two-week mark.

Juniper also had the opportunity to prepare for and depose Knox about his Second Supplemental Expert Report because Juniper received Knox's report three weeks prior to its deposition of Knox. Doc. No. 853 at 9. In fact, Juniper did depose Knox about his Second Supplemental Report. Doc. No. 853 at 10. More specifically, Juniper's counsel questioned Knox about pages 3, 18, and 22 as well as Section 12 of his Second Supplemental Expert Report, thus demonstrating that Juniper had an opportunity to and actually did depose Knox about his Second Supplemental Expert Report. Doc. No. 853-8 at 369; 402; 410; and 435. There was no prejudice to Juniper nor would a continuance cure the non-existent prejudice.

### c. *Explanation for Failure to Identify the Witness*

Juniper argues that Network-1 was not diligent in supplementing Knox's opinions and there was no justification for the delay because Juniper disclosed its non-infringement positions on August 15, 2016, which was two months before the infringement report deadline. Doc. No. 822 at 8. Therefore, Knox could have supplemented his reports before the deadline. Doc. No. 822 at 8. However, as discussed above, Juniper's expert report included arguments not found in Juniper's August 2016 interrogatory responses and thus Network-1 did not have an opportunity to address those new arguments. Doc. No. 853 at 12. Since Juniper's expert report included arguments not addressed in its August 2016 interrogatory responses, there was an explanation for Knox's Second Supplemental Expert Report.

## **CONCLUSION**

Because all of the *Green* factors weigh against exclusion, Defendant's Motion to Strike Portions of Dr. Knox's Infringement Opinions and Supplemental Infringement Reports is **DENIED**.

Because Juniper had the opportunity and did indeed depose Dr. Knox about his Second Supplemental Expert Report, Juniper's request for a half of a day deposition of Dr. Knox is **DENIED**.

So ORDERED and SIGNED this 11th day of October, 2017.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE