IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § | |
| | § | |
| | § | CIVIL ACTION NO. 6:11-cv-492- |
| v. | § | RWS-KNM |
| | § | |
| | § | |
| ALCATEL-LUCENT USA, INC., ET AL. | § | |

## REPORT AND RECOMMENDATION

Before the Court are Network-1 Technologies, Inc. and Defendants' Supplemental Briefs

regarding Defendants' Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 305.  Docs.

No. 871 & 893.[1]  The Court **RECOMMENDS GRANTING**  Defendants' Motion for Summary

Judgment of Invalidity Under 35 U.S.C. § 305 as to Claim 21 of the '930 Patent.[2]  Doc. No. 609.

## BACKGROUND

Network-1 Technologies, Inc. ("Network-1" or "Plaintiff") filed the above-captioned suit

on September 15, 2011, alleging infringement of the U.S. Patent No. 6,218,930 ("the '930 Patent").

In July 2012, a request for *ex parte* reexamination was filed ("the '401 reexamination") with the

United States Patent and Trademark Office ("PTO").  Doc. No. 609 at 3.  In response to rejections

of challenged claims 6, 8, and 9, Network-1 filed an Amendment and Reply that responded to the

rejections and added new claims 10–23 to the '930 Patent.  Doc. No. 609 at 3.  A reexamination

---

[1] Defendants Axis Communications AB, Axis Communications, Inc., Alcatel-Lucent Holdings Inc., Alcatel-Lucent USA Inc., Avaya Inc., Dell Inc., Hewlett-Packard Company, Juniper Networks, Inc., Polycom, Inc., Sony Corporation, Sony Corporation of America, and Sony Electronics Inc., were parties to the original Motion for Summary Judgment. Doc. No. 609.  Of these Defendants, Axis Communications AB, Axis Communications, Inc., Hewlett Packard Enterprise Company, Hewlett-Packard Company, and Juniper Networks, Inc. were the only ones remaining in May of 2017, when they submitted their supplemental brief. Doc. No. 893.  Of these Defendants, the only ones remaining today are Hewlett-Packard Company, Hewlett Packard Enterprise Company, and Juniper Networks, Inc.  Thus, all subsequent references to "Defendants" are to these three defendants.
[2] The Court has already separately granted Defendants' Motion as to Claim 23 of the '930 Patent.  *See* Doc. No. 860 at 7–8 & 19–20.

certification issued on October 14, 2014.  Doc. No. 609, Ex. 7.  The '930 Patent was subject to a

subsequent *ex parte* reexamination ("the '444 reexamination").  Doc. No. 609 at 4.  On November

9, 2015, the PTO issued a reexamination certificate in that proceeding.  Doc. No. 609, Ex. 9.

      On November 4, 2016, the Court issued a Report and Recommendation construing the

disputed terms in the '930 Patent.  Doc. No. 693 ("the Report").  In particular, the Court construed

"low level current" to mean "a non-data-signal current that is sufficient to begin start up of the

access device but that is not sufficient to sustain the start up."  *Id.* at 12.  The Report also

recommended denying Defendants' Motion Summary Judgment (Doc. No. 609) that Plaintiff, by

adding new independent Claim 21 during reexamination, impermissibly broadened the scope of

original Claim 6 under 35 U.S.C. § 305.  Doc. No. 693 at 20–21.

      Defendants objected that the Report failed to address whether new Claim 21 is improperly

broader than original Claim 6 because whereas Claim 6 recites a "low level current," Claim 21

recites merely "a current" ("Defendants' new argument").  Doc. No. 713 at 5.  Plaintiff responded

that Defendants' original argument was that Claim 21 broadened the scope of Claim 6, not that

Claim 21 was itself broader than Claim 6.  Doc. No. 734 at 4–5.  Plaintiff urged that "Defendants'

attempt to raise a new argument in its objections must be rejected."  *Id.* at 5.

      The District Judge overruled Defendants' objection on procedural grounds because

Defendants did not sufficiently present this argument during claim construction proceedings.  Doc.

