# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC. § | |
| § | |
| § | CIVIL ACTION NO. 6:11-cv-492- |
| v. § | RWS-KNM |
| § | |
| § | |
| ALCATEL-LUCENT USA, INC., ET AL. § | |

## ORDER

Before the Court is Defendants', Hewlett Packard Enterprise Company, Hewlett-Packard Company (collectively, "HP"), and Juniper Networks, Inc., Motion to Exclude Opinions and Testimony of Mr. Robert Mills. Doc. No. 824.[1] The Court held a hearing on this Motion on June 1, 2017. The Motion is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

## BACKGROUND

Plaintiff Network-1 Technologies, Inc. ("Network-1") accuses Defendants[2] of infringing U.S. Patent No. 6,218,930 ("the '930 Patent"). The '930 Patent relates to an apparatus and method for remotely powering access equipment over a 10/100 switched Ethernet network. *See* '930 Patent. Network-1 retained Mills to opine regarding the damages for the alleged infringement of the '930 Patent. Doc. No. 824 at 1.

## APPLICABLE LAW

*Daubert Motion*

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a)

---

[1] AXIS Communications AB and AXIS Communications, Inc. join this motion with respect to IIA, IIB, IIC, IID, IIIA and IIID.

[2] The remaining Defendants in this case are HP, HPE, and Juniper.

the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Indeed, "[t]he proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th. Cir. 1998). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).

Factors to consider in determining whether a proposed expert's methodology is scientifically valid or reliable are:

> (1) whether the expert's theory can be or has been tested;
> (2) whether the theory has been subject to peer review and publication;
> (3) the known or potential rate of error of the technique or theory when applied;
> (4) the existence and maintenance of standards and controls; and
> (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*See Daubert,* 509 U.S. at 593–95. A court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

In *Kumho Tire Company, Limited v. Carmichael*, the Supreme Court applied the *Daubert* principles to technical or specialized expert testimony. 526 U.S. 137 (1999). The Court explained

that the overarching goal of *Daubert*'s gate-keeping requirement is to "ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. A trial court has the discretion to exclude expert testimony if there is "simply too great an analytical gap" between the expert's reasoning and the conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017) (quoting *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–16 (Fed. Cir. 2011) (citation omitted). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship*, 598 F.3d at 856. "The jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.*

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *Id.* at 854. Also, the "existence of other facts . . . does not mean that the facts used failed to meet the minimum standards of relevance or reliability." *Id.* at 855–56. For example, "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation and internal quotation omitted).

*Apportionment for Standard Essential Patents*

Title 35, section 284 of the United States Code provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. . . ." Under § 284, damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

That "the patent holder should only be compensated for the approximate incremental benefit derived from his invention" is "particularly true for SEPs [(standard essential patents)]." *Id.* at 1232). As *Ericsson* explains:

> When dealing with SEPs, there are two special apportionment issues that arise. First, the patented feature must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology. These steps are necessary to ensure that the royalty award is based on the incremental value that the patented *invention* adds to the product, not any value added by the standardization of that technology.

*Id.*

"[U]nder this apportionment principle, 'there may be more than one reliable method for estimating a reasonable royalty.'" *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)), *cert. denied*, 136 S. Ct. 2530, 195 L. Ed. 2d 859 (2016). For example, "a party may . . . estimate the value of the benefit provided by the infringed features by . . . comparing the accused product to non-infringing alternatives." *Apple Inc.*, 757 F.3d at 1315.

"This adaptability is necessary because different cases present different facts." *Commonwealth Sci. & Indus.*, 809 F.3d at 1301–02. "And as damages models are fact-dependent, '[a] distinct but integral part of [the admissibility] inquiry is whether the data utilized in the methodology is sufficiently tied to the facts of the case.'" *Id.* (citing *Summit 6*, 802 F.3d at 1296).

## DISCUSSION

Defendants seek to exclude the Robert Mills's expert reports and opinions regarding the damages from infringement of the '930 Patent for three reasons: (1) inconsistencies between Mills's current expert report and his previous expert report in *Chrimar Systems, Inc. v. Alcatel-Lucent* ("the *Chrimar* case");[3] (2) reliance on unreliable methodologies to come up with a per-port royalty rate; and (3) failure to apportion the value of the patent attributed to non-infringing technology. Doc. No. 824.

### I. *Chrimar* Expert Report

Defendants argue that the inconsistencies between Mills's expert report in *Chrimar* and his expert report in the instant case undermine the validity of his expert report here. Doc. No. 824 at 1. Defendants extensively discuss the *Chrimar* case because Mills was Chrimar's damages expert who based his $2.50 per-port royalty rate on Network-1 licenses involving the '930 Patent. Doc. No. 824 at 1.

