# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC. § | |
| § | |
| § | CIVIL ACTION NO. 6:11-cv-492- |
| v. § | RWS-KNM |
| § | |
| § | |
| ALCATEL-LUCENT USA, INC., ET AL. § | |

## ORDER

Before the Court is Network-1 Technologies, Inc.'s Motion to Exclude Certain Opinions and Testimony of Hewlett-Packard Company's Technical Expert Dr. Nathaniel Davis re: "secondary power source." Doc. No. 952. The Court held a hearing on the Motion on October 17, 2017. The Motion is **DENIED** as set forth herein.

## BACKGROUND

Plaintiff Network-1 Technologies, Inc. ("Network-1") accuses Defendants[1] of infringing U.S. Patent No. 6,218,930 ("the '930 Patent"). The '930 Patent relates to an apparatus and method for remotely powering access equipment over a 10/100 switched Ethernet network. *See* '930 Patent.

On June 2, 2016, the Court held a claim construction hearing on the disputed terms of the '930 Patent. The Court subsequently construed "secondary power source" to mean "a source of power connected to provide power between the data node and the access device using the data signaling pair; the driving points of the secondary power source must be physically separate from the driving points of the main power source." Doc. No. 693 at 10. HP moved to clarify the meaning

---

[1] The remaining Defendants in this case are HP, HPE, and Juniper.

1

of "secondary power source," specifically with regard to the phrase "driving points." Doc. No. 710. The Court clarified its construction of "secondary power source" as follows:

> a source of power connected to provide power between the data node and the access device using the data signaling pair; the driving points of the secondary power source must be physically separate from the driving points of the main power source (a driving point is a point of a power source from which a particular power level can be provided for driving a load).

Doc. No. 832 at 6-7.

Dr. Nathaniel Davis, HP's infringement expert, presents opinions as to why HP's accused products do not have the claimed "secondary power source." Plaintiff moves to strike Davis's opinions regarding "secondary power source" because they are contrary to the Court's clarification order.

## APPLICABLE LAW

*Daubert Motion*

Under Federal Rule of Evidence 702, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The trial judge has a gate-keeping role to ensure that expert testimony is relevant and reliable. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993). Indeed, "[t]he proponent [of the expert testimony] need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th. Cir. 1998). "The reliability prong [of *Daubert*] mandates

2

that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)).

Factors to consider in determining whether a proposed expert's methodology is scientifically valid or reliable are:

> (1) whether the expert's theory can be or has been tested;
> (2) whether the theory has been subject to peer review and publication;
> (3) the known or potential rate of error of the technique or theory when applied;
> (4) the existence and maintenance of standards and controls; and
> (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*See Daubert,* 509 U.S. at 593–95. A court must decide whether the *Daubert* factors are appropriate, use them as a starting point, and then ascertain if other factors should be considered. *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

In *Kumho Tire Company, Limited v. Carmichael*, the Supreme Court applied the *Daubert* principles to technical or specialized expert testimony. 526 U.S. 137 (1999). The Court explained that the overarching goal of *Daubert*'s gate-keeping requirement is to "ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. A trial court has the discretion to exclude expert testimony if there is "simply too great an analytical gap" between the expert's reasoning and the conclusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"At base, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-201-JRG, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017) (quoting

3

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Under Rule 702, the question is whether the expert relied on facts sufficiently related to the disputed issue." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). "To properly carry this burden, the patentee must 'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315–16 (Fed. Cir. 2011) (citation omitted). "Questions about what facts are most relevant or reliable to calculating a reasonable royalty are for the jury." *i4i Ltd. P'ship*, 598 F.3d at 856. "The jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *Id.*

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *Id.* at 854. Also, the "existence of other facts . . . does not mean that the facts used failed to meet the minimum standards of relevance or reliability." *Id.* at 855–56. For example, "any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) (citation and internal quotation omitted).

***Expert Opinion and Claim Construction***

Under the infringement analysis, "the court first determines the meaning of disputed claim terms and then compares the accused device to the claims as construed." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009) (citation omitted). "The infringement inquiry compares properly construed claims with the accused product or process." *Atl. Thermoplastics Co., Inc. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992) (citations omitted). An expert's infringement opinion must use "the claim construction adopted by the court." *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009) (citation omitted).

"A court may not, for instance, compare the accused product with a preferred embodiment described in the patent or with a commercial embodiment of the patented invention." *Id.* (citing *Loctite Corp. v. Ultraseal, Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985); *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985)).

"Expert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate and raises a factual issue for a jury to resolve." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) (citation omitted). Courts allow experts to testify regarding preferred embodiments to educate the jury about teachings of the patent itself. *See EMC Corp. v. Pure Storage, Inc.*, No. 13-1985-RGA, 2016 WL 775742, at *4 (D. Del. Feb. 25, 2016) (ruling that the defendant's experts "are not precluded from making any reference whatsoever to patent specifications and commercial embodiments"); *see also SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 492 (E.D. Tex. 2013) (denying motion for judgment as a matter of law and ruling that the defendant's "expert's testimony regarding the preferred embodiments amounted to nothing more than an effort to educate the jury about the teachings of the . . . patent"), *aff'd*, 769 F.3d 1073 (Fed. Cir. 2014).