No. 860 at 14–17.  The Court nonetheless invited the parties to submit supplemental briefing

addressing Defendants' new argument on its merits.  *Id.*

## APPLICABLE LAW

### *Impermissible Claim Broadening*

A patentee is not permitted to enlarge the scope of a patent claim during reexamination. 35 U.S.C. § 305.  "Whether amendments made during reexamination enlarge the scope of a claim is a matter of claim construction . . . ."  *Creo Prods., Inc. v. Presstek, Inc.*, 305 F.3d 1337, 1344 (Fed. Cir. 2002).  The Federal Circuit has "strictly interpreted § 305 to prohibit any broadening amendments," such that a "reexamined claim cannot be broader in any respect, even if it is narrowed in other respects."  *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1352 (Fed. Cir. 2014); *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1303 (Fed. Cir. 2008).  Under the broadening inquiry, a court must: (1) "analyze the scope of the claim prior to reexamination"; and (2) "compare it with the scope of the claim subsequent to reexamination."  *Creo Prods., Inc.*, 305 F.3d at 1344.

### *Claim Differentiation*

"The doctrine of claim differentiation stems from 'the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'"  *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (citing *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999)). "Although the doctrine is at its strongest 'where the limitation sought to be "read into" an independent claim already appears in a dependent claim,' . . . there is still a presumption that two independent claims have different scope when different words or phrases are used in those claims." *Id.* at 1368–69 (citing *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1365–69 (Fed. Cir. 2000); *Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987)).

"However, the doctrine 'only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction.'" *Seachange*, 413 F.3d at 1369 (citing *Kraft*, 203 F.3d at 1368) (internal quotations omitted). "[T]he doctrine of claim differentiation cannot broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence. . . . [C]laims that are written in different words may ultimately cover substantially the same subject matter." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998).

"In the most specific sense, 'claim differentiation' refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006) (citation omitted). However, in the context of two independent claims, two considerations are relevant: "(1) claim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous; and (2) claim differentiation 'can not broaden claims beyond their correct scope.'" *Id.* at 1381 (citing *Fantasy Sports Props. v. Sportsline.com,* 287 F.3d 1108, 1115-16 (Fed. Cir. 2002)). Where there are two independent claims, claim differentiation is a guide, not a rigid rule. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). Moreover, "claim differentiation is a rebuttable presumption that may be overcome by a contrary construction dictated by the written description or prosecution history." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016).

### *Prosecution History Disclaimer*

Prosecution history disclaimer requires "that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Trivascular, Inc. v. Samuels*, 812

4

F.3d 1056, 1063 (Fed. Cir. 2016).  "[T]he prosecution history can often inform the meaning of the

claim language by demonstrating how the inventor understood the invention . . . ."  *Philips v. AWH*

*Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).  "Any explanation, elaboration, or qualification

presented by the inventor during patent examination is relevant, for the role of claim construction

is to 'capture the scope of the actual invention' that is disclosed, described, and patented."  *Fenner*

*Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) (citation omitted).  "The party

seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a

'clear and unmistakable' disclaimer that would have been evident to one skilled in the art.'"

*Trivascular, Inc.*, 812 F.3d at 1063–64.   "[A] patentee's statements during reexamination can be

considered during claim construction, in keeping with the doctrine of prosecution disclaimer."

*Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017) (citations and internal

quotation marks omitted).

### *Judicial Estoppel*

In a patent suit, judicial estoppel "is applied in accordance with the law of the regional

circuit as opposed to Federal Circuit law."  *Novo Nordisk A/S v. Bio–Tech. Gen. Corp., Ltd.*, No.