Defendants point out inconsistencies between the net result of the opinions of Chrimar's liability expert, Dr. Vijay Madisetti, and Network-1's liability expert, Dr. Knox, because they both opine that the patent they respectively analyze contributes more than half the functionality of PoE. Doc. No. 824 at 4. In *Chrimar,* Mills relied on Madisetti's opinion in calculating a royalty, and similarly here, Mills relies on Knox's opinion in calculating a royalty. Doc. No. 824 at 4.

---

[3] *Chrimar v. Alcatel* concerned Power over Ethernet patents owned by Chrimar Systems, Inc. that went to jury trial before Judge John Love in October 2016.

Defendants thus conclude that the net result of Mills's opinions regarding the Chrimar patents and the '930 Patent is that these patents constitute more than 100% of the benefits of PoE, and that no other patents contribute anything to PoE functionality, which is logically inconsistent. Doc. No. 824 at 4. Defendants also note that because Madisetti found that the Chrimar Patents are similar to the '930 Patent, and Mills used Network-1 licenses to calculate the royalty rate for the Chrimar Patents, Mills should have utilized the *Chrimar* jury awarded royalty rate of $1.21 per port in his expert report here. Doc. No. 824 at 4, 9.

Plaintiff counters that no expert in this case has found the Chrimar Patents to be comparable to the '930 Patent. Doc. No. 848 at 7. Network-1 argues that HP even withdrew all of the opinions of its damages expert, Ambreen Salters, who opined about the Chrimar Patents after Network-1 filed a motion challenging its relevancy. Doc. No. 848 at 7. Thus, Plaintiff contends that there is no basis for Mills to treat the Chrimar Patents as comparable technology to the '930 Patent.

Defendants mischaracterize Mills's testimony regarding the comparability of the Chrimar Patents and the '930 Patent. In the *Chrimar* case, Mills was instructed to "assume that certain technical opinions were correct" regarding comparability and thus did not testify that the Chrimar patents were comparable.[4] Doc. No. 848-2 at 8.

Defendants also condemn Mills's decision to exclude Avaya's license with Chrimar in his analysis of the appropriate royalty rate for the '930 patent is unreliable despite previously testifying that the Chrimar Patents were comparable. Doc. No. 824 at 5, 8. However, Plaintiff notes that Mills explained that he rejected the Chrimar-Avaya license because he lacked "relevant

---

[4] In its Reply, Defendants quote Mills's testimony in the *Chrimar* jury trial, "[T]he '930 Patent is – I understand to be technologically comparable to the patents-in-suit." However, this does not indicate that Mills testified about the comparability of the patents, but rather was told of their technical comparability by the technical expert in the *Chrimar* case. As an expert on damages with no technical background, Mills is of course, not a POSITA and must rely on the technical experts in the case when determining whether patents are comparable.

6

information from Avaya concerning its agreement with Chrimar." Doc. No. 824 at 5. Defendants' contention that the Chrimar-Avaya license is a more reliable license than the baseline licenses is a challenge to the weight rather than admissibility.

There are no grounds to exclude Mills's opinions because of inconsistencies with his previous *Chrimar* expert opinion under Rule 702 or *Daubert*.

**II.     Methodology Used to Find a Per-Port Royalty Rate of $2.18**

Defendants first argue that Mills's suggested royalty rate of $2.18 per port is erroneous because it effectively ignores the *Chrimar* jury verdict of $1.21. Doc. No. 824. Defendants also condemn Mills's selection of seven Network-1 license agreements to arrive at a "baseline" royalty rate of $1.45 per port because he "ignored over a dozen other Network-1 and Merlot licenses and settlements closer in time to the hypothetical negotiation."[5] Doc. No. 824 at 6.

Plaintiff argues that Mills placed greater weight on these seven licenses because they did not "face[] additional validity risk due to the pending appeal to the Federal Circuit on the PTAB's decision" and were more representative of a hypothetical negotiation. Doc. No. 824-6 at 173-74; Doc. No. 848 at 1. Plaintiff further articulates that Mills considered over 20 license agreements concerning the '930 Patent and selected the most probative ones based on scope, duration, and date, which resulted in reliance on the licenses entered in after PTAB's decision and did not include the *Chrimar* jury verdict because it concerned different patents. Doc. No. 848.

---

[5] Mills used the Samsung, Huawei, Sony, ALE, Alcatel, Dell, and Polycom license agreements to come up with the baseline royalty rate.