However, "[e]xpert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury. *EMC Corp.*, 154 F. Supp. 3d at 109 (citing *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006)). *See also Personalized User Model, L.L.P. v. Google Inc.*, No. 09-525-LPS, 2014 WL 807736, at *1–*2 (D. Del. Feb. 27, 2014) ("As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact," it should be excluded under the *Daubert* standard."); *Chicago Mercantile Exch., Inc. v. Tech. Research Group, LLC*, 782 F. Supp. 2d 667, 673–74 (N.D. Ill. 2011); *Am. Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F.

Supp. 2d 885, 900 (D. Minn. 2010); *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 821–22 (N.D. Ill. 2010); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009*);*

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005).

## **DISCUSSION**

Plaintiff argues that Davis continues to opine that a "secondary power source" must originate power, which is contrary to the ruling in the Court's Clarification Order. Doc. No. 952 at 1.

Defendants respond that Network-1 mischaracterizes Davis's opinions and Davis applied the correct construction of "secondary power source." Doc. No. 974 at 1. HP notes that while the Court found that a power source may be a "controlled valve," not all "controlled valves" are necessarily power sources, and thus Davis's opinions do not contradict the Court's construction of "secondary power source." Doc. No. 974 at 1.

The Court construed "secondary power source" as follows:

a source of power connected to provide power between the data node and the access device using the data signaling pair; the driving points of the secondary power source must be physically separate from the driving points of the main power source (a driving point is a point of a power source from which a particular power level can be provided for driving a load).

Doc. No. 832 at 6-7.

HP emphasizes that the Court's construction of "secondary power source" requires it to be "a source of power." Doc. No. 974 at 2. The parties agree that a resistor, for example, cannot by itself constitute "a secondary power source." Doc. No. 989 at 3 n. 2; Doc. No. 997 at 2.

However, the parties dispute whether a metal-oxide-semiconductor field-effect transistor (MOSFET) can be a "source of power" under the Court's construction of "secondary power

6

source."[2] Doc. No. 974 at 2. Network-1 argues that its experts opine that a "power source" can be "any electronic element that 'controls or modifies power'" and thus a MOSFET is "a secondary power source." Doc. No. 952 at 8. Defendants argue that Davis opines that "secondary power source excludes something that is not a power source" and thus "a MOSFET that's used as a control valve to determine what level of current will be providing from an upstream power source" cannot be a secondary power source. Doc. No. 974 at 6; Doc. No. 952-5 at 359.

The parties' dispute about whether particular MOSFETs are "secondary power sources" is a factual dispute for the jury because it depends on how particular electronic components are arranged in the accused instrumentalities. *See Acumed LLC v. Stryker Corp.,* 483 F.3d 800, 806 (Fed. Cir. 2007) ("The resolution of some line-drawing problems . . . is properly left to the trier of fact.") (citing *PPG Indust. V. Guardian Indus. Corp.,* 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact")); *see also Eon Corp. IP Holdings v. Silver Spring Networks,* 815 F.3d 1314, 1318-19 (Fed. Cir. 2016) (citing *PPG*).

Thus the parties' dispute with regard to whether MOSFETs are "secondary power sources" is a factual dispute for the jury and not for *Daubert*. However, no expert will be permitted in a way that is contrary to the Court's claim construction.

With respect to Network-1's challenge of Davis's opinions, Davis has provided four expert reports and appeared for various depositions. Davis's first two expert reports – the November 30, 2016 Rebuttal Report and the March 3, 2017 Supplemental Report – were served prior to the

---

[2] Defendants concede that "source of power" or "power source" do not mean something that must originate power. *See* Hearing at 10:21 A.M.

Court's April 12, 2017 Order ("the Clarification Order") clarifying the construction of "secondary power source." Doc. No. 832. Although Davis's July 7, 2017 expert report refers back to his previous reports, the challenged opinions in Davis's expert reports were already addressed by the Court's Clarification Order, and thus do not need to be specifically addressed here.[3]

The remaining challenged expert reports are thus the July 7, 2017 "Driving Points" Supplemental Rebuttal Expert Report (Doc. No. 952-3) and the August 3, 2017 "Driving Points" Second Supplemental Rebuttal Expert Report (Doc. No. 952-4). The opinions in these reports and Davis's deposition testimony address why Davis does not believe a MOSFET is a "secondary power source" and why he disagrees with Knox's opinions. Doc. No. 952-3; Doc. No. 952-4. Thus, as discussed above, these issues are factual issues for the finder of fact rather than legal issues of claim construction for the Court.

## CONCLUSION

Network-1 Technologies, Inc.'s Motion to Exclude Certain Opinions and Testimony of Hewlett-Packard Company's Technical Expert Dr. Nathaniel Davis re: "secondary power source" is **DENIED.**

So ORDERED and SIGNED this 27th day of October, 2017.

_K. Nicole Mitchell_
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[3] To the extent that it is necessary, the Court reaffirms its rejection of HP's argument that a "secondary power source" must be an "origin" of power. Doc. No. 832 at 6 ("Because HPE intends its proposal of 'originates' to require more than merely controlling or modifying the supply of power . . .the Court rejects HPE's proposal of 'originates.'") Davis is not permitted to opine that "secondary power source" originates power or must originate power.

8