Civ.A 02-332-SLR, 2003 WL 21383717, at *2 (D. Del. June 9, 2003).  "The doctrine of judicial

estoppel . . . prevent[s] a party from asserting a position in a legal proceeding that is inconsistent

with a position taken in a previous proceeding."  *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th

Cir. 2012).  In determining whether to apply judicial estoppel, it is helpful to consider whether:

"(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly

inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not

act inadvertently."  *Id.*

## DISCUSSION

### I.      Claim 6 and Claim 21 of the '930 Patent

Claims 6 and 21 of the '930 Patent read in relevant part, as follows:

| Claim 6 | Claim 21 |
|---|---|
| delivering a *low level current* from said main power source to the access device over said data signaling pair | delivering a *current* from said main power source to the access device over said data signaling pair, *said current being insufficient, by itself, to operate said access device connected to the data signaling pair* |

'930 Patent at Cl. 6; 21 (emphases added).

This Court previously construed "low level current" in Claim 6 to mean "a non-data-signal current that is sufficient to begin start up of the access device but that is not sufficient to sustain the start up." Doc. No. 693 at 12.  In so construing, the Court imposed both an upper bound (the current level cannot be sufficient to sustain start up) (hereinafter "upper bound") and a lower bound (the current level must be sufficient to begin start up) (hereinafter "lower bound").  *Id.*

### II.      Analysis

The parties dispute whether Claim 21 is broader than Claim 6.  Defendant generally argues that the because the "current" in Claim 21 is not a "*low level* current", (like it is in Claim 6), Claim 21 is impermissibly broader than Claim 6.  Doc. No. 893 at 4.  Plaintiff states that the "current" in Claim 21 has the same claim scope as the "current" in Claim 6.  Doc. No. 871 at 1.

#### A.  Ordinary Meaning

Defendants first argue that based on the plain language of Claim 21 and the differences that exist with respect to Claim 6, the lower bound requirement that applies to "low level current" in claim 6, does not apply to "current" in Claim 21.  Doc. No. 893 at 2.  Plaintiff does not address this point.

Thus, as a threshold matter, Plaintiff has not demonstrated why the lower bound requirement of "low level current" in Claim 6 also applies to "current" in Claim 21.  *See, e.g., Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

## B.  Claim Differentiation

Defendants next argue that in view of claim differentiation principles, the construction of "low level current" does not apply to Claim 21.  Doc. No. 893 at 2.  Plaintiff does not address claim differentiation.

Claim differentiation is "the presumption that two independent claims have different scope when different words and phrases are used." *Biosonix, LLC v. Hydrowave*, LLC, 230 F. Supp. 3d 598, 607 (E.D. Tex. 2017).  However, in the context of two independent claims, two considerations are relevant: "(1) claim differentiation takes on relevance in the context of a claim construction that would render additional, or different, language in another independent claim superfluous; and (2) claim differentiation 'can not broaden claims beyond their correct scope.'" *Curtiss-Wright*, 438 F.3d at 1381 (citing *Fantasy Sports Props. v. Sportsline.com,* 287 F.3d 1108, 1115-16 (Fed. Cir. 2002)).

Under principles of claim differentiation, Plaintiff's argument—that the lower bound imposed in Claim 6 must also be imposed on Claim 21—would render the word "low" in "low level current" (of Claim 6) superfluous.  *See id*.  Although both Claims 21 and 6 are independent claims, the difference in language gives rise to a presumption that Claim 21, unlike Claim 6, does not have a lower bound requirement.  *See id.*

This case is similar to *Ancora Techs., Inc. v. Apple, Inc.,* 744 F.3d 732, 735 (Fed. Cir. 2014).  In *Ancora*, two independent claims were at issue: claim 1, which was asserted, and which recited a method of "restricting software operation"; and claim 18, which was not asserted, and

7

which recited a method for accessing an "application software program." *Id.*  The defendant

argued that the "program" in claim 1 was limited to an "application program." *Id.*  In addition to

relying on the terms' ordinary meanings, the court relied on claim differentiation to conclude that

the "program" in claim 1 was not restricted to application programs:

> Claim 1 recites a "method of restricting software operation" . . . and refers
> to the restricted software simply as a "program." . . . In contrast,
> independent claim 18 . . . recites a "method for accessing an *application*
> software program" and then repeatedly refers to the "*application* software
> program." . . . Although claim 18 is not a dependent claim, and claim
> differentiation as an interpretive principle is often of limited importance, the
> difference in terminology tends to reinforce, rather than undermine,
> adoption of the broad ordinary meaning of "program" by itself.