Ultimately, Defendants do not criticize the methodology of Mills's approach. Instead, Defendants challenge Mill's use of particular licenses and not others. This goes to the weight rather than the admissibility.[6]

Defendants also condemn Mills's Three-Step Risk Assessment Methodology because Mills: (1) relied on an unrecorded phone call with Network-1's CEO, Corey Horowitz, about a 50% litigation discount; (2) used venue-specific statistics in his reasonable royalty calculation; and (3) lowered the risk of potential litigation because the Baseline Licenses were entered after PTAB rejected post-issuance challenges. Doc. No. 824 at 6-7. Plaintiff argues that Mills does not do a Three-Step Risk Assessment and instead "looked at case-specific facts to determine the proper uncertainty discount (i.e. how much less past licensees paid because validity and infringement were disputed)." Doc. No. 848 at 2.

Defendants' contentions with the phone call with Horowitz and Mills's reliance on the baseline licenses go to weight rather than admissibility. However, Defendants also condemn Mills's use of the "various statistics regarding uncertainty" specific to patent litigation in the Eastern District of Texas. Doc. No. 824 at 7, 8. Defendants argue that Mills's reliance on venue related statistics is erroneous because venue has no part in a reasonable royalty calculation. Doc. No. 824 at 7, 8. Plaintiff contends that Mills's use of venue-specific statistics is proper because all of the relevant settlements occurred in this District. Doc. No. 848 at 2.

Utilization of venue-specific statistics regarding uncertainty to adjust royalty rates is improper because the hypothetical negotiation assumes that the patent is valid and infringed. *See Lucent Tech., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1325 (Fed. Cir. 2009). There should be no

---

[6] In this Motion, Defendants contest Mill's selection of the baseline licenses entered into after PTAB review. The admission of testimony regarding ancillary proceedings will be discussed in the ruling on HP's Opposed Motion in Limine Number 5, addressing admissibility under Federal Rules of Evidence 403 and 408. Doc. No. 984.

discussion of venue or win-loss statistics in a reasonable royalty calculation because venue plays no part in the hypothetical negotiation. *Id.* Thus, Mills's use of venue specific statistics regarding uncertainty is improper and inadmissible.

Accordingly, Mills cannot opine on his use of venue specific statistics regarding uncertainty.

### III. Apportionment of the '930 Patent

Defendants also argue that Mills's opinions do not apportion the value of the '930 Patent against non-infringing benefits of PoE and should thus be excluded. Doc. No. 824 at 11, 12. However, Mills's royalty base encompasses license rates for the '930 Patent, thus his methodology "already built in apportionment . . . [because] the parties negotiated over the value of the asserted patent, 'and no more'" *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.,* 809 F.3d 1295, 1303 (Fed. Cir. 2015) (internal citations omitted).

Mills also took further precautions such as corroborating his $2.18 per-port royalty rate by using market data to apportion the value of PoE and Knox's technical analysis that "no less than 50 percent of the benefit of PoE functionality" is from the '930 Patent to find a royalty rate of $3.36, thus demonstrating the reasonability of the $2.18 royalty rate. Doc. No. 848 at 8. Defendants contend that this apportionment is improper because "it is improper for a damages expert to apply an economic apportionment factor produced by a technical expert who lacks economic training." Doc. No. 891 at 4 (citing *Realtime Data LLC v. Oracle America, Inc.* Case No. 6:16-cv-88, at 10 (E.D. Tex. Mar. 22, 2017). However, Defendants mischaracterize the holding in *Realtime*. The previous sentence states:

> [The technical expert's] opinions about the technical value of the accused products – and specifically opinions about the incremental benefit conferred by the patented features of the accused products on the technology – may be an input into the damages expert's

9

opinion about the proper apportionment value, but may not be the final apportionment value itself.

*Realtime Data LLC v. Oracle America, Inc.* Case No. 6:16-cv-88, at 10 (E.D. Tex. Mar. 22, 2017).

Here, Mills used market data and Knox's technical analysis to apportion the '930 Patent and thus Mills's apportionment methodology was proper.[7]

Defendants' motion in this regard is primarily a challenge as to the weight of Mills's apportionment analysis rather than its admissibility.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Exclude Opinions and Testimony of Mr. Robert Mills is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth above. Mills may not rely on a win-loss analysis in forming his opinions of a reasonable royalty.

So ORDERED and SIGNED this 23rd day of October, 2017.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[7] In its Reply, Defendants contend that Knox failed to appropriately apportion the '930 Patent in his technical analysis and thus there is no apportionment factored into Mills's analysis. However, Knox's apportionment analysis has been found by this Court to overcome a *Daubert* challenge. *See* Doc. No. 962.