*Id.* at 735 (emphasis in original).  Thus, like the patentee in *Ancora*, the patentee's use of different

words in Claim 6 and 21 weighs in favor of finding a difference in claim scopes.

## C.  Rebutting Claim Differentiation

"[C]laim differentiation is a rebuttable presumption that may be overcome by a contrary

construction dictated by the written description or prosecution history." *Howmedica Osteonics*

*Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1323 (Fed. Cir. 2016).

For instance, in *Seachange Int'l, Inc. v. C-COR, Inc.*, of the two claims at issue, claim 1

and claim 37, claim 1 required a "point-to-point two way channel" while claim 37 only required a

"network for data communication." *Id.* at 1366.  The court ruled that according to claim

differentiation, the difference in claim language suggested that claim 37 does not require point-to-

point, two-way channel connections. *Id.* at 1369.  The defendant successfully rebutted this

presumption by arguing that the written description disclosed only point-to-point interconnections,

established that the point-to-point connections achieve a necessary objective of the invention, and

eliminated embodiments that were incompatible with point-to-point interconnections. *Id.* at 1369–

70.

### i.      Specification

Plaintiff argues that when the Court imposed a lower bound on "low level current" in Claim 6, it "did not point to any particular word or phrase in claim 6 that suggested the current must be higher than some lower bound."  Doc. No. 871 at 2.

However, in response to Network-1's argument that "low level current" need not include a lower boundary, the Court's *Markman* Report and Recommendation specifically noted that "construction is appropriate to give meaning to the constituent term 'low.'"  Doc. No. 693 at 11.

Plaintiff next argues that instead of relying on a particular word in Claim 6 to construe "low level current," the Court in *D-Link*,[3] *Cisco*,[4] and in this case looked to the purpose served by the "current" in claim 6 and in the specification:

> [t]he Court cited the specification passage at 3:12–17, where the specification states, "The varying voltage [*sic*] level is created by the remote power supply *beginning to start up* but the low current [level] is unable to sustain the start up." . . . Based on this purpose, the Court concluded that the current in claim 6 should be high enough so that it is "sufficient to begin start up of the access device."

Doc. No. 871 at 2 (emphasis Plaintiff's).

The portion of the specification that the Court cited in construing "low level current" in the *Markman* Report and Recommendation refers specifically to "low current level," not just any "current.":

> If a varying voltage level is detected, this identifies the presence of dc-dc switching supply in the remote equipment.  The varying level is created by the remote power supply beginning to start up but the *low current level* is unable to sustain the start up.  This cycle continues to be repeated creating a "sawtooth" voltage level in the return path.

---

[3] *Network-1 Sec. Solutions, Inc. v. D-Link Corp., et al.*, No. 6:05-cv-291, Doc. No. 137 (E.D. Tex. Nov. 20, 2006) ("*D-Link Markman Order*").

[4] *Network-1 Sec. Solutions, Inc. v. Cisco Sys., Inc.*, No. 6:08-cv-30, Doc. No. 251 (E.D. Tex. Feb. 16, 2010) ("*Cisco Markman Order*"), Doc. No. 328 (May 18, 2010) ("*Cisco Reconsideration*").

'930 Patent at 3:12–17 (emphasis added).  Also of note, *Cisco* analyzed this issue in light of finding that "[t]he term is a relative term of degree."  *Cisco Markman Order* at 16.

Finally, Plaintiff argues that the "current" in Claim 21 should be construed narrowly, to include a lower bound requirement, because  "[t]he recited 'current' in [C]laim 21 is used in the exact same way for the exact same purpose as the current in [C]laim 6."  Doc. No. 871 at 2.  However, Plaintiff has not identified any sufficient legal precedent for this proposition.

Thus, Plaintiff has not rebutted the presumption that, under claim differentiation, the scopes of Claims 6 and 21 are different.

> ### ii.      *Prosecution History Disclaimer*

Plaintiff next argues that the doctrine of prosecution history disclaimer prohibits Defendants from arguing that the specification does not impose the lower bound requirement upon Claim 21.  Doc. No. 871 at 4.  Specifically, Plaintiff argues:

> [d]uring the reexamination of the '930 patent, Network-1 unambiguously stated that substituting "low level current" in claim 6 with a "current . . . [where] said current [is] insufficient, by itself, to operate said access device connected to the data signaling pair," in claim 21 "does not change the scope of the claim" and "does not broaden the scope of the claim."

*Id.* (citing Doc. No. 871, Ex. 4, June 25, 2014 Amendment and Reply at 78).

However, Plaintiff's piecemeal excerpts do not accurately reflect its communication with the PTO.  The full excerpt of Network-1's statement is as follows:

> Claim 21 (a) adds the additional limitation "Ethernet data network," and (b) replaces the phrase "low level current" with the *Board's construction* of "low level current" ("a current that is insufficient, in itself, to operate the access device").  Replacing a phrase with the construction of the phrase does not change the scope of the claim in which the phrase is found and therefore does not broaden the scope of the claim.

*Id.* (italics added).

10

Plaintiff represented to the PTO that substitution of "low level current" with "current" (among other language) did not broaden the scope of "low level current" *as construed by the Board*. Because the basis for Defendants' Motion is the Court's construction, not the Board's construction, this statement does not give rise to any relevant disclaimer. *See* Doc. No. 713 at 5.

### iii.     *Judicial Estoppel*

Finally, Plaintiff argues that the doctrine of judicial estoppel prohibits Defendants from disputing that the specification imposes the lower bound requirement upon Claim 21. Doc. No. 871 at 3. Plaintiff contends that during claim construction, in response to Network-1's argument that the current need not be higher than some specified level, Defendants expressly argued that the specification required that "the 'low level current' must be high enough to begin 'to start up.'" *Id.* at 4 (citing Doc. No. 611 at 4). Noting that the Court accepted this argument, Plaintiff argues that Defendants are now judicially estopped from arguing that the specification does not impose this lower bound. *Id.*

However, when Defendants made this argument, they were doing so to support their proposed construction of "low level current" in Claims 6, 12–14, 20, 22, and 23, not "current" in Claim 21. Defendants' present argument that the "current" in Claim 21 does not have a lower boundary requirement is not necessarily inconsistent with its prior argument that the "current" in Claim 6 has a lower boundary requirement.

Plaintiff thus has failed to demonstrate that judicial estoppel applies.[5]

---

[5] In its Response to Plaintiff's Supplemental Brief, Defendant also argues that two additional reasons why Claim 21 is broader than Claim 6 are: (1) Claim 21 encompasses additional situations where a "current' is "insufficient "due to reasons other than its "level" (such as the length of the data signaling pair or the amount of time a current is applied); (2) Claim 21 does not exclude the "current" from being a "data signal." Doc. No. 893 at 4–5. Because the present Report and Recommendation resolves the claim broadening issue on other grounds, the Court does not reach these arguments.

## <u>CONCLUSION</u>

For the reasons stated above, the Court **RECOMMENDS GRANTING** Defendants'
Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 305 (Doc. No. 609) as to Claim
21 of the '930 Patent.[6]

Within fourteen days after receipt of the magistrate judge's report, any party may serve and
file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. §
636(b). A party's failure to file written objections to the findings, conclusions and
recommendations contained in this Report shall bar that party from *de novo* review by the district
judge of those findings, conclusions and recommendations and, except upon grounds of plain error,
from attacking on appeal the unobjected-to proposed factual findings and legal conclusions
accepted and adopted by the district court. *Douglass v. United Servs. Auto Assn*, 79 F.3d 1415,
1430 (5th Cir 1996) (en banc), *superseded on other grounds by statute*, 29 U.S.C. § 636(b)(1)
(extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 18th day of October, 2017.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[6] The Court has already separately granted Defendants' Motion as to Claim 23 of the '930 Patent. *See* Doc. No. 860
at 7–8 & 19–20.